IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM STANFORD, individually and on behalf of all others similarly situated, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 2:07-cv-4225 |
| | : | |
| FOAMEX, L.P.; FOAMEX L.P. BENEFITS COMMITTEE; FIDELITY MANAGEMENT TRUST COMPANY; and UNKNOWN FIDUCIARY DEFENDANTS 1-100, | : | CYNTHIA M. RUFE |
| | : | |
| Defendants | : | |
| | : | |

## ORDER

**AND NOW**, this ____ day of _____, 2008, upon consideration of

Fidelity Management Trust Company's Motion to Dismiss Plaintiff's First Amended Complaint,

and all responses thereto, it is hereby **ORDERED** that Fidelity Management Trust Company's

Motion is **GRANTED** in its entirety.  Each of Plaintiff's claims against Fidelity Management

Trust Company is **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
Cynthia M. Rufe, U.S.D.J

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM STANFORD, individually and on behalf of all others similarly situated, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 2:07-cv-4225 |
| | : | |
| FOAMEX, L.P.; FOAMEX L.P. BENEFITS COMMITTEE; FIDELITY MANAGEMENT TRUST COMPANY; and UNKNOWN FIDUCIARY DEFENDANTS 1-100, | : | CYNTHIA M. RUFE |
| | : | |
| Defendants | : | |
| | : | |

## DEFENDANT FIDELITY MANAGEMENT TRUST COMPANY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Fidelity Management Trust Company ("Fidelity Trust"), through undersigned counsel, moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss with prejudice the claims of Plaintiff William Stanford, Jr. As demonstrated in the accompanying Memorandum of Law, Plaintiff has failed to allege sufficient facts to state claims that Fidelity Trust violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq*. Plaintiff has also failed to allege facts sufficient to state his claim for attorneys' fees and costs under §29 U.S.C. §1132(g).

Plaintiff's claims against Fidelity Trust should be dismissed because the First Amended Complaint does not allege facts sufficient to show that Fidelity Trust violated the terms of the Foamex L.P. Savings Plan ("Plan") by selling Foamex stock held in the Plan and holding the cash realized from those sales, which all allegedly was done at the direction of Foamex. Plaintiff's claims against Fidelity Trust should also be dismissed because Fidelity Trust, a directed trustee,

was acting at the direction of the Foamex defendants; consequently, Fidelity Trust cannot be liable as a co-fiduciary. Finally, Plaintiff has failed to allege sufficient facts to state a claim for attorneys' fees and costs.

**WHEREFORE**, for the reasons set forth more fully in the accompanying Memorandum of Law, which is incorporated herein by reference, Fidelity Trust respectfully requests that the Court grant this motion and dismiss all claims against Fidelity Trust with prejudice.

**Dated: January 7, 2008**

Respectfully submitted,

/s/Marshall J. Walthew
Marshall J. Walthew (PA I.D. 55329)
Sara B. Richman (PA I.D. 200729)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4224
Facsimile: (215) 981-4750

—and—

Howard Shapiro
Charles F. Seemann III
Michael D. Spencer
PROSKAUER ROSE LLP
909 Poydras Street, Suite 1100
New Orleans, Louisiana 70112
Telephone: (504) 310-4088
Facsimile: (504) 310-2022

Amy Covert (PA Bar No. 77186)
PROSKAUER ROSE LLP
One Newark Center
Newark, NJ 07102-5211
Telephone: (973) 274-3200
Facsimile: (973) 274-3299

*Counsel for Fidelity Management Trust Co.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM STANFORD, individually and on behalf : 
of all others similarly situated, :
: CIVIL ACTION
Plaintiffs, :
:
v. : NO. 2:07-cv-4225
:
FOAMEX, L.P.; FOAMEX L.P. BENEFITS : CYNTHIA M. RUFE
COMMITTEE; FIDELITY MANAGEMENT :
TRUST COMPANY; and UNKNOWN :
FIDUCIARY DEFENDANTS 1-100, :
:
Defendants :
:

## MEMORANDUM OF LAW IN SUPPORT OF
## FIDELITY MANAGEMENT TRUST COMPANY'S MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

This case arises out of plaintiff William Stanford's discontent with the 2005 and 2006

sales of stock of a bankrupt company – Foamex International, Inc. – out of a defined contribution

plan sponsored by his employer, defendant Foamex L.P. ("Foamex").  In his First Amended

Complaint ("Amended Complaint" or "A.C."), Plaintiff, a participant in the Foamex L.P.

Savings Plan (the "Plan"), asserts class-action claims under the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. §1001, *et seq.*, against Foamex, the Plan sponsor, the

Foamex L.P. Benefits Committee (the "Foamex Committee"), the Plan's named fiduciary,

individual Foamex Committee members Thomas Chorman, K. Douglas Ralph, and Stephen

Drap; and Fidelity Management Trust Company ("Fidelity Trust"), the directed trustee of the

Plan. The Amended Complaint alleges that the defendants (including Fidelity Trust) breached

fiduciary duties under ERISA by acting contrary to the terms of the instruments governing the

Plan. Plaintiff also alleges that Fidelity Trust violated ERISA by accepting and implementing directions without proper authorization.

