# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILLIAM STANFORD, JR., individually and on behalf of all other similarly situated persons and on behalf of the Foamex L.P. Savings Plan, Plaintiff, | : : : : : | CIVIL ACTION NO. 07-4225 |
| v. | : : | |
| FOAMEX L.P. et al. Defendants. | : : | |

## Memorandum and Order

YOHN, J.                                                    August ____, 2008


      William Stanford, individually and on behalf of a class of all other similarly situated

persons and Foamex L.P. Savings Plan ("Plan"), brings this Employee Retirement Income

Security Act ("ERISA")[1] civil enforcement lawsuit against Foamex L.P., the Foamex L.P.

Benefits Committee ("Committee"),[2] Fidelity Management Trust Company ("Fidelity"), and

Unknown Fiduciary Defendants 1-100.  In the eight count Amended Complaint, plaintiff alleges

that defendants breached their fiduciary duties concerning the Plan.  Foamex and the Committee

move to dismiss all counts against them pursuant to Federal Rule of Civil Procedure 12(b)(6)

---

[1] Pub. L. No. 93-406, 88 Stat. 829 (1974) (codified in various sections of 29 U.S.C. ch. 12).

[2] The Committee consisted of Foamex employees appointed by Foamex to run the Plan. (Am. Compl. ¶ 15.)

1

either for failure to exhaust administrative remedies or for failure to state a claim on which the

court may grant relief.[3]  Fidelity separately moves to dismiss the Amended Complaint under Rule

12(b)(6) for failure to state claim against it.  For the reasons discussed herein, the court will deny

defendants' motions as to Counts I, II, III, IV, V, and VII, and grant defendants' motions as to

Counts VI and VIII.  The court will dismiss Count VI without prejudice and will grant plaintiff

leave to amend that count.

## I.      BACKGROUND

Plaintiff's Amended Complaint makes the following allegations, which the court must

accept as true for the purposes of the present motions.  Plaintiff is a Foamex employee and Plan

participant.  (Am. Compl. ¶ 10.)  In 2001, Foamex established and sponsored the Plan. (*Id.* ¶¶ 6,

11.)  The Plan is a 401(k) plan for tax purposes and qualifies under ERISA § 3(2)(A) and (32), 29

U.S.C. § 1002(2)(A) & (32).  (Am. Compl. ¶ 6.)  The Plan in turn established the Foamex Stock

Fund ("Fund"), defined as a "non-diversified stock fund that invests solely in Employer Stock,"

the common stock of Foamex International, Inc.[4]  (*Id.* ¶ 8; Plan § 1.32.)  The Trust Agreement

explains:

> Investments in the Stock Fund will consist primarily of shares of Sponsor
> Stock.  However, in order to satisfy daily participant requests for exchanges, loans
> and withdrawals, the Stock Fund will also hold cash or other short-term liquid

---

[3] Pursuant to a stipulation and order dated May 23, 2008, defendants Douglas Ralph and Steven Drap, who are members of the Committee, have joined Foamex and the Committee's motion to dismiss.

[4] The filings do not indicate the precise relationship between Foamex L.P. and Foamex International, Inc.

investments in an amount that has been agreed to in writing by the Sponsor and the Trustee.

(Trust Agreement § 4(e).)[5]

The Amended Complaint alleges that Foamex and the Committee exercised authority or control over the management of the Plan's investment in the Fund, making them fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Under a Trust Agreement between Foamex and Fidelity, Fidelity was the trustee of the trust that held the Plan's assets, including those invested in the Fund.   (Am. Compl. ¶ 17.)  The Plan directed that the Committee had authority to alter the composition of the Fund (*id.* ¶¶ 17, 39-40), and under the terms of the Trust Agreement, Fidelity was obligated to follow the directions of the Committee, and only then if in written form executed by Thomas A. McGinley, Foamex's Director of Compensation and Benefits; Tina Patras; or Mary Harmer (*id.* ¶¶ 17, 40).

From the Plan's creation in 2001 through July 20, 2005, participants were permitted to invest assets from their individual accounts in the Fund.   (*Id.* ¶¶ 7, 9, 50.)  Foamex offered matching contributions to participants as an incentive to invest in the Fund.   (*Id.* ¶ 9.)  Plaintiff invested a portion of his Plan assets in the Fund.

---

[5] Similarly, the Summary Plan Description provides:
.  .  .  The investment performance of the fund is directly tied to the financial performance of Foamex International Inc. and its subsidiaries, along with general market conditions.  Because of the non-diversified nature of the fund, investing in this fund involves a greater element of risk than the other available funds.
    *A percentage of assets will be held as cash (short-term investments).  Your ownership is measured in units of the fund instead of shares of stock.  This is neither a mutual fund nor a diversified or managed investment option. . . .*
(Foamex L.P. Savings Plan For Salaried Employees Summary Plan Description 7.)

The Amended Complaint alleges that, effective July 20, 2005, Plan Amendment No. 4 ("Amendment 4") froze all new transactions. (*Id.* ¶¶ 7, 50.) After July 20, 2005, therefore, although the Fund was permitted to hold cash or short-term liquid investments, such holdings were unnecessary because no Fund exchanges or withdrawals could be made. Prior to the freeze on transactions, the Fund was comprised of 95% stock and 5% cash. Upon Fidelity's advice, Foamex directed Fidelity to sell the Fund's Employer Stock to raise the cash levels to 20% in September 2005; 50% in January 2006; and 100% by January 30, 2006; effectively liquidating the Fund. (*Id.* ¶ 37.) On February 8, 2006, defendants repurchased the Employer Stock at higher prices than it was sold. (*Id.* ¶ 42.) By the end of February, the Fund was comprised of about 50% stock and 50% cash. (*Id.*) In its June 29, 2006 Form 11-K filing with the Securities and Exchange Commission ("SEC'), however, Foamex stated that:

> As a result of [Foamex's bankruptcy filing], the plan sponsor announced to participants on January 27, 2006 that the remaining shares of the Foamex Stock Fund would be liquidated and transferred to the Fidelity Retirement Money Market Portfolio on or about February 24, 2006. However, due to delays in the bankruptcy process the liquidation was deferred.

