**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM STANFORD, JR., Individually and on Behalf of All Other Similarly Situated Persons and on Behalf of the Foamex L.P. Savings Plan,** | **No.  07-CV-04225-WY** |
| **Plaintiff,** | **William H. Yohn, Jr.** |
| **v.** | |
| **FOAMEX L.P., FOAMEX L.P. BENEFITS COMMITTEE, UNKNOWN FIDUCIARY DEFENDANTS, FIDELITY MANAGEMENT TRUST CO., THOMAS CHORMAN, K. DOUGLAS RALPH, and STEPHEN DRAP,** | |
| **Defendants.** | |

**PLAINTIFF STANFORD'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

Memorandum in Support of
Motion for Class Certification
Cause No. 2:07-cv-04225-WY          i

# TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................................1

II.   FACTS .........................................................................................................................1

III.  PROPOSED DEFINITION OF CLASS............................................................................2

IV.   LAW AND ARGUMENT .................................................................................................3

      A.   General Class Action Requirements. ..........................................................3

      B.   The FRCP 23(a) Requirements. ...................................................................4

           1.   Numerosity:  The Proposed Class Exceeds 500 Individuals. ...........................4

           2.   Commonality:  The Proposed Class Members Share
                Common Factual and Legal Issues. .................................................6

           3.   Typicality:  Stanford's Claims are Co-Extensive With
                Claims of the Proposed Class and He has No Conflicts
                with Other Class Members. ..............................................................8

           4.   Adequate Representation:  Stanford Is a Good
                Representative for the Proposed Class and Has Retained
                Experienced and Competent Counsel. ............................................10

      C.   The Class Should Be Certified Under Rule 23(b)(1)................................11

      D.   In the Alternative, Certification Under Rule 23(b)(3) Is
           Appropriate. ..............................................................................................13

V.    CONCLUSION............................................................................................................14

Memorandum in Support of
Motion for Class Certification
Cause No. 2:07-cv-04225-WY              ii

# TABLE OF AUTHORITIES

## CASES

*Baby Neal v. Casey*
    43 F.3d 48 (3[d] Cir. 1994) ........................................................................... passim

*Banyai v. Mazur*
    205 F.R.D. 160 (S.D.N.Y. 2002) ......................................................................1

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975) ........................................................................4, 6

*Bower v. Bunker Hill Co.*
    114 F.R.D. 587 (E.D. Wash. 1986)....................................................................4

*Cullen v. Whitman Med. Corp.*
    188 F.R.D. 226 (E.D. Pa. 1999)........................................................................4

*DiFelice v. U.S. Airways, Inc.*
    397 F. Supp.2d 735 (E.D. Va. 2005) .................................................................3

*Durrett v. John Deere Co.*
    150 F.R.D. 555 (N.D. Tex. 1993) ...................................................................10

*Eisen v. Carlisle and Jacquelin*
    417 U.S. 156, 94 S.Ct. 2140 (1974)...................................................................4

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ...............................................................6, 9, 10

*In re ADC Telecommunications ERISA Litig.*
    No. Civ. 03-2989, 2005 WL 2250782 (D. Minn. Sept. 15, 2005)......................12

*In re CMS Energy ERISA Litig.*
    225 F.R.D. 539 (E.D. Mich. 2004) .................................................................12

*In re Electronic Data Systems Corp. ERISA Litig.*
    224 F.R.D. 613 (E.D. Tex. 2004)....................................................................12

*In re Enron Corp.*
    2006 WL 1662596 (S.D. Tex. 2006) ...............................................................12

*In re Ikon Office Solutions, Inc.*
    191 F.R.D. 457 (E.D. Pa. 2000)................................................................ passim

*In re Williams Companies ERISA Litigation*
    231 F.R.D. 416 (N.D. Okla. 2005)..................................................................12

Memorandum in Support of
Motion for Class Certification
Cause No. 2:07-cv-04225-WY                     iii

*Kane v. United Independent Union Welfare Fund*
 1998 WL 78985 (E.D. Pa. 1998) ...................................................................................1, 12

*Kromnick v. State Farm Ins. Co.*
 112 F.R.D. 124 (E.D. Pa. 1986)................................................................................5, 6, 13

*LaRue v. DeWolff, Boberg & Associates, Inc.*
 __ U.S. __, 128 S.Ct. 1020 (2008)..................................................................................12

