UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM STANFORD, JR.<br>Individually and on Behalf of All Other<br>Similarly Situated Persons and on Behalf of the<br>Foamex L.P. Savings Plan,<br><br>　　　　　Plaintiff,<br>v.<br><br>FOAMEX L.P.,<br>FIDELITY MANAGEMENT TRUST CO.,<br>K. DOUGLAS RALPH, STEPHEN DRAP,<br>GREGORY J. CHRISTIAN, and<br>GEORGE L. KARPINSKI,<br><br>　　　　　Defendants. | CIVIL ACTION<br><br>Case No. 2:07-cv-04225-WY<br><br>WILLIAM H. YOHN, JR.<br><br>**THIRD AMENDED<br>COMPLAINT ERISA<br>– CLASS ACTION** |

### A. NATURE OF ACTION

1.　　　This is a civil enforcement action brought pursuant to section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.

2.　　　This lawsuit is for breach of fiduciary duty concerning the 401(k) plan sponsored by Foamex L.P. ("Foamex"). It is brought pursuant to ERISA, the federal statute that comprehensively regulates such plans.

3.　　　This lawsuit concerns the Foamex L.P. Savings Plan (the "Plan"), a retirement plan established as benefit for Foamex employees.

4.　　　Plaintiff William Stanford, Jr. was, at all relevant times, a Foamex employee who is a participant in the Plan. Defendants are Foamex, Fidelity Management Trust Company ("Fidelity"), and various other persons who were responsible for managing the Plan or who exercised authority or control respecting management or disposition of the Plan's assets (the Plan's "fiduciaries").

5.　　　As a substantive matter, Plaintiff alleges, among other things, that these fiduciaries breached their fiduciary duties with respect to the investment of the

Plan's holdings of stock of Foamex International, Inc. ("Foamex International"), in the Foamex Stock Fund. As a procedural matter, Plaintiff seeks to bring the lawsuit to recover losses suffered by the Plan as a class action, that being one of the available procedural vehicles for a claim of this type. And, as a remedial matter, Plaintiff seeks, among other things, to have the breaching fiduciaries make good to the Plan the massive losses it suffered as a result of their breaches.

### B. THE PLAN AND THE FOAMEX STOCK FUND

6. The Foamex L.P. Savings Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). The Plan is an "individual account plan" within the meaning of ERISA § 3(32), 29 U.S.C. § 1002(32). The Plan is a profit sharing plan within the meaning of section 401(a)(27) of the Internal Revenue Code of 1986 (the "Code), 26 U.S.C. § 401(a)(27), and includes a "qualified cash or deferred arrangement" within the meaning of Code section 401(k), 26 U.S.C. § 401(k).

7. ERISA requires that a plan be "established and maintained pursuant to a written instrument." ERISA § 402(a)(l), 29 U.S.C. § 1022(a)(l). The currently effective written instrument for the Plan is the Foamex L.P. Savings Plan, as amended and restated effective January 1, 2001, executed December 10, 2001 (the "2001 Plan Document"), as amended by Amendment No. 1 to The Foamex L.P. Savings Plan, adopted December 10, 2002, by Amendment No. 2 to The Foamex L.P. Savings Plan, adopted March 24, 2004, by Revised Amendment No. 2 to The Foamex L.P. Savings Plan, adopted March 24, 2004, adopted May 20, 2004, by Amendment No. 3 to The Foamex L.P. Savings Plan, adopted September 20, 2004, and by Amendment No. 4 to The Foamex L.P. Savings Plan, adopted September 8, 2005.

8. The 2001 Plan Document defines several terms relevant to this action. Section 1.26 defines "Employer Stock" as "the common stock of Foamex International, Inc." Section 1.32 defines the Foamex Stock Fund as

a non-diversified stock fund that invests solely in Employer Stock. All such shares of Employer Stock to be held in the Foamex Stock Fund shall be acquired exclusively through purchases on the open market. Dividends, if any, shall be used, as soon as practicable, to purchase additional such shares of Employer stock.