Fidelity Trust now moves to dismiss all claims against it. First, Plaintiff's claims fundamentally misapprehend Fidelity Trust's limited role as directed trustee with respect to the Foamex Plan. Given this limited role, and the proper directions issued by authorized fiduciaries, Fidelity Trust's actions in implementing the sales of Foamex stock were consistent with its obligations both under the documents governing the Plan and under ERISA. Plaintiff's assertion that Fidelity Trust implemented directions from an improper or unauthorized source is belied by the very documents Plaintiff references in the Amended Complaint. Further, the essential premise of this action – that defendants violated the terms of the controlling plan instruments by selling company stock held in the Plan, and holding the cash realized from those sales – depends on a misinterpretation of the controlling Plan documents, one so flawed it contravenes ERISA itself. Finally, because Fidelity Trust acted in accordance with proper, authorized directions, it cannot be held liable as a co-fiduciary. Therefore, the Court should grant this motion and dismiss with prejudice all claims against Fidelity Trust.

## I.   INTRODUCTION

Plaintiff initially filed this action on July 2, 2007 in the United States District Court for the Western District of Washington. On the motion of Foamex, and with Plaintiff's consent, the action was transferred to this Court on September 28, 2007. The defendants moved to dismiss the original Complaint on October 29, 2007. Simultaneous with an opposition to the motions, Plaintiff filed the Amended Complaint on November 21, 2007.

**A.      The Plan & The Foamex Defendants.**  The Plan is an eligible individual account plan (A.C., ¶6),[1] which establishes an individual account for each participant, and provides for retirement benefits based on the amounts contributed to each account, net of any gains or losses. *Cf.* A.C., ¶6; ERISA §3(34), 29 U.S.C. §1002(34).  Foamex is the Plan's sponsor. *See* A.C., ¶11. The Foamex Committee[2] is the plan administrator, as well as the named fiduciary of the Plan. *Cf.* A.C., ¶15 *with* Plan, §12.3 (identifying Committee as plan administrator and named fiduciary).[3]  As such, the Foamex Committee has "complete authority to control and manage the operation and administration of the Plan." *See* Plan, §12.1.  The Foamex Committee's powers also include, among other things, "discretionary authority to interpret the Plan and to resolve ambiguities, inconsistencies and omissions, which findings shall be binding, final and conclusive." *See* Plan, §12.3.

As a defined-contribution plan qualified under Section 401(k) of the Internal Revenue Code, the Foamex Plan permits participants such as Plaintiff (*see* A.C., ¶10) to make pre-tax contributions via payroll deduction into their individual accounts. *See, e.g.*, Plan, §§2.1, 3.1 & Preamble. *Cf.* A.C., ¶6.  Participants are also permitted to direct investment of their individual accounts among investment funds selected by the Foamex Committee. *See* Plan, §4.3.1 & Appendix C; Trust Agreement, §4(b).  During the relevant period, the Foamex Stock Fund

---

[1]      Nothing herein should be construed as Fidelity Trust's agreement with, or acquiescence in, any allegation in the Amended Complaint.

[2]      Three individual members of the Foamex Committee (Thomas Chorman, K. Douglas Ralph, and Stephen Drap) are also made defendants herein.  See A.C., ¶¶12-14.

[3]      Copies of the Plan and the Trust Agreement (as amended) are attached as Exhibits A and B, respectively.  In deciding a motion under FED. R. CIV. P. 12(b)(6), the Court may consider the plan and trust documents, as well as any documents referred to or relied on by the Amended Complaint.  *See* FED. R. CIV. P. 10(c); A.C. ¶¶37-40.  *See also, e.g., Pryor v. National Collegiate Athletic Ass'n.*, 288 F.3d 548, 559-60 (3d Cir. 2002); *Brennan v. Consolidated Rail Corp. Matched Savings Plan*, 2000 WL 217664, *1 & n.1 (E.D. Pa. Feb. 11, 2000).

("Foamex Fund") was one of these investment funds. *See* A.C., ¶9; Plan, Appendix C; Trust Agreement, §4(b) & Schedule C.

   **B.     Fidelity Trust**. The Plan's assets are "committed in trust to the Trustee [*i.e.*, Fidelity Trust] . . . subject to the terms of the Trust to be held, managed, and disposed of by the Trustee in accordance with the terms of the Trust and this Plan." *See* Plan, §10.1.[4] Pursuant to the Trust Agreement, Fidelity Trust serves as the Plan's directed trustee. *See* A.C., ¶17.  In ERISA parlance, a directed trustee is a trustee that is designated to be subject to the directions of plan fiduciaries with regard to plan assets held in the trust. *See* ERISA §403(a)(1), 29 U.S.C. §1103(a)(1).  This means that a directed trustee's ERISA liability is "limited to instances in which it fails to follow proper directions or it complies with directions that are improper, or contrary to the Plan or ERISA." *See DiFelice v. US Airways, Inc.*, 397 F. Supp. 2d 735, 746 (E.D. Va. 2005). *See also, generally, In re WorldCom, Inc ERISA Litig. ("WorldCom")*, 354 F. Supp. 2d 423, 441-46 (S.D.N.Y. 2005) (discussing limited nature of directed trustee's duties). Thus, unlike a discretionary trustee, a directed trustee is not liable under ERISA for actions taken pursuant to proper direction by the designated fiduciary.