(Form 11-K at 10.)

Because the Fund invested primarily in Employer Stock, the net asset value ("NAV") of the Fund historically tracked the share value of that stock; however, starting in September 2005, this trend ceased. (Am. Compl. ¶ 34.) From January through July 2006, the value of Employer Stock rose from $0.03 to $3.49 per share, while the NAV of the Fund rose from $0.01 to only $0.13 per share. (*Id.*) Plaintiff inquired into the disparity on numerous occasions from May

through December 2006, receiving no explanation.[6]  In December, McGinley responded that

Foamex's earlier Chapter 11 bankruptcy plan required the Fund to be liquidated in January 2006.

(*Id.* ¶ 35.)

Plaintiff then filed suit in this court, bringing eight counts[7]:  (I) breach by Foamex, the

Committee, and Fidelity of their fiduciary duties under ERISA § 404(a)(1)(D) to follow Plan

documents when they made unauthorized sales of Employer Stock from the Fund and transferred

existing Fund investments in violation of Amendment No. 4; (II) breach by Foamex of its duty

under ERISA § 404(a)(1)(B) to monitor the Committee; (III) breach by Foamex under the theory

of respondeat superior for the breaches by the members of the Committee; (IV) breach by

Fidelity of its duty under ERISA § 403(A)(1) to follow proper directions when it followed the

unauthorized direction of Foamex and violated the Plan's Fund's rules by liquidating it entirely;

(V) breach by Foamex of its duty under ERISA § 404(a)(1)(B) to monitor Fidelity; (VI) breach

by the Committee of its duty under ERISA § 404(a)(1) not to mislead Plan participants and to

accurately inform Plan participants regarding administration of the plan; (VII) breach by all

defendants of their cofiduciary duties under ERISA § 405; and (VIII) a claim for attorney fees

and costs under ERISA § 502(g) and the common fund theory.

---

[6] Paragraph 35 of the Amended Complaint alleges that plaintiff "wrote multiple emails to Tom McGinley . . . and Greg Christian . . . asking why the Foamex Stock Fund price was not tracking the rise of Foamex International stock."  (Am. Compl. ¶ 35 (detailing communications on, inter alia, September 12, November 28, December 11, December 12, and December 13, 2006).)  Paragraph 36 alleges that "[n]o explanation was provided as to why the value of the Foamex Stock Fund was not tracking the increase in value in Foamex International Stock."  (*Id.* ¶ 36; *see also id.* ¶ 37 (alleging that Foamex "stonewalled" plaintiff's request for information and that "[o]nly with assistance of counsel did Stanford discover" the July and September 2005 and January 2006 transactions).)

[7] Plaintiff refers to eight "claims," which the court will treat as separate "counts."

On January 7, 2008, defendants filed their motions to dismiss.  Pursuant to Federal Rule

of Civil Procedure 12(b)(6), Foamex and the Committee move to dismiss Counts I, II, III, V and

VII of the Amended Complaint without prejudice for failure to exhaust administrative remedies

provided under the Plan and all counts with prejudice for failure to state a clam on which the

court may grant relief.  Fidelity separately moves to dismiss the Amended Complaint with

prejudice under Rule 12(b)(6) for failure to state claim against it on which the court may grant

relief.

## II.    DISCUSSION

### A.    Rule 12(b)(6) Standard

When deciding whether to dismiss a claim pursuant to Rule 12(b)(6), the court is testing

the sufficiency of the complaint.  *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citation

omitted).  The complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The

complaint "does not need detailed factual allegations," but the plaintiff must "provide the

grounds of his entitlement to relief," which "requires more than labels and conclusions."  *Id.* at

1964 (citations, alterations, and quotation marks omitted).  The factual allegations, however,

"must be enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 1965 (citations

omitted).  "'[A] claim requires a complaint with enough factual matter (taken as true) to suggest'

the required element.  This 'does not impose a probability requirement at the pleading stage,' but

instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp.*, 127 S. Ct. at 1965).

Fidelity has attached numerous documents to its motion to dismiss.  Plaintiff objects to the introduction of Fidelity's exhibits J, K, L, and M and asks the court to strike them from the record.  "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also rely on a "document integral to or explicitly relied upon in the complaint . . . without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir.1996) and citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document")).

Exhibits J, K, and M are letters from McGinley to Liz Pathe, Fidelity's Account Manager for Foamex.  Exhibit L is letter from Fidelity's Jeff Scheper to McGinley.  As these exhibits were not attached to the Amended Complaint and are not matters of public record, the court may consider them only if the are undisputedly authentic and plaintiff bases his claims on them.

The documents are not of undisputed authenticity because plaintiff disputes their authenticity.  (Pl.'s Resp. Defs.' Mots. to Dismiss 9 n.4.)  It is not relevant that plaintiff does not

provide a specific reason for challenging the documents' authenticity, as plaintiff is entitled to

validate their authenticity, and, moreover, Fidelity has not authenticated the letters.