*Massachusetts Mut. Life Ins. Co. v. Russell*
 473 U.S. 134 , 105 S.Ct. 3085 (1985)..............................................................................12

*Rankin v. Rots*
 220 F.R.D. 511 (E.D. Mich. 2004) ...................................................................................12

*Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*
 140 F.R.D. 474 (S.D.Ga. 1991) .......................................................................................12

*Thomas v. Smithkline Beecham Corp.*
 102 F.R.D. 396 (E.D. Penn. 2001) ............................................................................. passim

## STATUTES

ERISA, § 409(a), 29 U.S.C. § 1109(a) ......................................................................................12

ERISA, § 502(a)(2), 29 U.S.C. § 1132(a)(2) .............................................................................12

## RULES

Fed. R. Civ. P. 23(c)(2).............................................................................................................16

## TREATISES

3B *Moore's Federal Practice* ¶ 23.31[3] (2d ed. 1995) ...........................................................14

H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 3.10 (1992)....................................6

H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 3.13 (1992)....................................9

H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 3.24 (4th ed.)...............................10

H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 4.20 (4th ed.)...............................14

H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 4.25 (4th ed.)...............................13

H. Newberg & A. Conte, 9 NEWBERG ON CLASS ACTIONS, Appendix II-B
 (4th ed.).....................................................................................................................1, 13

Memorandum in Support of
Motion for Class Certification
Cause No. 2:07-cv-04225-WY                        iv

**OTHER AUTHORITIES**

Rules Advisory Committee Notes to 1966 Amendments to FRCP 23 ......................................12

Memorandum in Support of
Motion for Class Certification
Cause No. 2:07-cv-04225-WY                    v

## I.  INTRODUCTION

Plaintiff William Stanford seeks remedies on behalf of the Foamex LP Savings Plan ("Plan") under ERISA for breaches of fiduciary duties that resulted in massive losses to the Foamex Stock Fund.  He now moves this court to certify a class under Federal Rule of Civil Procedure 23.

"Class actions are generally well-suited to litigation brought pursuant to ERISA." *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002).  This case is no exception.  Stanford's breach of fiduciary claims easily meets the requisite Rule 23(a) elements of numerosity, commonality, typicality and adequacy of representation.  With respect to Rule 23(b), courts and commentators recognize that ERISA breach of fiduciary actions are well-suited for certification under subsection (b)(1).  *See e.g. Thomas v. Smithkline Beecham Corp.*, 102 F.R.D. 396, 396-7 (E.D. Penn. 2001); *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 466 (E.D. Pa. 2000); *Kane v. United Independent Union Welfare Fund*, 1998 WL 78985, at *9 (E.D. Pa. 1998); H. Newberg & A. Conte, 9 NEWBERG ON CLASS ACTIONS, Appendix II-B (4th ed.) (reprinting motion seeking (b)(1) certification in an ERISA case).

Accordingly, Stanford moves that he be appointed class representative, and his attorneys be appointed class counsel, for a mandatory class consisting of all individuals invested in the Foamex Stock Fund on July 20, 2005 (except individuals who were members of the Foamex Benefits Committee at any time between from July 20, 2005 and December 31, 2006, the members of their immediate families, and their heirs, successors or assigns) under Federal Rule 23(b)(1) or, in the alternative, Rule 23(b)(3).

## II.  FACTS[1]

Stanford, like hundreds of other employees of Foamex L.P., had a significant portion of his 401(k) retirement savings invested in the Foamex Stock Fund.  Second Amended

---

[1]   As reflected in this Court's Order dated August 20, 2008, the facts in this case were extensively briefed in connection with the motions to dismiss.  *See* Order dated 8/20/08 (dkt. no. 59), pp. 2-8.  The factual recitation set forth in this brief is an overview of the facts relevant for the certification motion. For more detailed background, please see Stanford's consolidated opposition brief, docket number 35, at pages 4-8.

Complaint (hereafter "SAC"), ¶ 10.  The Stock Fund was, by definition, "a non-diversified stock fund that invests **solely** in Employer Stock."  Declaration of Richard E. Spoonemore, *Exh. A*, Section 1.32 (emphasis added).[2]

Prior to the conduct at issue here, the Stock Fund typically held a small percentage of assets in cash (or other liquid vehicles) to meet participant requests for withdrawals.  That changed in 2005 when the defendants—without warning the participants and without amending the Plan—began to liquidate the Stock Fund.  By late January of 2006, the Foamex Stock Fund held no Foamex stock.  In February of 2006, as Foamex Stock began to rise, the defendants attempted to undo the liquidation.[3]  It was, however, too late.  As Foamex stock began its meteoric rise, employees who had specifically selected the Fund as their investment vehicle–and who rode the stock down as it dropped—were locked into losses by decisions made by Foamex and Fidelity.  SAC, ¶ 44.