9. Under the 2001 Plan Document, and until its amendment by Amendment No. 4, Plan participants were permitted to direct the investment of the assets allocated to their individual accounts into the Foamex Stock Fund. In addition, Foamex made "Incentive Matching Contributions" that were invested into the Foamex Stock Fund.

### C. PARTIES

10. Plaintiff William Stanford, Jr. is a resident of Mesquite, Texas. Plaintiff was employed at Foamex from 1992 until 2007. At all relevant times, he was a participant (as defined in ERISA § 3(7), 29 U.S.C. § 1002(7)) in the Plan. A significant portion of the assets in Mr. Stanford's individual account under the Plan was invested in the Foamex Stock Fund beginning in 1995 and through its liquidation on December 22, 2006. Plaintiff is authorized to bring this action by ERISA §§ 409(a) and 502(a)(2) and (3), 29 U.S.C. § 1109 and 132(a)(2) and (3), which confer standing to bring breach of fiduciary duty claims on, among others, participants in an employee benefit plan.

11. Defendant Foamex L.P. is a limited partnership organized under the laws of Pennsylvania. Foamex is the Plan's "sponsor," within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). On information and belief, Foamex exercised authority or control with respect to the management or disposition of the Plan's assets in the Foamex Stock Fund during the time when the breaches alleged herein occurred. Foamex was therefore a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) with respect to the disposition of the Plan's assets in the Foamex Stock Fund during the time when the breaches alleged herein occurred. Under the 2001 Plan Document Foamex appointed the members of the Foamex L.P. Benefits Committee (the

"Committee"), who, as described below, are fiduciaries of the Plan. Accordingly, Foamex was also a fiduciary of the Plan with respect to its appointment of the members of the Foamex L.P. Benefits Committee. Foamex L.P. appointed defendant Fidelity Management Trust Company as trustee of the trust holding assets of the Plan pursuant to a Trust Agreement between Foamex L.P. and Fidelity effective October 1, 2000 (the "Trust Agreement"). Accordingly, Foamex was also a fiduciary of the Plan with respect to its appointment of Fidelity Trust Management Company as trustee.

12. At certain times relevant to this Complaint, defendant Gregory J. Christian was an Executive Vice President and General Counsel of Foamex and a member, and chairman, of the Committee.

13. At certain times relevant to this Complaint, defendant K. Douglas Ralph was the Chief Financial Officer of Foamex and a member of the Committee.

14. At certain times relevant to this Complaint, defendant Stephen Drap was a Senior Vice President of Foamex and a member of the Committee.

15. At certain times relevant to this Complaint, defendant George L. Karpinski was a Senior Vice President of Foamex and a member of the Committee

16. The Committee consists of Foamex employees appointed by Foamex. Under the Plan's plan document, the Committee has complete authority to control and manage the operation and administration of the Plan. On information and belief, defendants Christian, Ralph, Drap and Karpinski were members of the Committee and exercised authority or control with respect to management or disposition of the Plan's assets in the Foamex Stock Fund during the time when the breaches alleged herein occurred. Defendants Christian, Ralph, Drap and Karpinski were therefore fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) with respect to the disposition of the Plan's assets in the Foamex Stock Fund during the time when the breaches alleged herein occurred.


17.     Defendant Fidelity Management Trust Co. ("Fidelity") is a corporation incorporated under the laws of the state of Massachusetts. At all relevant times Fidelity was the trustee of the trust that holds the assets of the Plan, including Plan assets invested in the Foamex Stock Fund. On information and belief, Fidelity exercised authority or control with respect to management or disposition of the Plan's assets in the Foamex Stock Fund during the time when the breaches alleged herein occurred. Fidelity was a therefore a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), with respect to the disposition of the Plan's assets in the Foamex Stock Fund during the time when the breaches alleged herein occurred. Pursuant to the Trust Agreement, Thomas A. McGinley, Tina Patras and Mary Harmer were designated as the only individuals who could provide directions to Fidelity on behalf of the Committee. Fidelity was paid a fee for the services it provided.