   Fidelity Trust performs primarily ministerial functions specified in the Trust Agreement.[5] Fidelity Trust has no responsibility for selection of plan investment options, and in fact, is not to

---

   [4]        ERISA expressly requires that the assets of a benefits plan be placed into trust. *See* ERISA §403(a), 29 U.S.C. §1103(a).  The Trust Agreement implements this statutory requirement, making it by definition one of the "documents and instruments governing the plan," as that term is used in ERISA. *See also* ERISA §§104(a)(6), 104(b)(2) and 104(b)(4), 29 U.S.C. §§1024(a)(6), 1024(b)(2) and 1024(b)(4) (including "trust agreement" among "instruments under which a plan was established or is operated"). Thus, the Trust Agreement is an integral part of the Plan documents.  However, in the event of any conflict between the Plan and the Trust Agreement, the provisions of the Trust Agreement control. *See* Trust Agreement, §16(b).
   [5]        Pursuant to the Trust Agreement, Fidelity Trust performs recordkeeping and administrative functions within a framework established at the direction of the Foamex Committee. *See* Trust Agreement, §5(a) & Schedule A thereto.  These functions include

render investment advice to any person in connection with such selection. *See* Trust Agreement, §4(a).

     **C.    The Foamex Fund**. As noted above, the Foamex Committee directs Fidelity Trust to maintain a specified menu of investment options, from which individual participants then direct Fidelity Trust as to the allocation of investments in their own accounts. *See* Trust Agreement, §§4(b) and (c). Consequently, Fidelity Trust is subject to direction by the Foamex Committee regarding the inclusion of the Foamex Fund in the Plan's investment menu, and to direction by individual participants regarding their individual account investments in the Foamex Fund. *See* Trust Agreement, §4(e)(i).[6] Significantly, under the Trust Agreement, the Foamex Committee has a continuing duty to monitor the suitability of company stock under ERISA's fiduciary-duty rules. *See* Trust Agreement, §4(e)(ii).

     The Trust Agreement provides that the Foamex Fund will be comprised of shares of Foamex stock as well as short-term investments for liquidity. The express provisions of the Trust Agreement mandate that Fidelity Trust will be directed by the Foamex Committee as to the amount of short-term investments to be held in the Foamex Fund, and obligate Fidelity Trust to maintain cash holdings at the directed level:

> Trust Investments in Sponsor Stock shall be made via the Foamex Common Stock Fund (the "Stock Fund"). Investments in the Stock Fund shall consist primarily of shares of Sponsor Stock. *The Stock Fund shall also include cash or short-term liquid investments, in accordance with this paragraph, in amounts designed to satisfy daily participant exchange or withdrawal requests. . . . . The Named*

---

processing of payroll contributions (Schedule A, §B(1)); maintenance of employee data necessary to support plan administration (§B(2)); mailing of standard participant notifications, such as transaction confirmations (§C(1) and (3)); preparation of reports concerning participants' benefits, such as account statements (§C(2)); preparation of reports required by government agencies (§E); and preparation of employee communications materials (§F).

    [6]    Section 4(e) of the Trust Agreement, relating to company stock, was amended and restated by an amendment to the Trust that had been effective since 2001. All references to Section 4(e) of the Trust Agreement are to the amendment. *See* Exhibit B.

*Fiduciary shall, after consultation with the Trustee, establish and communicate to the Trustee in writing a target percentage and drift allowance for such short-term liquid investments.* Subject to its ability to execute open-market trades in Sponsor Stock or to otherwise trade with the Sponsor, *the Trustee shall be responsible for ensuring that the short-term investments held in the Stock Fund falls within the agreed-upon range over time. . . . .*

*See* Trust Agreement, §4(e) (emphasis added).

**D.   Implementation of Directions Under the Trust Agreement**.   The Trust Agreement makes Fidelity Trust subject to direction in every material aspect of Plan management, operation or administration.[7]   The Trust Agreement is replete with provisions requiring Fidelity Trust to execute directions issued by authorized parties.  For example, Fidelity Trust is subject to direction in such matters as disbursements for Plan expenses or participant withdrawals.  *See* Trust Agreement, §§3(a) and 3(b).  Fidelity Trust is also subject to direction by the Foamex Committee and individual participants for investments in company stock, voting and tender of company stock, and "all other rights" relating to company stock.  *See* Trust Agreement, §§4(b), 4(c), 4(e)(i), and 4(e)(vi).  Except in voting and tender matters, in the case of company stock not allocated to an individual participant's account, "the Trustee [*i.e.*, Fidelity Trust] *shall* follow the directions of the Named Fiduciary [*i.e.*, the Foamex Committee]."  *See* Trust Agreement, §4(e)(vii) (emphasis added).  The Trust Agreement further provides that Fidelity Trust is not liable for any loss, or for any breach, arising from the exercise or non-exercise of the Foamex Committee's or participants' rights of direction.  *See* Trust Agreement, §4(h).