Because plaintiff has raised the issue of authenticity, the court cannot conclude that they are

"undisputedly authentic."  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)

("'Undisputed' in this context means that the authenticity of the document is not challenged."

(citations omitted)).

The court also concludes that plaintiff's claims are not based on Exhibits J, K, L, or M.

In the Amended Complaint, plaintiff alleges that Fidelity acted based on direction from Foamex

in violation of the Plan.  (*See* Am. Compl. ¶¶ 37, 40- 41 & 63-65).  These documents, if

authenticated, may suggest an alternative, proper source of the instructions, but they are not the

basis of plaintiff's claims.  For example, his claims do not turn on their interpretation.  The court,

thus, will not consider them in the present motion to dismiss.

In addition, plaintiff argues that he was "unaware of [the documents'] existence until they

were attached to Fidelity's motion" (Pl.'s Resp. Defs.' Mots. to Dismiss 9 n.4).  The plaintiff

deserves an opportunity to validate the authenticity of the documents during discovery and to

review the documents' contents to determine how they relate to his claims.  *See, e.g.*, *Cortec

Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (noting that "the problem that

arises when a court reviews statements extraneous to a complaint generally is the lack of notice

to the plaintiff that they may be so considered"); *see also Pension Ben. Guar. Corp.*, 998 F.2d at

1196-97 (noting that "[t]he reason that a court must convert a motion to dismiss to a summary

judgment motion if it considers extraneous evidence submitted by the defense is to afford the

plaintiff an opportunity to respond"). The court will, thus, not consider Exhibits J, K, L, or M for the purposes of the present motion.[8]

**B.      Defendants' Motions to Dismiss**

**1.      Counts I, II, III, V, and VII**

In Count I, plaintiff alleges that Foamex, the Committee, and Fidelity violated ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), "by failing to act in accordance with the documents and instruments governing the Plan, which stated that the Foamex Stock Fund was 'a non-diversified stock fund that invested solely in Employer stock.'"  (Am. Compl. ¶ 49.)  According to the Amended Complaint, defendants made "unauthorized sales of Foamex International stock from the Foamex Stock Fund" and allowed transfers out of the Fund prior to its liquidation, violating the terms of the Plan and Amendment 4, respectively, and thus breaching their fiduciary duties. (*Id.* ¶ 49-50.)  Foamex and the Committee move to dismiss Count I for failure to exhaust the administrative remedies provided under the Plan and for failure to state a claim on which the court may grant relief.  They move to dismiss Counts II, III, V and VII because these counts are derivative of Count I.  Fidelity moves to dismiss Count I against it for failure to state a claim on which the court may grant relief because it is not a fiduciary or cofiduciary under ERISA.[9]

**a.      Exhaustion**

The court will deny Foamex and the Committee's motion to dismiss Count I on the ground that plaintiff has not exhausted available administrative remedies.  In the context of

---

[8] Whether these documents will ultimately cause plaintiff to reconsider some of his claims is, of course, a matter for another day.

[9] Plaintiff does not bring Counts II, III, V, or VII against Fidelity.

9

ERISA, the exhaustion of administrative remedies is a judicially created concept stemming from Congress's mandate that ERISA-qualifying plans provide beneficiaries with a dispute resolution process when their claims for benefits are denied. *D'Amico v. CBS Corp.*, 297 F.3d 287, 290-91 (3d Cir. 2002); *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 249 (3d Cir. 2002); *Zipf v. AT&T*, 799 F.2d 889, 891 (3d Cir. 1986). ERISA requires that every plan provide an administrative appeals process to beneficiaries when their claims for benefits are denied. *See* 29 U.S.C. § 1133. When a plan participant claims that he or she has unjustly been denied benefits, the courts in the Third Circuit require beneficiaries to exhaust this congressionally mandated system before resorting to the courts. This exhaustion requirement

> ensures that the appeals procedures mandated by Congress will be employed, permits officials of benefit plans to meet the responsibilities properly entrusted to them, encourages the consistent treatment of claims for benefits, minimizes the costs and delays of claim settlement in a nonadversarial setting, and creates a record of the plan's rationales for denial of the claim.

*Zipf*, 799 F.2d at 892.

Because the mandated administrative procedures cover only ERISA claims related to denials of benefits, the Third Circuit "requires the exhaustion of Plan remedies in some, but not all, ERISA cases." *D'Amico*, 297 F.3d at 290-91; *see also Licensed Div. Dist. No. 1 v. Defries*, 943 F.2d 474, 479 (4th Cir.1991) ("It is undisputed that the administrative appeals procedure ERISA requires in every plan does not apply to non-benefit challenges." (citations omitted)). The court draws "a distinction between claims to enforce the terms of a benefit plan," which require exhaustion, "and claims to assert rights established by the ERISA statute," which do not. *D'Amico*, 297 F.3d at 291 (citing *Zipf*, 799 F.2d at 891). The "[e]xhaustion requirements for fiduciary allegations brought under section 404 . . . hinge on whether the allegations amount to a

10

claim for plan benefits." *Id.* "[A]lleged fiduciary breaches involve a claim for benefits when 'resolution of the claims rests upon an interpretation and application of an ERISA-regulated plan rather than on an interpretation and application of ERISA' itself." *Id.* (quoting *Harrow*, 279 F.3d at 253 and citing *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)).  Under ERISA, however, some section 404 claims "are synonymous with a claim to enforce the terms of a benefits plan." *Id.* at 291.  Plaintiff's claim in Count I arises under ERISA § 404(a)(1)(D), which requires the fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan."