Stanford timely brought this action against various fiduciaries of the Plan to recover losses sustained by the Plan under ERISA, § 409 for breaches of the fiduciary duties set forth in ERISA §§ 403(a)(1), 404(a)(1), and 405.  SAC, ¶¶ 45-77.

### III.  PROPOSED DEFINITION OF CLASS

On July 20, 2005, a Plan Amendment was adopted that froze all new transactions in the Foamex Stock Fund.  Pursuant to Amendment No. 4 to the Plan, participants were not allowed to put more money into, or withdraw assets from, the Fund.  Specifically, a Plan participant could no longer

---

[2]  As one would expect, "the investment performance of the fund is directly tied to the financial performance of Foamex International Inc. and its subsidiaries, along with general market conditions."  Spoonemore Decl., *Exh. B*. Before the breaches of duty that Stanford now complains of, that is exactly how the Foamex Stock Fund performed. SAC, ¶ 33.  When Foamex stock declined in value, the net asset value ("NAV") of the Foamex Stock Fund would drop by the same percentage.  Conversely, when the stock rose, the NAV would rise proportionally.  *Id*.

[3]  Seven days after the Stock Fund was totally liquidated, Foamex attempted to undo the damage by asking Fidelity to void the sales.  SAC, ¶ 42.  Fidelity refused.  *Id*.  Instead, Foamex and Fidelity began to repurchase Foamex stock for the Fund in February of 2006.  By that time, however, Foamex's stock had risen dramatically. Shares that never should have been sold the month before were repurchased at values much higher than their sale price.  *Id*.

> direct new investments into, or transfer existing investments into or out of, the Foamex Stock Fund. All investments in the Foamex Stock Fund as of July 19, 2005 shall remain in the Foamex Stock Fund until moved into an alternative investment fund or distributed according to the terms of the Plan.

Spoonemore Decl., *Exh. C* at FOAMEX000098.

Given that Amendment No. 4 to the Plan froze all transactions into or out of the Foamex Stock Fund, there was no justification after July 19, 2005 under the Plan to hold any liquid investments given that the sole basis for liquidity in the Fund was to process participant exchanges, loans and withdrawals. *See* Order dated 8/20/08 (dkt. no. 59), p. 15 ("[T]he liquid investments must be calculated to satisfy participant requests for exchanges, loans, and withdrawals."). *See also DiFelice v. U.S. Airways, Inc.*, 397 F. Supp.2d 735, 745-46 (E.D. Va. 2005).

Against this factual backdrop, the class can be defined as "***all individuals invested in the Foamex Stock Fund on July 20, 2005, except individuals who were members of the Foamex Benefits Committee at any time between from July 20, 2005 and December 31, 2006, the members of their immediate families, and their heirs, successors or assigns.***" This definition reaches all participants affected by the fiduciaries' decisions to hold liquid investments when there was no justification for doing so under the Plan, while carving out the fiduciaries with authority over the decisions. It necessarily includes individual participants affected by the decisions to sell Foamex stock out of the Foamex Stock Fund in 2005 and early 2006. The proposed class definition suffers from no ambiguity, and members of the class should be easy to identify.

## IV.  LAW AND ARGUMENT

### A.    General Class Action Requirements.

Federal Rule of Civil Procedure 23 governs the certification of classes. Pursuant to Rule 23(a), certification of a class requires a showing of numerosity, commonality, typicality and adequacy of representation. *Baby Neal v. Casey*, 43 F.3d 48, 55 (3[d] Cir. 1994); *Thomas v.*

*Smithkline Beecham Corp*., 102 F.R.D. 396, 391 (E.D. Penn. 2001).  With respect to these elements, "there is a conceptual distinction between the first two prerequisites—numerosity and commonality—which evaluate the sufficiency of the class itself, and the last two prerequisites-typicality and adequacy of representation-which evaluate the sufficiency of the named class representatives." *Thomas*, 102 F.R.D. at 391.

In addition to the Rule 23(a) elements, at least one part of Rule 23(b) must also be met.  *Baby Neal*, 43 F.3d at 55.