18.     The Plan is a legal entity that can sue or be sued. ERISA § 502(d)(l), 29 U.S.C. § 1132(d)(l). However, in a breach of fiduciary duty action such as this, the Plan is neither a plaintiff nor a defendant. Rather, pursuant to ERISA § 409, 29 U.S.C. § 1109, the relief requested in this action is for the benefit of the Plan. Stated differently, in this action Plaintiff seeks to recover the losses suffered by the Plan at the Plan level.

### D.  JURISDICTION AND VENUE

19.     *Subject Matter Jurisdiction.* This is a civil enforcement action pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). This Court has original, exclusive subject matter jurisdiction of this action pursuant to the specific jurisdictional statutes for claims of this type, ERISA § 502(e)-(f), 29 U.S.C. § 1132(e)-(f). This Court also subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1131.

20.     *Personal Jurisdiction.* ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. 5 1132(e)(2). All of the Defendants are residents of the United States and this Court therefore has personal jurisdiction over them.

21.     *Venue.* Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because defendant Foamex resides or may be found in this District.

### E.   CLASS ACTION ALLEGATIONS

22.     *Size and Definition of Class.* The class consists of Plan participants and beneficiaries whose individual accounts were invested in the Foamex Stock Fund between July 19, 2005, and its liquidation on December 22, 2006 (the "Liquidation Date"). Excluded from the class are the individual Defendants, the members of their immediate families, and their heirs, successors or assigns.

23.     *Class Representative.* Named plaintiff William Stanford, Jr. has been a Plan participant at all times material to this action. A portion of his individual account was invested in the Foamex Stock Fund between July 19, 2005, and the Liquidation Date. His claims are typical of the claims of the other members of the class, he has no conflicts with other class members, and he will fairly and adequately represent the interests of the class.

24.     *Size of Class.* The class of persons whose individual accounts were invested in the Foamex Stock Fund between July 19, 2005 and the Liquidation Date is expected to number in the hundreds and is so large that joinder of all members is impracticable.

25.     *Common Questions of Law and Fact.* This action requires a determination of common questions of law and fact, which include: (a) whether the defendants were fiduciaries; (b) whether the liquidation of the Foamex Stock Fund was directed by a person without authority to direct the liquidation; (c) whether Fidelity took direction from a person who had no authority to direct the liquidation; (d) whether the defendants breached their fiduciary obligations to the Plan's participants and beneficiaries by causing or permitting the change in the holdings of the Foamex Stock Fund in a manner that conflicts with its definition in the Plan's plan document; (e)

whether the defendants breached their fiduciary obligations with respect to transfers out of the Foamex Stock Fund in a manner that conflicts with the Plan's plan document; (f) whether the defendants breached their fiduciary obligations to the Plan's participants and beneficiaries by causing or permitting sale of the Foamex International stock held in the Foamex Stock Fund when Foamex International stock was at or near its historic low; (g) whether the defendants breached their fiduciary obligations to the Plan's participants and beneficiaries by enabling co-fiduciaries to commit violations of ERISA and, with knowledge of such breaches, failing to make reasonable efforts to remedy the breaches; and (h) whether, as a result of the fiduciary breaches engaged in by the defendants, the Plan and its participants and beneficiaries suffered losses. Determination of these common questions will determine whether plaintiff and the class are entitled to recovery for these breaches, and related breaches, under ERISA.

26. *Defendants Have Acted On Grounds Generally Applicable to the Class and Relief is Sought by the Plan.* This action is brought in a representative capacity on behalf of the Plan as a whole, and damages arising from the breaches inures to the benefit of the Plan as a whole. As result, certification is uniquely proper under CR 23(b)(1). In addition, Defendants' conduct affected all members of the class. All defendants therefore acted on grounds generally applicable to the class rendering certification proper, in the alternative, under CR 23(b)(2).