**E.   The Foamex Bankruptcy**.   A proper understanding of the directions at issue in the Amended Complaint requires an appreciation of their context:  on September 19, 2005, Foamex filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  *In re*

---

[7]   Fidelity Trust is both required and authorized to execute directions issued by Thomas A. McGinley, Tina Patras, and/or Mary Harmer.  *See* Trust Agreement, §§7(b) and 7(c) & Schedules D and E thereto.  The Amended Complaint acknowledges this.  *See* A.C. ¶¶17, 40.

*Foamex International, Inc.*, No. 05-12685 (Bankr. D. Del.).  By that time, however, the financial difficulties experienced by Foamex had been public for months.

For example, in a March 15, 2005 filing with the Securities & Exchange Commission ("SEC"), Foamex announced that it had contacted some of its lenders to obtain waivers of lending covenants.  *See* Exh. C.[8]  In a Form 10-K filed with the SEC in April 2005, Foamex noted that its cash flow might be insufficient to service its substantial debt burden, and that any default "could impair [Foamex's] ability to continue as a going concern."  *See* Exh. D.

In mid-July 2005, Foamex issued a press release noting a significant reduction in its earnings expectations for the second quarter of 2005, and announcing that it had retained an investment banking firm to evaluate the Company's strategic alternatives.  *See* Exh. E.  By mid-August, Foamex acknowledged in another SEC filing that a "pre-arranged" bankruptcy was under discussion with Foamex creditors.  *See* Exh. F.

Almost immediately after the bankruptcy petition, on September 22, 2005, Foamex submitted another SEC filing describing an agreement-in-principle, between Foamex and its creditors, regarding the reorganization of Foamex.  This announcement indicated that the proposed reorganization could leave shareholders such as the Foamex Fund with no value: "[h]olders of equity interests in Foamex International Inc. will receive no distributions or retain any property on account of their equity interests, and such equity interests shall be cancelled on the effective date of the Plan."  *See* Exh. G.  The possibility that holders of Foamex stock might receive no value for their shares was reiterated in a November 2005 SEC filing.  *See* Exh. H.

---

[8]    Because they are public records, this Court may take judicial notice of these Foamex SEC filings. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1321 (3d Cir. 2002).  For sake of brevity, only pertinent excerpts of these filings are presented as exhibits.  However, the complete filings are available at http://searchwww.sec.gov/EDGARFSClient/jsp/ EDGAR_MainAccess.jsp (last visited Jan. 5, 2008).

Foamex filed its Plan of Reorganization shortly afterward, on December 23, 2005. The proposed reorganization plan expressly provided for the cancellation of Foamex stock, and made no provision for any distribution or other relief for shareholders. *See* Exh. I.

### F.   The Underlying Transactions & Aftermath.   In light of the Foamex bankruptcy, the Foamex Committee directed Fidelity Trust to take the actions giving rise to this lawsuit. First, the Committee directed Fidelity Trust to raise the Foamex Fund's cash component to 20 percent on September 22, 2005 – three days after the Foamex bankruptcy. *See* A.C., ¶37; Exh. J.[9]   This direction specified that "[t]he purpose of the target cash balance is to provide liquidity to satisfy daily participant requests." *See* Exh. J. Contrary to Plaintiff's allegation that the direction was not from an authorized source, this direction was signed by Thomas A. McGinley, who was fully authorized to issue directions on behalf of the Committee. *Cf.* A.C., ¶40 *with* Exh. J.

The Foamex Committee directed another adjustment, to 50 percent cash, on January 6, 2006 – two weeks after Foamex submitted its reorganization plan proposing cancellation of existing Foamex stock. *See* A.C., ¶37; Exh. K. This direction, too, specified that "[t]he purpose of the target cash balance is to provide liquidity to satisfy daily participant requests." *See* Exh. K. Contrary to Plaintiff's allegation, this direction was signed by Thomas A. McGinley. *Cf.* A.C., ¶40 *with* Exh. K.

Fidelity Trust liquidated the Foamex Fund pursuant to a written direction dated January 20, 2006. *See* A.C., ¶37; Exh. L. That direction stated that Foamex intended to eliminate the Foamex Fund as a plan investment option, in light of the Foamex reorganization. *Id.* Contrary

---

[9]   This Court can consider the specific direction letters, since the Amended Complaint refers to and relies on those documents. *Cf.* A.C., ¶37, *with Pryor, supra*, 288 F.3d at 560. *See also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).

to Plaintiff's allegation, this letter was signed by Thomas A. McGinley, and included a notation that McGinley signed "[a]s an authorized signatory for the named fiduciary and Plan Administrator . . . ." *Cf.* A.C., ¶40 *with* Exh. L. The liquidation was completed within the specified time frame. *See* A.C., ¶42.