In *Smith*, the Fourth Circuit held that exhaustion was not required where the fiduciaries, inter alia, "failed to discharge their fiduciary duties with regard to the 401(k) Plan as required by ERISA §§ 404 and 406 by selling the preferred stock at a grossly undervalued price."  184 F.3d at 363.  In that case, the plaintiff did "not challenge a denial of benefits or an action related to denial of benefits, but rather the conduct of [the fiduciaries] that he claims has lowered the value of his and the other participants' 401(k) Plan accounts." *Id.*  These claims constitute "breaches of fiduciary duties . . . under ERISA independent of a claim for benefits." *Id.*; *see also Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311 (5th Cir. 2006) (en banc) (per curiam) (holding that "[t]he district court . . . erred in concluding that these claims are disguised benefits claims requiring exhaustion of administrative remedies; the plaintiffs do not seek the distribution of any benefits, but instead assert fiduciary breach claims not requiring exhaustion of administrative remedies").  The Third Circuit reconciled *Smith* with *Harrow* by noting that exhaustion was not required in *Smith* because the breach of fiduciary duty in that case—sale of stock at an undervalued price—was independent of the denial of benefits; whereas the breach alleged in *Harrow* was

11

merely a disguised benefits claim.  *D'Amico*, 297 F.3d at 291.[10]  This case closely resembles

*Smith*.  Plaintiff did not make a request for Plan benefits that was denied, but instead challenges

the actions of the fiduciaries in their management of the Plan.  Plaintiff brings this suit not to

recoup a particular denied benefit for himself, but to hold the fiduciaries accountable for actions

that allegedly reduced the value of the Plan in contradiction to its terms and to restore losses—on

behalf of the Plan—from the fiduciaries.  *See* Brief of Amicus Curiae Elaine L. Chao, Secretary

of the United States Department of Labor, Supporting the Plaintiffs-Appellants and Requesting

Reversal of the District Court's Decision at 23, *Milofsky*, 442 F.3d 311 (No. 03-11087) (arguing

that "[u]nlike a benefit claim, any recovery for a fiduciary breach comes from the breaching

fiduciary, not the plan[; t]hus, the defendants' argument effectively suggests that the plaintiffs

should exhaust a plan process that does not exist in order to recover amounts that the plan cannot

pay").

     In addition, the types of claims plaintiff alleges simply have no corresponding ERISA-

mandated administrative appeals process.  *Licensed Div. Dist. No. 1*, 943 F.2d at 479 (holding

"that if there is no statutory requirement for an appeals procedure respecting claims not involving

benefits, the logic of the exhaustion requirement no longer applies" (citations omitted)).  Even if

the court were to stay the proceedings to allow exhaustion of available administrative procedures

---

    [10] Defendants' reliance on *Harrow* is misplaced because *Harrow* involved a claim for
benefits that was denied.  279 F.3d at 246.  Harrow alleged that the benefit plan failed to cover a
particular prescription drug.  *Id.* at 254.  Harrow therefore brought a separate breach of fiduciary
duty claim for the same claim denial.  *Id.* at 252-53.  The Third Circuit concluded that the breach
of fiduciary duty claim was nothing more than a disguised benefits claims.  *Id.*  at 254.  Similarly,
in *D'Amico*, the court considered a case in which the beneficiaries sued to have their benefits
declared vested, another benefit that had been denied under the plan.  297 F.3d at 292.
*D'Amico*'s language distinguishing between cases like *Harrow*, requiring an interpretation of a
plan, and those like *Smith*, resting on interpretation of ERISA, was in that context.

under the Plan, the Plan does not provide administrative procedures for the breaches of fiduciary duties that plaintiff is alleging; the claims procedures detailed in the Plan only cover clams for benefits under the Plan.  (*See* Plan § 12.7.1 (emphasizing that appropriate claims are those for a benefit "paid under the Plan.")[11]  The procedures also establish rules for claim review, claim denial, and appeal from a claim denial.  (*See* Plan § 12.7.2-4.)  These additional provisions support plaintiff's contention that the procedures are intended for benefits claims.[12]

To counter this conclusion, defendants point to Plan § 12.3, which provides:  "The Committee shall have discretionary authority to interpret the Plan and to resolve ambiguities, inconsistencies and omissions, which findings shall be binding, final and conclusive." Defendants assert that this provision must be read to incorporate the Committee's ability to

---

[11] Plan § 12.7.1 provides:

Initial Claim.  A Member or Beneficiary who believes himself *entitled to benefits hereunder* (the "Claimant"), or the Claimant's authorized representative acting on behalf of such Claimant, must make *a claim for those benefits* by submitting a written notification of his *claim of right to such benefits*.  Such notification must be on the form and in accordance with the procedures established by the Committee. Except for benefits paid pursuant to Section 6.2, *no benefit shall be paid under the Plan until a proper claim for benefits has been submitted*.

(emphasis added).

[12] For example, the review section sets a goal that "Plan provisions have been applied consistently to similarly situated Claimants," indicating a focus on benefits for individual beneficiaries, not claims on the Plan's behalf.

Foamex and the Committee's reliance on *Graden v. Conexant Systems Inc.*, 496 F.3d 291 (3d Cir. 2007), is misplaced.  In *Graden*, the Third Circuit considered the definition of "benefit" outside of the context of exhaustion.  *Graden* adopted a "benefits are benefits" definition from the Seventh Circuit, *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007).  Applying that definition in the context of exhaustion would result in an exhaustion requirement for all breaches of fiduciary duties, even those unrelated to claims for benefits–such as the claim in this case, because success on the fiduciary duty claim would restore lost value to the Plan and thus to the beneficiaries' accounts.  This result cannot be reconciled with the Third Circuit's conclusion that not all fiduciary duty claims require exhaustion.  *See, e.g.*, *D'Amico*, 297 F.3d at 290-91.