A court does not examine the merits of the plaintiff's case in deciding whether an action is properly maintained as a class under Rule 23.  *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177-78, 94 S.Ct. 2140 (1974).  "For the purposes of class certification, the court is bound to take the substantive allegations of the complaint as true."  *Cullen v. Whitman Med. Corp.,* 188 F.R.D. 226, 228 (E.D. Pa. 1999) (citing *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir. 1975) ).  As a result, the sole question presented by a certification motion is whether the plaintiff's claims can be properly pursued by a defined class represented by the putative class representative and his or her attorneys.

Finally, while a court must conduct a "rigorous review" under Rule 23(a)*,* "[d]oubts should be resolved in favor of class certification." *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 462 (E.D. Pa. 2000).

**B.      The FRCP 23(a) Requirements.**

**1.      Numerosity:  The Proposed Class Exceeds 500 Individuals.**

Pursuant to Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable."  It is generally not necessary to know the exact size of the class, just that the size is large enough that joinder is impracticable*. Bower v. Bunker Hill Co.,* 114 F.R.D. 587, 592 (E.D. Wash. 1986) (plaintiff need not show exact size of class; numerosity met where "general knowledge and common sense indicate that it is large"). Classes exceeding 100 members typically satisfy the numerosity requirement.  *Thomas*, 102 F.R.D. at 391; *Kromnick v.*

*State Farm Ins. Co.,* 112 F.R.D. 124, 126 (E.D. Pa. 1986) ("Generally, the numerosity requirement is satisfied where the class exceeds 100 members."). Common sense, which ultimately guides the analysis, suggests that joinder of more than 100 individuals is impracticable. *Thomas*, 102 F.R.D. at 391; *In re Ikon,* 191 F.R.D. at 462.

The size of the proposed class in this case easily meets the numerosity requirement. A Fidelity report produced by the Foamex Defendants indicates that ***576 individuals*** were invested in the Foamex Stock Fund on January 31, 2006 when the Foamex Stock Fund was totally liquidated in violation of the Plan.[4] Spoonemore Decl., *Exh. D*; SAC, ¶ 37. (Of course, the actual size of the class will likely be higher given that the defendants improperly allowed some participants to withdraw from the Foamex Stock Fund between July 20, 2005—the date a Plan Amendment froze the Fund—and January 31, 2006. SAC, ¶¶ 49-50). In any event, joinder is impracticable. As this court noted in certifying another class to pursue remedies under ERISA:

> Regarding the impracticability of joinder, the class is materially indistinguishable from other ERISA classes certified in this district. *See Clauser v. Newell Rubbermaid, Inc.,* No. CIV.A. 99-5753, 2000 WL 1053395, at *3 (E.D.Pa. July 31, 2000) (finding a class of more than 600 people satisfies the numerosity requirement); *In re Ikon,* 191 F.R.D. at 462 (finding "the numerosity standard is easily met" by a class of ERISA plaintiffs numbering "thousands of participants in the plan in any given year"); *Feret v. Corestates Fin. Corp.,* No. CIV.A. 97-6759, 1998 WL 512933, at *6 (E.D.Pa. Aug. 18, 1998) (certifying an ERISA class of more than 200 people); *Bunnion v. Consolidated Rail Corp.,* No. Civ.A. 97-4877, 1998 WL 372644, at *3 (E.D.Pa. May 14, 1998) (finding a class of approximately 600 people satisfies numerosity requirement). In light of the number of class members and the nature of the action, the court concludes that the plaintiffs' class is numerous enough to make joinder impracticable.

---

[4] As Andrew R. Prusky, Foamex's Vice President and Deputy General Counsel, wrote:

> On the advice of Fidelity, Foamex agreed to commence the liquidation of all Foamex shares in the Stock Fund on January 23, 2006. Fidelity completed the sale of all stock by January 30.

Spoonemore Decl., *Exh. E.*

*Thomas*, 102 F.R.D at 391.

### 2. Commonality: The Proposed Class Members Share Common Factual and Legal Issues.

Rule 23(a)(2) requires a plaintiff to show that questions of law or fact are common to each member of the proposed class. The existence of shared legal issues establishes commonality:

> Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The commonality requirement is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated").