27. *Questions of Law and Fact Common to the Class Predominate Over Individual Issues.* Many of the claims of the individual class members are too small to justify filing and prosecuting the claims separately. Thus, any interest that individual members of the class may have in individually controlling the prosecution of separate actions is outweighed by the efficiency of the class action mechanism. Upon information and belief, there has been no class action suit filed against the defendants for the relief requested in this action. This action can be properly prosecuted as a class action in the

Eastern District of Pennsylvania, where the Plan sponsor, Foamex L.P., resides and does business. Issues as to the defendants' conduct in applying standard policies and practices towards all members of the class predominate over questions, if any, unique to members of the class. If certification is not granted under CR 23(b)(1) or (2), then certification is proper under CR 23(b)(3).

    28.  *Class Counsel*. Plaintiff has retained experienced and competent class counsel.

### F. FACTUAL BACKGROUND

    29.  Plaintiff William Stanford, like many other employees of Foamex L.P., had a significant portion of his 401(k) retirement savings invested in the Foamex Stock Fund. The Foamex Stock Fund was an investment choice provided to employees that tracked the movement of Foamex stock.

    30.  The Plan defines "Employer Stock" as "the common stock of Foamex International, Inc." The Foamex Stock Fund is specifically defined as "a non-diversified stock fund that invests solely in Employer Stock." The Summary Plan Description describes the Foamex Stock Fund as "a non-diversified stock investment that invests in the common stock of Foamex International Inc. . . ." By design, "the investment performance of the fund is directly tied to the financial performance of Foamex International Inc. and its subsidiaries, along with general market conditions."

    31.  The language of the Trust Agreement between Foamex and Fidelity directs that "Investments in the Stock Fund shall consist primarily of shares of Sponsor Stock." The Trust Agreement, unlike the Plan, allows the Stock Fund to hold "cash or short-term liquid investments" for a single purpose: "[i]n order to satisfy daily participant exchange or withdrawal requests for transfers and payments."

    32.  From July 20, 2005 though the elimination of the fund on December 22, 2006, there was no need to hold any cash or short-term liquid investments.

This is because all transfers "into or out of" the Foamex Stock Fund had been frozen by an amendment to the Plan. Pursuant to Amendment No. 4, a Plan participant could no longer

> direct new investments into, or transfer existing investments into or out of, the Foamex Stock Fund. All investments in the Foamex Stock Fund as of July 19, 2005 shall remain in the Foamex Stock Fund until moved into an alternative investment fund or distributed according to the terms of the Plan.

33. For years, the value of the Foamex Stock Fund closely tracked the fortunes of Foamex International. When Foamex International stock declined in value, the net asset value or NAV of the Foamex Stock Fund would drop by a similar percentage. Conversely, when the stock rose, the NAV would generally rise proportionally.

34. Between September 2005 and February 2006, the value of the shares in the Foamex Stock Fund was no longer tracking the movement of Foamex International's stock price. Therefore, while Foamex International stock went from about $.03 a share on January 1, 2006 to about $3.49 just six months later, the Foamex Stock Fund only rose from about $.01 to about $.13. Employees, such as Stanford, who kept their money in the Foamex Stock Fund despite Foamex's financial difficulties, began to question why the Foamex Stock Fund vastly underperformed Foamex International stock.

35. In 2006, Stanford wrote multiple emails to Tom McGinley, Foamex's Director of Compensation and Benefits, and Greg Christian, Foamex's General Counsel, asking why the Foamex Stock Fund price was not tracking the rise of Foamex International stock.

- In May of 2006, Stanford asked Mr. Christian at a plant controllers meeting in Linwood about the Foamex Stock Fund, and was assured by Mr. Christian that he knew how much stock Stanford had, and

that the outlook was positive. On September 12, 2006, Stanford wrote to Mr. Christian as follows: "I thought I would check back with you about the 401k stock. It seems to me the stock is still selling, and I was wondering when the 401k plan would keep up with the pricing. Foamex was quick to take the value when the stock went down, so I believe the stock value in the plan should go up. Any news?" Neither Mr. Christian, nor anybody else, responded to this correspondence.