By letter dated February 9, 2006, Fidelity Trust was directed to repurchase Foamex shares until the stock component in the Fund reached 50 percent, because Foamex had made a decision to delay removing the Foamex Fund from the Plan. *See* Exh. M. This letter also included several specific representations regarding the ERISA implications of the contemplated stock purchase: (1) that Foamex considered the direction in light of its fiduciary duties under ERISA; (2) that Fidelity Trust had questioned the direction, and Foamex confirmed that it had undertaken additional consideration of applicable ERISA duties; and (3) that Foamex consulted with legal counsel to confirm that the directions complied with applicable laws. *See* Exh. M. The direction was again signed by Thomas McGinley. *See* Exh. M.

According to the Amended Complaint, the Foamex Fund was finally liquidated on December 22, 2006. *See* A.C., ¶50. This lawsuit followed on July 2, 2007.

**G.     Claims Applicable To Fidelity Trust.** Plaintiff purports to raise ERISA claims on behalf of a class of "Plan participants and beneficiaries whose individual accounts were invested in the Foamex Stock Fund between July 19, 2005, and its liquidation on December 22, 2006," excluding the individual defendants, "members of their immediate families, and their heirs, successors or assigns." *See* A.C., ¶22. The Amended Complaint breaks Plaintiff's lawsuit into eight separate "claims for relief." Of these, only four are directed at Fidelity:

- Plaintiff's "First Claim" simply alleges that defendants, including Fidelity Trust, breached fiduciary duties "by failing to act in accordance with the documents and instruments governing the Plan." *Cf.* ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D) *with* A.C.,¶49. Specifically, Plaintiff contends the defendants lacked the authority to sell

company stock held in the Foamex Fund, because Section 1.32 of the Plan defines the Foamex Fund as one that "invests solely" in company stock. *See* A.C.,¶49.

- Plaintiff's "Fourth Claim" also alleges that Fidelity Trust violated ERISA by following the above-described directions, because Fidelity Trust "could only have followed a directive by the Committee, and only if communicated in written form executed by Thomas A. McGinley" or other designated signatories. *See* A.C., ¶¶17, 40. Plaintiff's Fourth Claim also repeats the allegations of the First Claim that Fidelity Trust's conduct violated operative Plan documents. *See* A.C.,¶65.

- Plaintiff's "Seventh Claim" asserts a claim for co-fiduciary liability against all defendants, pursuant to ERISA §405, 29 U.S.C. §1105, for the same alleged conduct. *See* A.C.,¶¶81-85.

- Plaintiff's "Eighth Claim" seeks recovery of attorneys' fees and costs, pursuant to ERISA §502(g), 29 U.S.C. §1132(g).   No additional factual allegations are provided in support of the Eighth Claim. *See* A.C.,¶¶86-87. Absent any independent allegations supporting recovery of attorneys' fees, or any other basis on which to evaluate this request under the five-factor test enunciated in *McPherson v. Employees' Pension Plan*, 33 F. 3d 253 (3rd Cir. 1994), Fidelity Trust refers to the arguments raised in response to the other claims as the basis for dismissal of this claim.

## II.   LAW & ARGUMENT

In ruling on this motion, the Court must accept only well-pleaded factual allegations in the Complaint as true.  The Court need not credit "bald assertions" or "legal conclusions." *See Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health*, 503 F. 3d 256, 260 (3d Cir. 2007).   In fact, the Court must disregard "legal conclusions masquerading as factual conclusions" altogether. *Anspach*, 2007 WL 2743446 at *2 (citing *Morse v. Lower Merion Sch. Dist.*, 132 F. 3d 902, 906 n.8 (3d Cir. 1997)).   Similarly, a court is not required to accept allegations that are contradicted by documents relied upon by the complaint. *See, e.g., U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 2006 WL 4916343, at *2 (E.D. Pa. Nov. 13, 2006); *Payne v. DeLuca*, 2006 WL 3590014, at *9 n.5 (W.D. Pa. Dec. 11, 2006); *see also* 5C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1363, at 120-21 (3d ed. 2004).

The Supreme Court recently confirmed that a plaintiff's obligation to state the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, ___, 127 S. Ct. 1955, 1964-65 (2007). To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 1965 (citations omitted). This means that Plaintiff's complaint must provide a factual basis on which the Court may infer that otherwise-legal activities violate the applicable statute, in this case, ERISA. *Id.* at 1966 (holding that antitrust claimants' conclusory allegations of prohibited conduct did not "supply facts adequate to show illegality").

**A.  As a Directed Trustee, Fidelity Trust Did Not Engage in Fiduciary Conduct With Respect to the Underlying Transactions, and Thus Has No Fiduciary Liability.** The Amended Complaint misconceives the limited duties of a directed trustee like Fidelity Trust. It is well-established that fiduciary status is not an all-or-nothing proposition; rather, this Court must determine whether Fidelity Trust was acting as a fiduciary "with respect to the particular activity in question." *See, e.g., Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995). However, because a directed trustee such as Fidelity Trust is subject to direction by plan fiduciaries, as described above, the scope of Fidelity Trust's fiduciary duties is "significantly limited." *See* Exh. N, Department of Labor, Field Assistance Bulletin ("FAB") 2004-03 (Dec. 17, 2004) at 7.[10] Plaintiff cannot state a claim against Fidelity Trust unless the alleged ERISA violations arose from these "significantly limited" duties.