13

resolve allegations of breaches of their own fiduciary duties.  The court disagrees.  Whatever role

the Plan may define for the Committee, including the duty to resolve Plan ambiguities as it

proceeds with the fiduciary duties entrusted to it, that definition does not provide an

administrative mechanism that plaintiff could have exhausted.  The key distinction is the

availability of procedures to exhaust, not the definition of the Committee's authority.  Thus,

plaintiff was not required to exhaust administration remedies, and the court will deny defendants'

motion to dismiss for failure to exhaust administrative remedies.

### b.    Substance of Count I

The court will deny Foamex and the Committee's motion to dismiss Count I on the

ground that the liquidation of the Fund did not violate the terms of the Plan.  The Plan defines the

Fund as a "non-diversified stock fund that invests solely in Employer Stock."  (Plan § 1.32.)[13]

The Trust Agreement explains that "[i]nvestments in the Stock Fund will consist primarily of

shares of Sponsor Stock."  (Trust Agreement § 4(e).)  "[I]n order to satisfy daily participant

requests for exchanges, loans and withdrawals," it, however, allows the Fund to "hold cash or

other short-term liquid investments in an amount that has been agreed to in writing by the

Sponsor and the Trustee."  (*Id.*)  The Trust Agreement continues that the "Named Fiduciary shall,

after consultations with the Trustee, establish and communicate to the Trustee in writing target

percentage and drift allowance for such short-term liquid investments."  (*Id.*)

Defendants argue that the Committee's authority to set the liquid investment percentage

means the Plan "contains no restrictions on temporary, short-term holdings in cash to

---

[13] The Plan also states that "[d]ividends, if any, shall be used, as soon as practicable, to
purchase additional such shares of Employer Stock."  (Plan § 1.32.)

14

accommodate the liquidation of the Fund." (Defs. Foamex and Committee's Mem. Supp. Mot.

Dismiss 16.) This argument is flawed. A restriction exists—the liquid investments must be

calculated to satisfy participant requests for exchanges, loans, and withdrawals. In *DiFelice v.*

*U.S. Airways, Inc.*, the United States District Court for the Eastern District of Virginia found that

"the Trust Agreement's provision that 'the cash target range shall be determined by the Trustee in

conjunction with the Company' is not, as plaintiff alleges, a grant of discretionary investment

authority to Fidelity, but a recognition that Fidelity and U.S. Airways together are in the best

position to estimate the amount of cash necessary to fulfill the limited purpose of the Company

Stock Fund's cash component." 397 F. Supp. 2d 735, 745-46 (E.D. Va. 2005). The court

explained that "[t]he cash component of the Company Stock Fund was plainly not intended as an

alternative investment or hedge against the performance of the U.S. Air Group stock, but rather

as a means 'to satisfy the Fund's cash needs for transfers and payments.'" *Id.*; *see also Edgar v.*

*Avaya*, No. 05-3598, 2006 WL 1084087, at *5 n.4 (D.N.J. Apr. 25, 2006) (holding that

"[a]llowances to invest a portion of the Fund's investments in cash or other liquid instruments

allows the Fund to accomplish its purpose of clearing transactions as requested by Plan

Participants in a timely manner, rather than offering a discretionary investment alternative to the

Fund's administrators to act as a hedge against the performance of the Company's stock"); *In re*

*Gen. Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444, at *18, 20 (E.D. Mich. Apr. 6,

2006) (holding that "the only purpose of the other liquid assets is to meet the cash flow demands

of the Plans" and that the asset manager's "authority was strictly limited to investing a very small

portion of the Plans' assets in liquid instruments[; o]therwise, it was required to invest in GM");

*In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1220 (D. Kan. 2004) (holding in a lawsuit

15

regarding a trust with identical language as is at issue in this case that "the trust agreement . . .

mandated that the Company Stock Funds invest solely in Sprint stock subject only to liquidity

requirements").

Defendants' reliance on *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), is misplaced.

In *Moench*, the Third Circuit reviewed the district court's grant of summary judgment to a

fiduciary that invested in company stock in accordance with the primary purpose of the plan,

despite the declining performance of the stock. *Id*. at 557-59. The Third Circuit held that

"fiduciaries can be liable under ERISA for continuing to invest in employer stock according to

the plan's direction." *Id.* at 556. It determined that within the ambiguous language of the plan,

to construe "primarily" as "exclusively" would "constrain[] the Committee's ability to act in the

best interest of the beneficiaries." *Id.* at 567. Thus, when conditions warrant, the fiduciary may

have to comply with the underlying ERISA duties and diversify the plan's holdings in the best

interest of the beneficiary, even if they conflict with the plan's terms. *Id.* The court also noted,

however, that "if the fiduciary, in what it regards as an exercise of caution, does not maintain the

investment in the employer's securities, it may face liability for that caution, particularly if the

employer's securities thrive." *Id.* at 571-72; *see also Edgar v. Avaya*, 503 F.3d 340, 348-49 (3d

Cir. 2007) (concluding that had defendants divested the Plans of [the employer's] common stock

. . ., they would have risked liability for having failed to follow the terms of the Plans"). Foamex

and the Committee ask this court to apply *Moench*'s holding here to conclude as a matter of law

that the "term 'solely invests' precludes the Fund from investing in other securities . . . but did

not foreclose total liquidation." (Defs. Foamex and Committee's Reply 8.) The court will not do

so on a motion to dismiss because, while the court acknowledges that *Moench* permits a

16

departure from the Plan in narrow circumstances when in the best interest of the beneficiaries, Foamex and the Committee offer no support at this stage of the proceedings for the contention that the present situation entitles them as a matter of law to liquidate the Plan or take the other actions alleged in Count I of the Amended Complaint.[14]  Thus, the court will deny defendants' motion to dismiss Count I for failure to state a claim.