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal*, 43 F.3d at 56. This test is "easily met" because "the requirement may be satisfied by a single common issue." *Id.* (citing H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 3.10, at 3-50 (1992)). Moreover, "commonality is not defeated by a showing that individual facts and circumstances will have to be resolved."[5] *Thomas*, 102 F.R.D at 392-3 (citing *Baby Neal*, 43 F.3d at 56-7). Commonality is generally found where a "common nucleus of operative facts" exists. *Thomas*, 102 F.R.D. at 392-3 (citing *Kromnick,* 112 F.R.D. at 128).

Stanford seeks class certification in the pursuit of six counts against the defendants arising out of their breaches of fiduciary duty towards him and the class: (1) breach by Foamex, the Committee, and Fidelity of their fiduciary duties under ERISA § 404(a)(1)(D) to follow Plan documents when they made unauthorized sales of Employer Stock from the Foamex

---

[5]   This is often the case with the calculation of damages which "is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975).

Stock Fund and transferred existing Fund investments in violation of Amendment No. 4; (2) breach by Foamex of its duty under ERISA § 404(a)(1)(B) to monitor the Committee; (3) breach by Foamex under the theory of respondeat superior for the breaches by the members of the Committee; (4) breach by Fidelity of its duty under ERISA § 403(A)(1) to follow proper directions when it followed the unauthorized direction of Foamex and violated the Plan's Fund's rules by liquidating it entirely; (5) breach by Foamex of its duty under ERISA § 404(a)(1)(B) to monitor Fidelity; and (6) breach by all defendants of their cofiduciary duties under ERISA § 405. *See* Order filed 8/20/08 (dkt. no. 59), p. 5.  Under each count the focus is on the defendants' conduct, and whether the defendants' actions were in accord with their fiduciary duties under ERISA.  As this court has previously recognized, commonality exists where the claims brought by the class are based on breaches of fiduciary duties:

> Moreover, common questions of law and fact clearly exist as to whether the defendants owe the plaintiffs a fiduciary duty, and, if they do, as to whether the defendants conducted themselves in a manner incompatible with that fiduciary duty. As the plaintiffs have noted, "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs."  *See In re Ikon,* 191 F.R.D. at 465 (citing *Bunnion,* 1998 WL 372644, at *6).

*Thomas*, 102 F.R.D. at 394.  Here, as in other cases involving breaches of fiduciary duty, the focus is squarely on the conduct of the fiduciaries.  As this court noted in its Order denying defendants' motions to dismiss:

> Plaintiff did not make a request for Plan benefits that was denied, but instead challenges the actions of the fiduciaries in their management of the Plan.  Plaintiff brings this suit not to recoup a particular denied benefit for himself, but to hold the fiduciaries accountable for actions that allegedly reduced the value of the Plan in contradiction to its terms and to restore losses—on behalf of the Plan—from the fiduciaries.

Order dated 8/20/08 (dkt. no. 59), p. 12.

Specifically, each of the following common issues (among others) exist here:  (a) whether the defendants were fiduciaries; (b) whether the liquidation of the Foamex Stock Fund

was directed by a person without authority to direct the liquidation; (c) whether Fidelity took direction from a person who had no authority to direct the liquidation; (d) whether the defendants breached their fiduciary obligations to the Plan's participants and beneficiaries by causing or permitting the change in the holdings of the Foamex Stock Fund in a manner that conflicts with its definition in the Plan's plan document; (e) whether the defendants breached their fiduciary obligations with respect to transfers out of the Foamex Stock Fund in a manner that conflicts with the Plan's plan document; (f) whether the defendants breached their fiduciary obligations to the Plan's participants and beneficiaries by causing or permitting sale of the Foamex International stock held in the Foamex Stock Fund when Foamex International stock was at or near its historic low; (g) whether the defendants breached their fiduciary obligations to the Plan's participants and beneficiaries by enabling co-fiduciaries to commit violations of ERISA and, with knowledge of such breaches, failing to make reasonable efforts to remedy the breaches; and (h) whether, as a result of the fiduciary breaches engaged in by the defendants, the Plan and its participants and beneficiaries suffered losses.  Determination of these common questions will determine whether plaintiff and the class are entitled to recovery for these breaches, and related breaches, under ERISA.

> **3.    Typicality:  Stanford's Claims are Co-Extensive With Claims of the Proposed Class and He has No Conflicts with Other Class Members.**

The "typicality" requirement of Rule 23(a)(3) "is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented."  *Baby Neal,* 43 F.3d at 57.  Ultimately, the question is whether the interests of the proposed class representative conflicts with those of the proposed class.  *Thomas*, 102 F.R.D. at 394 ("The court must, in effect, discern whether potential conflicts exist within the proposed class.").  The focus is on "whether the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon

which the claims of other class members will perforce be based." *Baby Neal*, 43 F.3d at 57-8.