- On November 28, 2006, Stanford again wrote to Mr. Christian: "I would still like for someone to explain to me why the nav in the stock fund is not increasing pursuant to the rise in stock. . . . I invested in the stock of this company, and should get a fair return for that. Please explain to me." Stanford sent a copy of the correspondence to Ray Mabus, the interim CEO of Foamex. Mr. Christian wrote back asking for a time review the situation, and asking Stanford to provide times for him to call. Stanford responded, in writing, that "I will be here anytime, maybe 2:00 your time?" Mr. Christian never responded – no call nor any correspondence.

- On December 7, 2006, frustrated by the lack of any response from Mr. Christian, Stanford called Mr. McGinley for answers. Unable to make contact with him, he wrote to Mr. McGinley on December 11, 2006: "I am still waiting for a reason why the stock fund has not returned to earlier practice of buying stock for the fund etc. It seems to me that everyone has ignored the fund and it should be active."

- On December 12, 2006, Mr. McGinley wrote back as follows: "The stock fund will not be moving a greater portion of its assets to buying stock because of the impending liquidation of the fund. As the company emerges from Chapter 11 bankruptcy, one aspect of Foamex's proposed plan of reorganization is the distribution to its current stockholders of the right to purchase additional shares of common stock. This aspect of the reorganization is referred to as the "rights offering." However, having the Savings Plan participate in the rights offering creates a number of administrative and legal complexities. Under these circumstances, Foamex has decided to amend the Savings Plan to eliminate the Foamex Stock Fund as an investment on Dec. 22. If you still have assets in the Stock Fund, you should have received a notice of this change shortly after Thanksgiving."

- Stanford, again frustrated that nobody could explain why the Foamex Stock Fund was not tracking Foamex International stock,

wrote to Mr. McGinley on December 13, 2006: "I understand what you are saying, but in June the stock stared to rise, and due to the nature of the stock fund as an investment, stock should have been purchases for the fund. *I think that Foamex should have maintained the fund as the fund was maintained before the bankruptcy issue. No word was given to me as an investor to say the fund would not recover if the stock went up. The fund surly went down when prices went down, but the fund should have gone up when the prices went up. Again, I was not informed that the fund would not act as it did preceding the bankruptcy.*" (emphasis added).

- Nobody ever responded to Stanford's December 13, 2006 correspondence. As a result, Stanford was not required to take any further steps to exhaust administrative remedies, even if any were required.

36. No explanation was provided as to why the value of the Foamex Stock Fund was not tracking the increase in value in Foamex International stock. Foamex, in fact, attempted to conceal the January 2006 liquidation. In its June 29, 2006 Form 11-K filing with the Securities and Exchange Commission, Foamex did not disclose that the Foamex Stock Fund had been liquidated in January 2006. Rather, it misrepresented that any liquidation in January 2006 had been "deferred."

37. After being stonewalled by Foamex, Stanford consulted with legal counsel in an effort to understand why the value of the Foamex Stock Fund did not track Foamex stock. Only with the assistance of counsel did Stanford discover the following:

- Prior to July 19, 2005, the Foamex Stock Fund was comprised of about 95 percent Foamex International stock and 5 percent cash.
- In September 2005, Fidelity, at the direction of Foamex, sold Foamex International stock from the Foamex Stock Fund to increase the cash holdings of the Foamex Stock Fund to 20 percent.
- In early January 2006, Fidelity, at the direction of Foamex, sold Foamex International stock from the Foamex Stock Fund to increase the cash holding of the Foamex Stock Fund to 50 percent.
- By January 30, 2006, Fidelity, at the direction of Foamex, sold the rest of the Foamex International stock in the Foamex Stock Fund, thereby increasing the cash holdings of the Foamex Stock Fund to

100 percent. Further, Fidelity instructed Foamex that this was the proper course of action.

38. Fidelity advised Foamex to liquidate the Foamex Stock Fund. As Andrew R. Prusky, Foamex's Vice President and Deputy General Counsel, wrote on June 18, 2007:

> ". . . . Fidelity, not Foamex, executed all the sales that were transacted. On the advice of Fidelity, Foamex agreed to commence the liquidation of all Foamex shares in the Stock Fund on January 23, 2006. Fidelity completed the sale of all stock by January 30."