---

[10] Courts evaluating ERISA claims against directed trustees in ERISA actions have found FAB 2004-03 "especially worthy of deference." *See DiFelice v. US Airways, Inc.*, 397 F. Supp. 2d 735, 751 n. 25 (E.D. Va. 2005). *See also In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 446 ("[T]he opinions expressed in the Bulletin are well-reasoned and flow from a careful analysis of complex issues.").

In the context of publicly traded employer securities held in an ERISA plan, such as those of Foamex, ERISA limits a directed trustee's duty. As a general matter, the FAB establishes that a directed trustee "does not have an obligation to duplicate or second-guess the work of plan fiduciaries that have discretionary authority over the management of plan assets and does not have a direct obligation to determine the prudence of a transaction." *See* Exh. N, FAB at 4. This conclusion is based upon several considerations: (1) the markets in which the employer's securities trade are presumed efficient, such that stock prices reflect publicly available information and known risks; (2) the securities laws impose obligations on the employer, its directors and its officers to provide accurate information to the investing public; and (3) ERISA imposes stringent fiduciary duties on the directing fiduciaries issuing directions. *See* Exh. N, FAB at 5.

Given the narrow role of a directed trustee, Plaintiff's Amended Complaint cannot succeed as a matter of law in establishing a fiduciary role for Fidelity Trust in the decision to sell Foamex stock, and consequently cannot establish fiduciary breach.

1. **Fidelity Trust is Not a Fiduciary For Directed Activities**. Plaintiff contends that Fidelity was a fiduciary because it exercised authority or control with respect to management or disposition of plan assets in the Fund. *See* A.C., ¶17. However, consistent with the FAB, the Third Circuit recognizes that a directed trustee's actions taken pursuant to direction are not fiduciary in nature. *See Srein v. Frankford Trust Co.*, 323 F.3d 214, 221-22 (3d Cir. 2003) (limiting ERISA claims against directed trustee to those involving undirected control over plan assets).

The Amended Complaint acknowledges that all of the complained-of transactions were directed. *See* A.C., ¶¶37-41. Thus, absent some flaw in the directions, or some basis to ascribe additional fiduciary duties to Fidelity Trust, Plaintiff's fiduciary breach claims fail.

**2.   Fidelity Trust Followed Proper Directions**. The Amended Complaint criticizes Fidelity Trust's conduct in following direction to sell Foamex stock because they originated with Foamex (the plan sponsor), not the Plan's named fiduciary, the Foamex Committee. *See* A.C., ¶65. This allegation is contrary to the direction documents referenced in the Amended Complaint. Each of the direction letters at issue was signed by Thomas A. McGinley. The Amended Complaint expressly concedes that McGinley is authorized to furnish directions to Fidelity on behalf of the Foamex Committee (i.e., the named fiduciary). *See* A.C., ¶¶17, 40. McGinley's signatory authority is corroborated in the Trust Agreement, as well. *See* Trust Agreement, §§7(b) and 7(c) & Schedules D and E thereto.

Thus, the written directions issued to Fidelity Trust (Exhs. J-M) reveal that Plaintiff's allegations are completely untrue. Since the Amended Complaint concedes that McGinley is authorized to issue written directions for the Foamex Committee, and the letters themselves bear McGinley's signature, the assertions in Plaintiff's Fourth Claim must be dismissed.

**3.   No Other Allegations in the Amended Complaint Establish That Fidelity Trust Acted in a Fiduciary Role in these Transactions**. Having failed to establish that Fidelity Trust acted outside proper directions, the Amended Complaint makes a final unsuccessful attempt to assign Fidelity Trust a fiduciary role in the decisions to sell Foamex stock. The Amended Complaint alleges that Fidelity Trust "instructed" or "advised" one or more of the Foamex defendants that the liquidation of the Foamex Fund was a "proper course of action." *See* A.C., ¶37. Plaintiff bases this contention on an excerpt of a letter from a Foamex

-13-

representative stating that, "[o]n the advice of Fidelity, Foamex agreed to commence the liquidation of all Foamex shares in the Stock Fund on January 23, 2006." *See* A.C., ¶38. From this quoted language, it is unclear whether Fidelity Trust's alleged "advice" related to the timing of the liquidation, or to the liquidation itself.[11]

There is no basis for the Court to conclude that this purported "advice" creates ERISA liability. While ERISA assigns fiduciary roles to those who provide investment advice for a fee, *see* ERISA §3(21)(A)(ii), 28 U.S.C. §1002(21)(A)(ii), Plaintiff's vague assertions are nevertheless insufficient to cast Fidelity Trust in a fiduciary role.