### c.      Counts II, III, V, and VII

Foamex and the Committee move to dismiss Counts II (Foamex's failure to monitor the Committee), III (respondeat superior), V (failure to monitor the Fidelity), and VII (violation of cofiduciary duties) because they are premised on the allegations of Count I.  Because Foamex and the Committee provide no other basis to dismiss these counts and because the court will not dismiss Count I, the court will deny their motion to dismiss Counts II, III, V, and VII.

The court will also deny Fidelity's motion to dismiss Count VII on the ground that it owes no cofiduciary duties.  ERISA § 405, 29 U.S.C. § 1105, imposes cofiduciary duties on a fiduciary where, inter alia, the fiduciary's failure to comply with ERISA § 404(a)(1) enables another fiduciary to commit a breach or the fiduciary has knowledge of a breach by another fiduciary and fails to make reasonable efforts to remedy the breach.[15]  In this case, Foamex's and

---

[14] Moreover, defendants have not demonstrated that the relevant language of the plans in *Moench* and in this case are sufficiently similar to give *Moench* weight as controlling precedent.  *See Moench*, 62 F.3d at 567 n.4 (refusing to reach the situation where, as in this case, "the plan directed the Committee to invest the funds *solely* in [the employer] stock" (emphasis added)).

[15] ERISA § 405 provides:
In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
     (1) if he participates knowingly in, or knowingly undertakes to

the Committee's potential breaches, as alleged in Count I, preclude dismissal of plaintiff's claim against Fidelity for breach of cofiduciary duties because at minimum plaintiff alleges that Fidelity facilitated or had knowledge of and failed to remedy the transactions alleged in the Amended Complaint.

### 2.    Count IV

The court will deny Fidelity's motion to dismiss Count IV.  In Count IV, plaintiff alleges that Fidelity breached its fiduciary duties under ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1), when it sold Foamex International Stock from the Foamex Fund from July 19, 2005 through January 30, 2006 without proper instruction from the Committee.  According to the Amended Complaint, Fidelity followed directions from Foamex, not the Committee, and the directions were not made in accordance with the Plan, which did not permit the Fund to be liquidated in its entirety.  (Am. Compl. ¶ 65.)  Fidelity moves to dismiss Count IV because it followed proper direction issued from the Committee when selling Foamex stock.

Section 1103(a)(1) provides

> . . . [T]he trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that—
>> (1) the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary

---

> conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

> which are made in accordance with the terms of the plan and which
> are not contrary to this chapter.

Thus, under ERISA, the trustee must follow the direction of a named fiduciary who is not the

trustee, so long as the directions are in accordance with the plan and not contrary to the statute.

In this case, the Plan establishes that the Committee is its named fiduciary. (*See* Plan §

12.3; Trust Agreement § 7(b) & (c).) Fidelity does not dispute that it can only follow directions

from the Committee. Instead, Fidelity presents the court with the directions it followed, which

are letters from McGinley to Fidelity. The court has already decided that these documents are

not properly before it on a motion to dismiss. In addition, Fidelity has not shown that the

liquidation, even if pursuant to McGinley's direction, was in accordance with the terms of the

Plan. *See Difelice*, 397 F. Supp. 2d at 748-49 (concluding that following an otherwise proper

direction instructing the trustee to select an investment option not included in the plan would

violate the trustee's fiduciary duty under ERISA). For these reasons, the court will deny

Fidelity's motion to dismiss Count IV.

### 3.    Count VI

The court will grant Foamex and the Committees's motion to dismiss Count VI. Count

VI alleges that the Committee breached its duty to not mislead and to accurately inform Plan

participants. To allege a breach of fiduciary duty for misrepresentations under ERISA, a

plaintiff must establish: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary;

(2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation;

and (4) detrimental reliance by the plaintiff on the misrepresentation." *Burstein v. Ret. Account*

*Plan for Employees of Allegheny Health Educ. & Res. Found.*, 334 F.3d 365, 384 (3d Cir. 2003)

19

(citations omitted).  Under trust principles applicable to ERISA fiduciary claims,[16] the Third

Circuit held "that fiduciaries have a duty to inform which 'entails not only a negative duty not to

misinform, but also an affirmative duty to inform when the trustee knows that silence might be

harmful.'"  *Jordan v. Federal Exp. Corp.*, 116 F.3d 1005, 1015 (3d Cir. 1997) (quoting *Bixler v.*

*Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)).  Thus, a breach

of fiduciary duty claim may be predicated on either misrepresentation or omission.