When improper conduct affecting the class is challenged, typicality is found:

> Typicality will generally be found to exist when the named plaintiffs and the proposed class members "challenge[ ] the same unlawful conduct." *Baby Neal*, 43 F.3d at 58. Therefore, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal*, 43 F.3d at 58 (quotation omitted).

*Thomas*, 102 F.R.D. at 394. *See also Baby Neal*, 43 F.3d at 58 ("Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.") (*citing* H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 3.13, at 3-50 (1992)).

Thus, under the Rule's permissive standards, representative claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58. As a result, "[w]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Id.* at 57-8.

Stanford's claims are co-extensive with those of the absent class members. Stanford, and all of the class members, had money invested in the Foamex Stock Fund at a time when the Plan document directed that the assets of the Fund would be invested "solely" in Foamex Stock. Spoonemore Decl., *Exh. A.* Despite this directive, the fiduciaries proceeded to liquidate the Foamex Stock Fund such that the suddenly ill-named "Foamex Stock Fund" did not hold a single share of Foamex stock. When Foamex stock began its meteoric rise, the

participants were locked into massive losses because of the failure of the fiduciaries to adhere to the terms of the Plan.

Stanford and the members of the class have co-extensive interests in challenging these breaches of duty in an effort to recover losses they sustained in the Foamex Stock Fund.

**4.     Adequate Representation:  Stanford Is a Good Representative for the Proposed Class and Has Retained Experienced and Competent Counsel.**

The requirement of adequate representation set forth in Rule 23(a)(4) has two components:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  *See also Thomas*, 102 F.R.D at 396.  Where there are no conflicts between the class representatives and other class members, the focus is "primarily on class counsel, not on the plaintiff, to determine if there will be vigorous prosecution of the class action."  H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 3.24 (4th ed.).  *See also Durrett v. John Deere Co.,* 150 F.R.D. 555, 558 (N.D. Tex. 1993) (adequate representation "concentrates on competence of class counsel").  It is a defendant's burden "to show the inadequacy of representation of a plaintiffs' class."  *Thomas*, 102 F.R.D. at 396.

Neither Stanford nor his counsel have any conflicts with the proposed class. Stanford understands his obligations to the class in the event of certification, and is prepared to fulfill his obligations as a class representative.  Spoonemore Decl., ¶7; SAC, ¶23. Indeed, his dogged persistence in seeking an explanation as to why the NAV in the Foamex Stock Fund was not tracking the value of Foamex stock speaks volumes about his understanding of the issues and his ability to be an active and responsible class representative.  SAC, ¶35.

With respect to the competence of counsel, Stanford has selected class counsel with extensive experience in ERISA and ERISA class actions who will vigorously pursue

remedies for the class.   Spoonemore Decl., ¶¶2-6; Declaration of Charles H. Thulin, ¶¶2-3;

Declaration of Kent Cprek, ¶¶2-7.

     **C.**      **The Class Should Be Certified Under Rule 23(b)(1).**

     Rule 23(b)(1) authorizes class actions where the prerequisites of section (a) are

met, and:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

     Subsection (A) of the Rule 23(b)(1) considers possible prejudice to the

defendants, while subsection (B) looks to possible prejudice to the putative class members.  *In re*

*Ikon,* 191 F.R.D. at 466.  "Certifications under either subsection are common in labor cases such

as this one because of the defendants' 'unitary treatment' of putative class members." *Id*.

Indeed, the advisory committee notes to Rule 23 state that certification under 23(b)(1) is

appropriate in cases charging breach of trust by a fiduciary to large class of beneficiaries.  *See*

Rules Advisory Committee Notes to 1966 Amendments to FRCP 23 (Federal Rule 23(b)(1)(B)

certification is appropriate in "an action which charges a breach of trust by an indenture trustee

or other fiduciary similarly affecting the members of a larger class of security holders or other

beneficiaries, and which requires an accounting or like measures to restore the subject of the

trust.").