39. Under the terms of the Plan and Trust Agreement, Foamex, the Plan Sponsor, had no authority to direct Fidelity to alter the composition of the Foamex Stock Fund. Directives pertaining to the cash holdings of the Foamex Stock Fund could only come from the Committee.

40. Under the terms of the Plan and Trust Agreement, Fidelity should not have followed a directive by Foamex to sell Foamex stock out of the Foamex Stock Fund. It could only have followed a directive from the Committee, and only if communicated in written form executed by Thomas A. McGinley, Tina Patras or Mary Harmer.

41. Even if the Committee directed Fidelity to liquidate the Foamex Stock Fund such that it held no Foamex International stock, then such a directive is contradicted by the plain language of the Plan and Trust Agreement. The Committee had no power to direct the total liquidation of the Foamex Stock Fund, and Fidelity should have never carried out a directive that contradicted the plain terms of the Plan and Trust Agreement.

42. On February 7, 2006, just seven days after the Foamex Stock Fund had been totally liquated and as the price of Foamex International stock began to rise, Foamex attempted reverse the liquidation. Fidelity refused to undo the earlier liquidation. On February 8, 2006, the defendants began purchasing Foamex International

stock back into the Foamex Stock Fund on behalf of the Plan at a price much higher than they sold the Foamex International stock for just one month before. By the end of February 2006, the Fund was comprised of about 50 percent Foamex International stock and 50 percent cash.

43. None of the defendants had the power or authority to ignore the defined purpose of the Foamex Stock Fund, as specifically defined in the Plan's plan document, and sell off the Foamex International stock held in the Foamex Stock Fund.

44. As a result of the various sales and purchases of Foamex International stock held in the Foamex Stock Fund, the defendants caused the Plan and the Plan's participants and beneficiaries to sustain losses and miss out on enormous gains.

### G. CLAIMS FOR RELIEF

**FIRST CLAIM:
BREACH OF FIDUCIARY DUTY TO FOLLOW PLAN DOCUMENTS
ERISA § 404(A)(1)(D), 29 U.S.C. § 1104(A)(1)(D)**

45. Plaintiff re-alleges paragraphs 1 through 44, above.

46. At all relevant times, each of the defendants acted as a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) with respect to the disposition of the Plan's assets in the Foamex Stock Fund, and each defendant was a co-fiduciary of the others, ERISA § 405, 29 U.S.C. § 1105.

47. ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of
>
> (i) providing benefits to participants and their beneficiaries; and

>   (ii)   defraying reasonable expenses of administering the plan;
>
> (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;
>
> (C)   by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D)   in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

48.   ERISA § 409(a), 29 U.S.C. § 1109(a), states, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the Plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

49.   The defendants violated their obligations under ERISA §§ 404(a)(1)(D), 29 U.S.C. §§ 1104(a)(1)(D), by failing act in accordance with the documents and instruments governing the Plan, which stated that the Foamex Stock Fund was "a non-diversified stock fund that invested solely in Employer stock." By making unauthorized sales of Foamex International stock from the Foamex Stock Fund, the defendants violated the terms of the Plan documents and breached their fiduciary duties to the plaintiff, the Plan's participants and beneficiaries.

50. In addition, under the terms of Amendment 4, as of July 20, 2005, all participants and beneficiaries were prohibited from transferring "existing investments into or out of, the Foamex Stock Fund" and "[a]ll investments in the Foamex Stock Fund as of July 19, 2005 shall remain in the Foamex Stock Fund until moved into an alternative investment fund or distributed according to the terms of the Plan." However, according to Foamex International Inc.'s Form 11-K, filed with the SEC on June 29, 2006, participants and beneficiaries were, in fact, allowed to transfer investments out of the Foamex Stock Fund prior to its liquidation on December 22, 2006.