Under regulations promulgated by the Department of Labor, the agency assigned responsibility for interpretation and enforcement of ERISA, an investment adviser is not a plan fiduciary, unless it renders advice "*on a regular basis* to the plan *pursuant to a mutual agreement, arrangement or understanding,* written or otherwise, between such person and the plan or a fiduciary with respect to the plan, *that such services will serve as a primary basis for investment decisions* with respect to plan assets . . . ." *See* 29 C.F.R. §2510.3-21(c)(1)(ii)(B) (emphasis added).[12]   The decision to liquidate the Foamex Fund is obviously an isolated instance, and the Amended Complaint does not allege that Fidelity Trust provided investment advice "on a regular basis," as required by the applicable regulation. Further, Plaintiff has not, and cannot, plead that Fidelity Trust and the Foamex defendants had any "mutual agreement,

---

[11]   Fidelity Trust specifically denies that it advised any Foamex defendant to liquidate the Foamex Stock fund or to sell the stock, but accepts the allegation as true for purposes of the motion to dismiss.

[12]   DOL regulations are accorded "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 843-844 (1984); *Ciarlante v. Brown & Williamson Tobacco Corp.,* 143 F.3d 139, 145 (3d Cir. 1998) (stating that *Chevron* deference is due where the statute expressly delegates "to the Department of Labor the authority to promulgate regulations interpreting" the statute). *See also* ERISA §505, 29 U.S.C. §1135.

arrangement or understanding" that Fidelity Trust will provide investment advice at all, let alone an understanding that such advice would serve as the primary basis for the Foamex Defendants' decisions.  On the contrary, the Trust Agreement expressly *prohibits* Fidelity Trust from giving such investment advice.  *See* Trust Agreement, §4(a).  This precludes any inference of the requisite "mutual" agreement, arrangement or understanding.

The FAB provides that a directed trustee does not step into a fiduciary role of providing investment advice when it provides "information . . . to a named fiduciary concerning the prudence of a direction."  *See* FAB at 7.  There is nothing in the Amended Complaint to suggest that the alleged "advice" was anything more than that contemplated by the FAB.  In short, even these stray allegations do not establish that Fidelity Trust occupied a fiduciary role with respect to the stock sales.

**B.     The Challenged Transactions Are Consistent With the Instruments Governing the Plan.**  Plaintiff's First and Seventh Claims are predicated on the notion that defendants could not sell any of the company stock, because the Plan's "Definitions" section described the "Foamex Stock Fund" as "a non-diversified stock fund that invests *solely* in Employer Stock."  *See* Plan, §1.32 (emphasis added).  *Cf.* A.C., ¶¶8, 30-32, 49.  Based entirely on this premise,[13] Plaintiff asserts that Fidelity Trust (and the other defendants) acted contrary to the "documents and instruments governing the plan," by raising the cash component in the Foamex Fund, and ultimately liquidating the Fund.  *See* A.C., ¶49.

---

[13]     The Amended Complaint makes passing reference to Fidelity Trust's implementation of the February 2006 direction to re-purchase stock in the Foamex Fund.  This direction appears to relate to Plaintiff's alleged damages, not any breach of duty.

The Foamex Fund's sale of company stock to raise liquidity was consistent with the terms of the Plan and Trust Agreement.[14]   Contrary to Plaintiff's view, Section 4(e) of the Trust Agreement expressly contemplates that the Foamex Fund will hold "cash or short-term liquid investments." Thus, the "documents and instruments governing the plan" (*cf.* A.C., ¶49) are inconsistent with Plaintiff's contention that the Foamex Fund must invest in company stock *exclusively*.

In apparent recognition of this flaw, the Amended Complaint adds allegations that the Foamex Fund was "frozen" during the relevant period, and therefore had no need for cash or other liquid assets. *See* A.C., ¶¶31-32.  Based on this allegation, Plaintiff reiterates the legal conclusion that *any* holding other than Foamex common stock was a violation of the terms of the Plan documents. *See* A.C., ¶49.

This argument fails for several reasons.  With respect to the September 22, 2005 and January 6, 2006 written directions to raise the cash target in the Foamex Fund, the directions included an express representation that the direction was to provide additional liquidity in the Foamex Fund.   *See* Exhs. J and K.   There is nothing untoward in this representation. Specifically, the Trust Agreement confers on the Foamex Committee the power to establish the Foamex Fund's "target percentage" of the Foamex Fund's cash and other liquid assets, and to direct Fidelity Trust accordingly. *See, e.g.,* Trust Agreement, §4(e).

Contrary to Plaintiff's suggestion (A.C., ¶¶31-32), it is also irrelevant that the Fund was "frozen" at the time of these directions, since Foamex (1) was then in bankruptcy, and (2) had publicly disclosed the possibility that Foamex stock might be cancelled.  The elimination of the Foamex Fund as an investment option in the Plan would require 100% liquidity, so that Fund

---

[14]      Assuming *arguendo* that the Plan and the Trust Agreement were in conflict on this point, the Trust Agreement controls. *See* Trust Agreement, §16(b).

assets could be re-allocated among individual accounts.   As acknowledged in the Amended
Complaint, the liquidation of the Foamex Fund eventually became a reality. *See, e.g.,* A.C., ¶50.
Thus, each direction to raise cash was entirely consistent with the liquidity provisions of the Plan
documents, even if only as a preface to the eventual liquidation.