The Committee moves to dismiss Count VI because it did not mislead Plan participants

and because plaintiff fails to allege detrimental reliance.  With regard to the first

element—misrepresentation or omission, the parties dispute the factual contents of the Amended

Complaint.  The Committee contends that the Amended Complaint only alleges

misrepresentation in the Form 11-K filed with the SEC.  Plaintiff counters that the Amended

Complaint primarily alleges misrepresentation and omission based on the Committee's failure to

affirmatively inform participants of the transactions in 2005 and 2006 that resulted in the Fund's

liquidation and McGinley's and Christian's failures to disclose the liquidation of the Fund in

response to plaintiff's e-mails.  He also asserts that the misrepresentations and omissions

contained in the Form 11-K were ancillary cover-ups to those primary misrepresentations and

omissions.  Foamex and the Committee respond that the Amended Complaint does not properly

---

[16] ERISA § 404(a) incorporates "the fiduciary standards of trust law."  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 152-53 (1985);  *Ream v. Frey*, 107 F.3d 147, 153 (3d Cir. 1997) (holding that "[a] fiduciary's duties under ERISA are based both on ERISA, particularly the prudent person standard as set forth in ERISA § 404, 29 U.S.C. § 1104, and on the common law of trusts"); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996) (noting that "Congress has instructed that section 1104 'in essence, codifies and makes applicable to . . . fiduciaries certain principles developed in the evolution of the law of trusts'") (quoting S. Rep. No. 93-127 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863).

put it on notice of allegations of misrepresentation or omission other than those based on Form

11-K.  The court must therefore determine whether the Amended Complaint alleges only

misrepresentation in Foamex's Form 11-K or the Committee's omissions related to earlier Fund

transactions,  McGinley's and Christian's failures to respond to plaintiff's e-mails, and

misrepresentation and omission based on the Form 11-K.

Count VI is contained in paragraphs 73 to 80 of the Amended Complaint.  Paragraphs 74

to 78 allege facts surrounding the Form 11-K.  The June 29, 2006 11-K Form stated that the

participants were informed that the Fund would be liquidated on February 24, 2006, but that

delays in the bankruptcy process caused the liquidation to be deferred.  As alleged in the

Amended Complaint, the Fund was functionally liquidated in late January 2006, bankruptcy

delays did not delay the liquidation, and the participants had not been informed that the

remaining shares would be liquidated.  Thus, taking these allegations as true, the 11-K Form

contained misrepresentations with regard to each of those facts and omitted to inform Plan

participants that the Fund was liquidated in late January 2006.

Paragraph 73 incorporates the earlier allegations of the Amended Complaint, including

paragraphs 35, 36, and 37.  The Committee disputes whether paragraphs 35, 36, and 37 give rise

to allegations of material omission in breach of its fiduciary duties.  Paragraph 35 alleges that in

2006 plaintiff "wrote multiple e-mails to Tom McGinley . . . and Greg Christian . . . asking why

the Foamex Stock Fund price was not tracking the rise of Foamex International stock."  (Am.

Compl. ¶ 35.)[17]  Paragraph 36 alleges that "[n]o explanation was provided as to why the value of

---

[17] That plaintiff intended these allegations to show that he "was not required to take any
further steps to exhaust administrative remedies" (Am. Compl. ¶ 35) does not, as the Committee
contends, limit the factual allegations to that purpose, (*see* Defs. Foamex and the Committee's

the Foamex Stock Fund was not tracking the increase in value in Foamex International Stock."

(*Id.* ¶ 36; *see also id.* ¶ 37 (alleging that Foamex "stonewalled" plaintiff's request for information

and that "[o]nly with assistance of counsel did Stanford discover" the July and September 2005

and January 2006 transactions).)  It also alleges that, on its June 29, 2006 Form 11-K, Foamex

"did not disclose that the Foamex Stock Fund had been liquidated in January 2006." (*Id.*)  These

paragraphs are consistent with the allegations of paragraph 79 that the Committee "breached its

fiduciary duty to affirmatively inform participants of complete and accurate information that they

would reasonably rely on in making decisions regarding Plan investments." (*Id.* ¶ 79.)  The court

concludes that the factual allegations of the Amended Complaint thus sufficiently allege

omissions by the Committee regarding the transactions in 2005 and 2006, misrepresentations and

omissions in the From 11-K, and omissions by McGinley and Christian.[18]

     Although plaintiff alleges the factual basis for the misrepresentation or omission element,

he fails to allege sufficient facts to support the element of reliance.  Plaintiff argues that his

---

Reply 10).

     [18] While not the model of clarity for pleading, the court can infer that the Committee
omitted to provide the relevant information with regard to these Fund actions, and the Amended
Complaint puts defendants on notice that those events are in question.  Defendants' reliance on
*Twombly* is misplaced.  *Twombly* requires factual pleading above the level of speculation.
Assuming the allegations of paragraphs 35, 36, 37, and 79 are true, plaintiff has alleged an
omission based on the facts of those paragraphs.  Defendants contend that plaintiff "never alleges
in paragraph 35 that the Foamex Defendant's responses omitted material information that gave
rise to a [breach of fiduciary duty]." (Defs.' Reply 10 (citing *Associated General Contractors of
California v. California State Council*, 459 U.S. 519, 526 (1982)).)  This contention is flawed.
Plaintiff alleges that the relevant defendants did not respond to his questions about the Fund
(Am. Compl. ¶ 35) and that the Committee did not inform participants of "complete and accurate
information" (*id.* ¶ 79).  Thus, plaintiff alleges the factual circumstances of his omission claim.
To demand that plaintiff allege materiality or breach of fiduciary duty specifically in paragraph
35, as opposed to later in the sections detailing his counts, would require him to incorporate legal
conclusions into every paragraph of the Amended Complaint.

pleadings are sufficient on two bases.  First, paragraph 79 of the Amended Complaint alleges that

the misrepresentation or omission prevented Plan participants from making fully informed

investment decisions.  (Am. Compl. ¶ 79.)  This pleading is too general as it does not provide any

facts demonstrating actual reliance by plaintiff on any of the alleged misrepresentations or

omissions.