     ERISA actions seeking a recovery on behalf of the Plan against fiduciaries—as

Stanford does here—fit squarely under Rule 23(b)(1).  *In re Ikon*, 191 F.R.D. at 466.  Under

Memorandum in Support of
Motion for Class Certification
Cause No. 2:07-cv-04225-WY     11

ERISA, participants have standing to sue fiduciaries for appropriate relief. ERISA, § 502(a)(2), 29 U.S.C. § 1132(a)(2); ERISA, § 409(a), 29 U.S.C. § 1109(a). The action is "brought in a representative capacity on behalf of the plan as a whole" and damages arising from a breach of duty "inures to the benefit of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 142 n. 9, 105 S.Ct. 3085 (1985). *See also LaRue v. DeWolff, Boberg & Associates, Inc.,* __ U.S. __, 128 S.Ct. 1020, 1026 (2008) ("We therefore hold that although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."). However, "[b]ecause a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly." *Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.,* 140 F.R.D. 474, 478 (S.D.Ga. 1991). The fact that all participants and beneficiaries are affected makes breach of fiduciary actions under ERISA uniquely appropriate for certification under (b)(1). *In re Enron Corp.,* 2006 WL 1662596, 15 (S.D. Tex. 2006) (ERISA breach of fiduciary claims proper under both Rule 23(b)(1)(A) and (B)); *In re Williams Companies ERISA Litigation,* 231 F.R.D. 416, 425 (N.D. Okla. 2005) ("The Court finds that due to ERISA's distinctive 'representative capacity' and remedial provisions, class treatment under Rule 23(b)(1)(B) is appropriate in this case."); *In re ADC Telecommunications ERISA Litig.,* No. Civ. 03-2989, 2005 WL 2250782, *4-5 (D. Minn. Sept. 15, 2005); *In re CMS Energy ERISA Litig.,* 225 F.R.D. 539, 545-46 (E.D. Mich. 2004); *Rankin v. Rots,* 220 F.R.D. 511, 523 (E.D. Mich. 2004); *In re Electronic Data Systems Corp. ERISA Litig.,* 224 F.R.D. 613, 628 (E.D. Tex. 2004) (ERISA breach of fiduciary duty prudence claims certifiable under Rule 23(b)(1)(A) and (B)); *In re Ikon,* 191 F.R.D. at 466 ("The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief."); *Kane v. United Independent Union Welfare Fund,* 1998 WL 78985, at *9 (E.D. Pa. 1998). *See also* H. Newberg

& A. Conte, 9 NEWBERG ON CLASS ACTIONS, Appendix II-B (4th ed.) (reprinting motion seeking (b)(1) certification in an ERISA case).

The court should certify this class under Rule 23(b)(1).

**D.      In the Alternative, Certification Under Rule 23(b)(3) Is Appropriate.**

Rule 23(b)(3) permits a class action when questions of law or fact common to the class members predominate over questions affecting individual members, and such an action is superior to other available methods of adjudicating the controversy.  The rule "encompasses those cases in which a class action would achieve economies of time, effort and expense, and would promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results."  Rules Advisory Committee Notes to 1966 Amendments to FRCP 23.

The focus of the common questions inquiry is on "whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit."  H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 4.25 (4th ed.).  An action will satisfy the test where a common issue is the "central or overriding question," or where "there is an essential common link among class members and the defendant for which the court provides a remedy."  *Id*.  Put otherwise, common issues are said to predominate where there is a common nucleus of operative facts relevant to the dispute, and those common questions represent a significant aspect of the case that can be resolved for all members of the class in a single adjudication.

Stanford's action meets this test as well.  As noted above, common factual and legal issues predominate the action.  *See* Section B.2, above.  The only difference between class members is the amount of money each individual had invested in the Foamex Stock Fund.  This difference is immaterial for certification purposes.  "It is settled law that individual proof of damages does not preclude certification of a class under Rule 23(b)(3) where common issues of liability predominate."  *Kromnick*, 112 F.R.D. at 129.

Certification is proper under (b)(3), however, only if the court determines that (b)(1) certification is inappropriate.  When a case may be certified under either subsection (b)(1) or (b)(3), certification under (b)(1) is preferred because absent members of a (b)(1) class cannot opt out of the class, whereas such an opportunity is mandatory for absent members of a (b)(3) class.  *See* Fed. R. Civ. P. 23(c)(2).  If an action that otherwise met the requirements of Rule 23(b)(1) were certified under Rule 23(b)(3), the ensuing opportunity to opt out would defeat the fundamental objective of (b)(1):

> If federal district courts had discretion to certify the Rule 23(b)(1) or (b)(2) type of situations under the more general provisions of Rule 23(b)(3), the intention of the drafters of Rule 23 to promote uniformity of decision in certain types of cases would be nullified. It follows that class actions that qualify for class certification under subdivision (b)(1) or (b)(2) should not normally be certified under subdivision (b)(3).