51. As a direct and proximate result of these acts and omissions, plaintiff, the Plan and the Plan's participants and beneficiaries have suffered losses and are entitled to relief under ERISA.

52. Plaintiff, on behalf of himself, the class and the Plan, prays for relief compelling the defendants to make good the losses to the Plan by restoring to the Plan the loss of value in the Fund, including opportunity losses and interest, as a result of the defendants' breaches of their fiduciary duties.

## SECOND CLAIM:
## FOAMEX'S BREACH OF DUTY TO MONITOR COMMITTEE UNDER ERISA §404(A)(1)(B), 29 U.S.C. §1104(A)(1)(B)

53. Plaintiff re-alleges paragraphs 1 through 52, above.

54. As a fiduciary of the Plan with respect to its appointment of members of the Committee, Foamex had the fiduciary duties under ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), to appoint persons with sufficient education, knowledge and experience to inform themselves as necessary to perform their duties as Committee members (including the duty to follow the terms of the Plan's plan document), and to review whether they were performing their duties properly with respect to the investment of assets in the Foamex Stock Fund.

55. Based on information that Foamex knew or should have known, the members of the Committee were not performing their duties properly between July 19, 2005, and January 30, 2006, because they permitted the sale of the Foamex International stock held in the Foamex Stock Fund.

56. Foamex took no action to ensure that the members of the Committee properly carried out their fiduciary duties with respect to the investment of assets in Foamex Stock Fund.

57. Accordingly, Foamex breached its fiduciary duties toward the Plan.

58. As a direct and proximate result of these acts and omissions, plaintiff, the Plan and the Plan's participants and beneficiaries have suffered losses and are entitled to relief under ERISA.

59. Plaintiff, on behalf of himself, the class and the Plan, prays for relief compelling Foamex to make good the losses to the Plan by restoring to the Plan the loss of value in the Fund, including opportunity losses and interest, as a result of Foamex's breaches of its fiduciary duties.

### THIRD CLAIM:
### RESPONDEAT SUPERIOR

60. Plaintiff re-alleges paragraphs 1 through 59, above.

61. Defendant members of the Committee were employees of Foamex, and acted in the scope of their employment by Foamex when acting as members of the Committee.

62. Foamex is liable under the doctrine of respondeat superior for the breaches of fiduciary duty by the defendant members of the Committee with respect to the investment of assets in the Foamex Stock Fund.

### FOURTH CLAIM:
### TRUSTEE'S BREACH OF DUTY UNDER ERISA §403(A)(1), 29 U.S.C. §1103(A)(1)

63. Plaintiff re-alleges paragraphs 1 through 62, above.

64. Section 403(a)(1) of ERISA, 29 U.S.C. § 1103(a)(1), provides that "the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan, except to the extent that

> (1) the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, . . . the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter [Chapter 18 of Title 29 of the United States Code, ERISA],"

65. To the extent that either the 2001 Plan Document or the Trust Agreement Fidelity permit a named fiduciary to direct Fidelity, Fidelity breached its fiduciary obligations to the Plan's participants and beneficiaries when it sold Foamex International Stock from the Foamex Stock Fund during the period July 19, 2005, through January 30, 2006. Fidelity breached its fiduciary duty to follow only proper instructions by following directions from an entity, Foamex, without authority to give such directions. It also breached its fiduciary duty because the directions were not made in accordance with the terms of the Plan, as required by ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). The 2001 Plan Document required the Foamex Stock Fund to be invested "solely" in Foamex International Stock; no plan document permitted the Foamex Stock Fund to be liquidated in its entirety.

### FIFTH CLAIM:
### FOAMEX'S BREACH OF DUTY TO MONITOR TRUSTEE UNDER ERISA §404(A)(1)(B), 29 U.S.C. §1104(A)(1)(B)

66. Plaintiff re-alleges paragraphs 1 through 65, above.

67. As a fiduciary of the Plan with respect to its appointment of Fidelity as trustee, Foamex had the fiduciary duties under ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B), to appoint a person with sufficient education, knowledge and experience to inform itself as necessary to perform its duty as trustee (including the duty to follow the terms of the Plan's plan document), to inform the trustee of the facts necessary for

them to fulfill its responsibilities under ERISA, and to review whether the appointed trustee, Fidelity, was performing its duties properly with respect to the investment of assets in the Foamex Stock Fund.