Likewise, the January 20, 2006 direction to liquidate the Foamex Fund is a proper
direction, which Fidelity Trust was obligated by ERISA to follow. *See, e.g., Benefits Comm. of
Saint-Gobain Corp. v. Key Trust Co.*, 313 F.3d 919, 931-32 (6th Cir. 2003) (holding that directed
trustee violated ERISA when it refused to implement valid direction).   By that time, Foamex had
filed its bankruptcy reorganization plan, which called for the cancellation of all stock.   Under
these circumstances, it is not surprising that the direction letter notified Fidelity Trust that the
Foamex Fund was being eliminated from the Plan. *See* Exh. L.   In fact, this direction letter
contained an express representation that Foamex would amend the Trust Agreement to reflect
this decision. *See* Exh. L.   In the "Acceptance & Authorization" portion at the end of the
direction letter, Thomas McGinley executed the liquidation direction both on behalf of the
Committee and of Foamex.   Thus, there was no reason for Fidelity Trust to refuse to implement
this direction, and thus no basis for an ERISA claim.

Plaintiff's claims fail for another reason:   Plaintiff's proposed interpretation of the Plan
documents is itself inconsistent with ERISA.   It is settled law that a Plan interpretation
forbidding diversification of employer securities – *precisely* the interpretation Plaintiff urges as a
basis for this action – improperly "constrain[s] the [fiduciaries'] ability to act in the best interest
of the beneficiaries." *See Moench, supra*, 62 F.3d at 567 (rejecting a fiduciary's interpretation of
an employee stock ownership plan as requiring exclusive investment in company stock). *See
also Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995) ("[A] plan provision that completely

prohibits diversification of ESOP assets necessarily violates the purposes of ERISA."). In this case, Plaintiff posits that Fidelity Trust should have disregarded the Foamex Committee's directions to divest the Foamex Fund of distressed shares of a bankrupt company, simply because the word "solely" appears in the Plan's description of the Foamex Fund. *See* Plan, §1.32; A.C., ¶49. Even were Plaintiff's elevation of that provision appropriate in light of the Trust Agreement provisions expressly contemplating short-term investments in the Foamex Fund, Plaintiff's proposed interpretation is wrong as a matter of law, and cannot sustain Plaintiff's claims against Fidelity Trust.

     **C.**    **Fidelity Trust Has No Co-Fiduciary Liability.** The Complaint also purports to raise a claim for co-fiduciary liability under ERISA §405, 29 U.S.C. §1105. As noted above, there are no additional factual allegations supporting this claim. *See* A.C., ¶¶81-85. The plain language of the ERISA provision regarding co-fiduciary liability requires, as an element of the claim, not only a pre-existing breach of fiduciary duty (*see* ERISA §405(a), 29 U.S.C. §1105(a)), but a specific set of circumstances on the part of the entity on whom plaintiff seeks to impose co-fiduciary liability. The Amended Complaint makes no effort to provide any factual basis for the required assertions, other than a citation of the statute. This is precisely the type of pleading that cannot be condoned after the Supreme Court's decision in *Twombly, supra.*

     Moreover, any co-fiduciary liability is properly limited to those circumstances within the ambit of the Fidelity Trust's fiduciary role. For that reason, Fidelity Trust, as directed trustee, cannot have co-fiduciary liability for complying with proper directions in accordance with the governing documents and ERISA. *See, e.g., DiFelice, supra,* 397 F. Supp. 2d at 757-78 & n. 6 ("[W]here, as here, a directed trustee is not alleged to have violated his exclusive duties, but to have failed to object to the named fiduciary directions, a directed trustee's primary liability as a

fiduciary, and its secondary liability as a co-fiduciary are essentially co-extensive."). *See also, e.g., In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1040-41, 1051 (S.D. Ohio Mar. 31, 2006) (dismissing co-fiduciary claim against a directed trustee where plaintiffs failed to allege violation of ERISA §403 duties).   As a result, Plaintiff's Seventh Claim must be dismissed as to Fidelity Trust.

III.  CONCLUSION

This Court should reject all of Plaintiff's claims against Fidelity Trust and dismiss Fidelity Trust, with prejudice, from this action.


**Dated:   January 7, 2008**

<div style="margin-left:40%;">

Respectfully submitted,

/s/Marshall J. Walthew
Marshall J. Walthew (PA I.D. 55329)
Sara B. Richman (PA I.D. 200729)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone:  (215) 981-4224
Facsimile:  (215) 981-4750

—and—

Howard Shapiro
Charles F. Seemann III
Michael D. Spencer
PROSKAUER ROSE LLP
909 Poydras Street, Suite 1100
New Orleans, LA  70112
Telephone:  (504) 310-4088
Facsimile:  (504) 310-2022

Amy Covert (PA Bar No. 77186)
PROSKAUER ROSE LLP
One Newark Center
Newark, NJ  07102-5211
Telephone:  (973) 274-3200
Facsimile:  (973) 274-3299
Counsel for Fidelity Management Trust Co.

</div>