Next, plaintiff argues that paragraph 35 sets forth facts showing his reliance on the fact

that the Fund was supposed to track the Stock, and that no additional pleading is necessary

because reliance is presumed where the claim is based on a failure to disclose.  He relies on

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972), a securities fraud case

in which the Supreme Court held that when the claim is one for failure to disclose, "positive

proof of reliance is not a prerequisite to recovery."  The Court determined that "[a]ll that is

necessary [for recovery] is that the facts withheld be material in the sense that a reasonable

investor might have considered them important in the making of this decision."  *Id.* at 153-54.

The "obligation to disclose and [the] withholding of a material fact establish the requisite

element of causation in fact."  *Id.* at 154.  Defendants counter that in the ERISA context, the

Third Circuit requires a pleading of the separate element of reliance for both misrepresentations

and omissions for breach of fiduciary duty claims.  *See, e.g.*, *Leuthner v. Blue Cross and Blue

Shield of Ne. Pa.*, 454 F.3d 120, 128-29 (3d Cir. 2006) (requiring pleading of detrimental

reliance in a misrepresentation and omission breach of fiduciary duty claim); *Burstein*, 334 F.3d

at 387 (holding that "[o]ur jurisprudence therefore requires "detrimental reliance" as an element

of a breach of fiduciary duty claim"); *In re Unisys Retiree Med. Benefit ERISA Litig.*, 242 F.3d

497, 509-10 (3d Cir. 2001) (noting that "the character of the decision made and reliance claimed

23

will, of course, play an important role in determining the extent of [the fiduciary's] duty and whether that duty was breached").  While the difficulty of alleging reliance on a failure to disclose may appear overly burdensome, the Third Circuit has not applied *Affiliated Ute* to ERISA misrepresentation or omission claims and thus requires plaintiffs to plead reliance. Plaintiff has not pleaded reliance on the alleged misrepresentations or omissions.[19]

The court will thus grant defendants' motion to dismiss Count VI without prejudice.  The court will grant plaintiff leave to amend the Amended Complaint to allege reliance on the various misrepresentations and omissions if he can do so.  If plaintiff chooses to amend his Amended Complaint for Count VI, the court also encourages him to clarify the factual bases of the misrepresentations and omissions on which his claim is based.

### 4.    Count VIII

In Count VIII, plaintiff seeks attorney fees and costs.  Defendants move to dismiss Count VIII because it does not state an independent claim but merely requests attorney fees.  ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  This section provides a basis for the court to award fees, but it does not constitute a ground to bring an independent count.  The court will therefore dismiss Count VIII.  This decision is, of course, academic because the court nonetheless retains the power under § 1132(g)(1) to award attorney fees and costs to either party at its discretion.

---

[19] Plaintiff has not pleaded *any* decision he made or any opportunity that he forwent as a result of the alleged misrepresentation or omission.

**III.     CONCLUSION**

As discussed in this Memorandum and Order, the court will deny Foamex and the Committee's motion to dismiss Count I for failure to exhaust and for failure to state a claim.  It will also deny Fidelity's motion to dismiss Count I for failure to state a claim.  Counts II, III, V, and VII, which defendants contend are derivative of Count I, will thus also survive the motions to dismiss.  Because the court will not presently consider the supplementary materials submitted by Fidelity, the court will also deny Fidelity's motion to dismiss Count IV.

The court will grant Foamex and the Committee's motion to dismiss Count VI without prejudice because plaintiff has failed to allege reliance.  Plaintiff has leave to amend the Amended Complaint to allege reliance and, if he chooses, to clarify the exact misrepresentations and omissions on which he relied.  The court will also grant defendants' motions to dismiss Count VIII with prejudice because the claim for attorney fees and costs is not an independent cause of action.  The court, however, retains the authority to award attorney fees and costs to either party, at the court's discretion.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILLIAM STANFORD, JR., individually and on behalf of all other similarly situated persons and on behalf of the Foamex L.P. Savings Plan, | : : : | CIVIL ACTION |
| Plaintiff, | : | NO. 07-4225 |
|  | : |  |
| v. | : |  |
|  | : |  |
| FOAMEX L.P. et al. | : |  |
| Defendants. |  |  |

## Order

YOHN, J.

**AND NOW** on this _____ day of August 2008, upon consideration of defendants Foamex L.P. and Foamex L.P. Benefits Committee's motion to dismiss (Doc. No. 29) and defendant Fidelity Management Trust Company's motion to dismiss (Doc. No. 30), plaintiff's response thereto, and defendants' replies, **IT IS HEREBY ORDERED** that:

1.      Defendants' motions to dismiss Count I and VII are DENIED.

2.      Defendants Foamex and the Committee's motion to dismiss Counts II, III, and V are DENIED.

3.      Defendant Fidelity's motion to dismiss Count IV is DENIED.

4.      Defendants Foamex and the Committee's motion to dismiss Count VI is GRANTED. Count VI of the Amended Complaint is DISMISSED without prejudice.  Plaintiff shall have 20 days from the date of this Order to file a Second Amended Complaint as to Count VI.

5.    Defendants' motions to dismiss Count VIII are GRANTED.  Count VIII of the

Amended Complaint is DISMISSED as a separate count, with prejudice, consistent

with the court's retention of statutory authority to award attorney fees and costs to

either party.

_____s/ William H. Yohn Jr._____
William H. Yohn Jr., Judge