H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS § 4.20 (4th ed.).  Certification under (b)(1) is also more efficient:

> If an action can be maintained under (b)(1) and/or (b)(2), and also under (b)(3), the court should order that the action be maintained as a class action under (b)(1), rather than under (b)(3), so that the judgment will have *res judicata* effect as to all the class, since no member has the right to opt out in a (b)(1) or (b)(2) suit, thereby furthering the policy underlying the (b)(1) and (b)(2) class suits. This preference for (b)(1) and (b)(2) class suits may also avoid the costs of the type of notice which would otherwise be required in a (b)(3) action.

3B *Moore's Federal Practice* ¶ 23.31[3], at 23-236 to 23-238 (2d ed. 1995) .  As a result, Stanford only seeks certification of a Rule 23(b)(3) in the event the court finds certification inappropriate under Rule 23(b)(1).

## V.  CONCLUSION

This Court should certify a mandatory class under Rule 23(b)(1) with Stanford as the class representative, and appoint plaintiffs' counsel as class counsel.  The class should be defined as "all individuals invested in the Foamex Stock Fund on July 20, 2005, except

individuals who were members of the Foamex Benefits Committee at any time between from July 20, 2005 and December 31, 2006, the members of their immediate families, and their heirs, successors or assigns."

DATED:  January 13, 2009.

SIRIANNI YOUTZ
MEIER & SPOONEMORE

BY:  ___/s/ Richard E. Spoonemore___
Richard E. Spoonemore  (WSBA #21833)
*Admitted Pro Hac Vice*
719 Second Avenue, Suite 1100
Seattle, WA  98104
Tel. (206) 223-0303; Fax (206) 223-0246
rspoonemore@sylaw.com

EKMAN, BOHRER & THULIN, P.S.
Charles H. Thulin  (WSBA #9039)
*Admitted Pro Hac Vice*
220 W. Mercer Street, Suite 400
Seattle, WA  98119
Tel. (206) 282-8221; Fax (206) 285-4587
c.thulin@ekmanbohrer.com

JENNINGS SIGMOND, P.C.
Kent Cprek (PA ID No. 40806)
510 Walnut Street, Suite 1600
Philadelphia, PA  19106-3683
Tel. (215) 351-0615; Fax (215) 922-3524
usdc-edpa-erisa@jslex.com

Counsel for Plaintiff William Stanford, Jr.

<u>**CERTIFICATE OF SERVICE**</u>

I certify, under penalty of perjury, that on January 13, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that a true and correct copy of the foregoing was served upon the following by ECF:

- ROSEMARY J. BRUNO
  rosemary.bruno@bipc.com,linda.prifold@bipc.com

- BRIAN CASAL
  brian.casal@bipc.com,marjorie.harms@bipc.com

- AMY COVERT
  acovert@proskauer.com

- KENT CPREK
  usdc-edpa-erisa@jslex.com

- BARBARA W. MATHER
  matherb@pepperlaw.com

- SARA BETH RICHMAN
  richmans@pepperlaw.com,hoganr@pepperlaw.com,pearsons@pepperlaw.com

- CHARLES F. SEEMANN , III
  cseemann@proskauer.com,jrichie@proskauer.com,kdipaola@proskauer.com

- HOWARD SHAPIRO
  hshapiro@proskauer.com

- MICHAEL D. SPENCER
  mspencer@proskauer.com,jrichie@proskauer.com,tneville@proskauer.com

- RICHARD E. SPOONEMORE
  rspoonemore@sylaw.com,matt@sylaw.com,rspoonemore@hotmail.com,theresa@sylaw.com

- CHARLES H. THULIN
  c.thulin@ekmanbohrer.com,c.jones@ekmanbohrer.com

- MARSHALL WALTHEW
  walthewm@pepperlaw.com,mocharnd@pepperlaw.com

THIS DOCUMENT HAS BEEN FILED ELECTRONICALLY AND IS AVAILABLE FOR VIEWING AND DOWNLOADING FROM THE ECF SYSTEM.

DATED:  January 13, 2009.

BY:   _/s/ Richard E. Spoonemore_
Richard E. Spoonemore  (WSBA #21833)
*Admitted Pro Hac Vice*