68. Based on information that Foamex knew or should have known, Fidelity was not performing its duties as trustee properly between July 19, 2005, and January 30, 2006, because they permitted the sale of the Foamex International stock held in the Foamex Stock Fund.

69. Foamex took no action to ensure that Fidelity properly carried out its fiduciary duties as trustee with respect the investment of assets in the Foamex Stock Fund.

70. Accordingly, Foamex breached its fiduciary duties toward the Plan.

71. As a direct and proximate result of these acts and omissions, plaintiff, the Plan and the Plan's participants and beneficiaries have suffered losses and are entitled to relief under ERISA.

72. Plaintiff, on behalf of himself, the class and the Plan, prays for relief compelling Foamex to make good the losses to the Plan by restoring to the Plan the loss of value in the Fund, including opportunity losses and interest, as a result of the Foamex's breaches of its fiduciary duties.

### SIXTH CLAIM:
### BREACH OF DUTY AS COFIDUCIARY UNDER ERISA § 405, 29 U.S.C. § 1105

73. Plaintiff re-alleges paragraphs 1 through 72, above.

74. At all relevant times, each of the defendants acted as a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) with respect to the disposition of the Plan's assets in the Foamex Stock Fund, and each defendant was a co-fiduciary of the others under ERISA § 405, 29 U.S.C. § 1105.

75. ERISA § 405, 29 U.S.C. § 1105, states, in relevant part, that

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

76. As a direct and proximate result of the defendants' acts and omissions described above, the Plan and its participants and beneficiaries have been damaged and are entitled to relief under ERISA.

77. Plaintiff, on behalf of himself, the class and the Plan, prays for relief compelling the defendants to make good the losses to the Plan by restoring to the Plan the losses incurred as a result of the defendants' breaches of fiduciary duty.

### H. DEMAND FOR RELIEF

WHEREFORE, plaintiff requests that this Court:

1. Certify this case as a class action, designate the named plaintiff as class representative, and designate SIRIANNI YOUTZ MEIER & SPOONEMORE, EKMAN, BOHRER & THULIN, P.S., and JENNINGS SIGMOND, P.C. as class counsel;

2. Declare that the defendants violated ERISA in the manner set forth above;

3. Order the defendants to make good the losses, including opportunity losses, sustained by the Plan and its participants and beneficiaries due to the defendants' breaches of their fiduciary duties;

4. Order the defendants to make good the losses, including opportunity losses and interest, sustained by the Plan and its participants and beneficiaries due to the defendants' breaches of their fiduciary duties;

5. Award plaintiff and the class their attorney fees; and

6. Award such other relief as is just and proper.

DATED: June 24, 2009.

        SIRIANNI YOUTZ
        MEIER & SPOONEMORE

BY:   */s/ Richard E. Spoonemore*
Richard E. Spoonemore (WSBA #21833)
*Admitted Pro Hac Vice*
719 Second Avenue, Suite 1100
Seattle, WA 98104
Tel. (206) 223-0303
Fax (206) 223-0246
rspoonemore@sylaw.com

EKMAN, BOHRER & THULIN, P.S.
Charles H. Thulin (WSBA #9039)
*Admitted Pro Hac Vice*
220 W. Mercer Street, Suite 400
Seattle, WA 98119
Tel. (206) 282-8221
Fax (206) 285-4587
c.thulin@ekmanbohrer.com

JENNINGS SIGMOND, P.C.
Kent Cprek (PA ID No. 40806)
510 Walnut Street, Suite 1600
Philadelphia, PA 19106-3683
Tel. (215) 351-0615
Fax (215) 922-3524
usdc-edpa-erisa@jslex.com

Counsel for Plaintiff William Stanford, Jr.