# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WILLIAM STANFORD, JR., individually and on behalf of all other similarly situated persons and on behalf of the Foamex L.P. Savings Plan, | : : : | CIVIL ACTION |
|     Plaintiff, | : | NO. 07-4225 |
|  | : |  |
|        v. | : |  |
|  | : |  |
| FOAMEX L.P., *et al.*, | : |  |
|     Defendants. |  |  |

## Memorandum

YOHN, J.                                                            September ___, 2009

Plaintiff William Stanford, Jr. filed this putative class action individually and on behalf of all other similarly situated persons and on behalf of the Foamex L.P. Savings Plan pursuant to Section 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2). His claims are lodged against Foamex L.P., Fidelity Management Trust Co., K. Douglas Ralph, Stephen Drap, Gregory J. Christian, and George L. Karpinski. Presently before the court is plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification of the following class: All individuals invested in the Foamex Stock Fund on September 22, 2005, except individuals who were members of the Foamex Benefits Committee at any time between September 22, 2005 and December 31, 2006, the members of their immediate families, and their heirs, successors or assigns. Defendants contest certification on several grounds. For the reasons that follow, the court will grant plaintiff's motion, and certify a mandatory class pursuant to Federal Rule of Civil Procedure 23(b)(1).

1

I.      **Facts and Procedural Background**[1]

Stanford is a former employee of Foamex, L.P. ("Foamex").[2]  (Pl.'s Mot. Class Cert. ("Pl.'s

Mot.") 1; Defs.' Br. in Opp'n to Pl.'s Mot. Class Cert. ("Defs.' Resp.") 3-4.)  He was a participant

in the Foamex L.P. Savings Plan (the "Plan").  (Pl.'s Mot. 1; Defs.' Resp. 3-4.)  Foamex was the

sponsor of the Plan, which is a 401(k) defined contribution plan[3] governed by ERISA.  (3d Amend.

Compl. ¶¶ 6, 11; Defs.' Resp. 3-4.)  The Foamex L.P. Benefits Committee ("Committee"), which

consisted of Foamex employees, including defendants Christian, Ralph, Karpinski, and Drap,

controlled and managed the Plan, (3d Am. Compl. ¶ 16; Defs.' Resp. 4), and Fidelity Management

Trust Company ("Fidelity"), the trustee of the Plan, held the Plan's assets.  (3d Am. Compl. ¶ 17;

Defs.' Resp. 4).

The Plan offered participants several different investment funds to choose from.  (Plan App'x

C.)  Stanford was invested in the Foamex Stock Fund ("Fund"), which the Plan defines as a "non-

diversified stock fund that invests solely in Employer Stock [Foamex International common stock]."

(Plan § 1.32.)  The Trust Agreement between Foamex and Fidelity explains: "Investments in the

---

[1]All of the findings hereafter are by a preponderance of the evidence.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008).

[2] Foamex is one of many wholly-owned subsidiaries of Foamex International, Inc. ("Foamex International").  Foamex International is engaged in the business of manufacturing and distributing foam products.  (*See* Foamex International's Annual Report (Form 10-K), at 4 (April 4, 2005).)  Foamex International operates its business through Foamex and its other subsidiaries. (*Id.*)

[3] In a defined contribution plan, "the employee or the employer (or both) contribute to the employee's individual account. . . . These contributions generally are invested on the employee's behalf.  The employee will ultimately receive the balance in his or her account, which is based on contributions plus or minus investment gains or losses."  U.S. Dep't of Labor, Retirement Plans, Benefits & Savings: Types of Retirement Plans, www.dol.gov/dol/topic/retirement/typesofplans.htm (last visited Aug. 11, 2009).

Stock Fund shall consist primarily of shares of Sponsor Stock.  In order to satisfy daily participant exchange or withdrawal requests for transfers and payments, the [Fund] shall also include cash or short-term liquid investments . . . ."   (Trust Agreement § 4(e).)[4]  "The investment performance of the [F]und is directly tied to the financial performance of Foamex International Inc. and its subsidiaries, along with general market conditions."  (Foamex L.P. Savings Plan For Salaried Employees Summary Plan Description 7 (emphasis in original).)  "Because of the non-diversified nature of this [F]und, investing in this [F]und involves a greater element of risk than the other available funds."  (*Id.*)  Prior to the fall of 2005, the Fund maintained a target cash balance of approximately 5%, meaning the Fund invested approximately 95% of its assets in Foamex International stock.  (Compl. ¶ 37.)

Foamex International and Foamex began to experience financial problems in the summer of 2005.  (*See* Spoonemore Supplemental Decl. Ex. E, Foamex International's Annual Report (Form 10-K), at 9 (April 4, 2005); *see id.* Ex. F, Foamex International's Current Report (Form 8-K), at 4 (July 11, 2005); *see id.* Ex. G, Foamex's Current Report (Form 8-K), at 3, 5 (August 15, 2005).)  On July 13, 2005, the Committee met to discuss the volatility of Foamex International's stock.  (*See* McGinley Decl. Ex. D, Minutes from July 15, 2005 Committee meeting ¶ 2.)  Because of the heightened volatility of the stock's market value, the Committee decided that the Fund was no longer a prudent investment for Plan participants.  (*Id.*)  Therefore, the Committee resolved to prevent any

---

[4] Similarly, the Summary Plan Description provides:
> *A percentage of assets will be held as cash (short-term investments).  Your ownership is measured in units of the fund instead of shares of stock.  This is neither a mutual fund nor a diversified or managed investment option* . . . .

(Foamex L.P. Savings Plan For Salaried Employees Summary Plan Description 7 (emphasis in original).)

new participants from investing in the Fund effective July 15, 2005.  (*Id.*)  The Committee planned to allow participants already invested in the Fund to maintain their investments in the Fund or transfer their investments to another of the Plan's funds.  (*Id.*)  Foamex and Fidelity informed Plan participants of these changes in letters sent on July 15, 2005 and July 20, 2005, respectively.[5] (*Id.* Ex. E, Letter from Greg Christian to Plan participants (July 15, 2005); *see id.* Ex. F, Letter from Fidelity to Plan participants (July 20, 2005).)  On July 20, 2005, the Trust was amended to reflect these changes: "*Effective at the close of business (4:00 p.m. ET) on July 20, 2005*, amending the 'investment options' section . . . to reflect that [the Fund] is frozen to new contributions and exchanges in."  (Trust Agreement Am. 5.)

Contrary to the language of the Trust Amendment and to the content of the letters sent to Plan participants, the Committee formally adopted Amendment No. 4 to the Plan on September 8, 2005,[6] which by its terms arguably prevents any new investment in the Fund or any transfer of existing Fund investments to other funds available under the Plan:[7]

> Effective July 20, 2005, a Member [plan participant] may not longer direct new investments into, *or transfer existing investments into or out of*, the [Fund].  All investments in the [Fund] as of July 19, 2005 shall remain in the [Fund] until moved into an alternate investment fund or distributed according to the terms of the Plan.

---

[5] Stanford received and read each of these letters.  (Stanford Dep. 51:12-14, 56:25-57:12, May 22, 2009.)

[6] The Plan permits Foamex, as the Plan's sponsor, or the Benefits Committee, as the Plan Administrator, to amend its terms.

[7] Defendants allege that this latter restriction was due to a scrivener's error.

4

(Plan Am. No. 4 ¶ 10.)  Notwithstanding the differences between the Plan and Trust

Amendments, Stanford, who believed that Foamex International's stock price would rebound,

decided to maintain his investment in the Fund.[8]  (Stanford's Dep. 54:18-55:2.)

On September 19, 2005, Foamex International and certain of its subsidiaries, including

Foamex, filed for bankruptcy.  (Spoonemore Supplemental Decl. Ex. H, Foamex International's

Quarterly Report (Form 10-Q), at 6 (November 21, 2005) (informing investors of bankruptcy

filing).)  Under the terms of Foamex International's proposed bankruptcy plan, "there would be

no recovery for holders of equity securities in the Company [Foamex International]."  (*Id.* at 28.)

On September 22, 2008, allegedly envisioning an increase in the number of transfer requests in

light of the proposed bankruptcy plan, the Committee directed Fidelity to increase the cash

balance in the Fund to a target of 20%, "to provide liquidity to satisfy daily participant requests."

(*Id.* Ex. I., Letter from Thomas A. McGinley to Fidelity (September 22, 2005).)

On December 23, 2005, Foamex International and its bankrupt subsidiaries filed a joint

reorganization plan, which provided for the cancellation of all then-existing shares of Foamex

International stock without any compensation for shareholders.  (McGinley Decl. Ex. O,

Foamex's Current Report (Form 8-K), at 5-6 (December 27, 2005).)  On January 6, 2006,

Foamex directed Fidelity to increase the target cash balance in the Fund to 50%.  (Spoonemore

Supplemental Decl. Ex. L, Letter from Thomas A. McGinley to Fidelity (January 6, 2006).).

Again, the reason for the increase in the target cash balance was "to provide liquidity to satisfy

daily participant requests."  (*Id.*)  Finally, between January 23, 2006 and January 30, 2006,

---

[8] Though not material to this motion, the court notes that defendants permitted transfers
out of the Fund.  Whether the Trust Amendment prevented defendants from permitting such
transfers is one of the issues at stake in this litigation.

allegedly in response to continuing financial troubles, all Foamex International stock holdings in the Fund were liquidated.  (*See* McGinley Decl. Ex. P, Fund's Asset Holdings Report FID-FMX0000760 ("Fund Report") 6.)  Throughout all of these transactions, and despite Foamex International's financial troubles, Stanford maintained his investment in the Fund.

The automatic cancellation of Foamex International stock, which would have occurred after the bankruptcy court approved the terms of the bankruptcy plan, was placed on hold due to delays in the bankruptcy proceeding.  (Spoonemore Supplemental Decl. Ex. R, Foamex International's Annual Report (Form 11-K), at 10 (June 29, 2006).)  Indeed, on February 7, 2006, Foamex contacted Fidelity to discuss the possibility of reversing the January 2006 voluntary liquidation of the Fund.  (*Id.* Ex. M, Letter from Andrew R. Prusky to Charles Sirianni, at 2 (June 18, 2007).)  On February 8, 2006, Fidelity began to repurchase Foamex International stock to establish a target stock position of 50% for the Fund.  (*Id.*; *see also* Fund Report 7.)  Participants in the Fund were informed via letter of the delay in automatic liquidation and the repurchase of Foamex International stock on February 24, 2006, two weeks after the repurchase of the stock began.  (McGinley Decl. Ex. K, Letter from Fidelity to Participants, at 1 (February 24, 2006).)  As the target stock position of the Fund in Foamex International stock increased, so did the market value of the stock.  (*See* Fund Report 7-14.)  The Fund, however, did not fully realize the gains attendant to the stock price increases because the Fund invested only 50% of its assets in Foamex International stock, retaining a 50% target cash balance.  (*See id.*)  The Fund was finally closed on December 22, 2006.  (*See* Trust Agreement Am. No. 7.)

Stanford originally filed this action on July 3, 2007 in the Western District of Washington.  The case was transferred to this district on September 28, 2007.  The original

complaint asserted eight counts against defendants.  Stanford amended his complaint on

November 21, 2007, and then amended his complaint again on September 15, 2008, after the

court granted defendants' motion to dismiss the misrepresentation claim contained in Stanford's

first amended complaint.  Stanford filed a third amended complaint on June 29, 2009, in which

Stanford added Christian and Karpinski as defendants.  In his third amended complaint,

Stanford's asserts six counts: (I) breach by all defendants, under ERISA § 404(a)(1)(D), of their

fiduciary duties to follow Plan documents when they made unauthorized sales of Foamex

International stock and transferred existing Fund investments in violation of Plan Amendment

No. 4; (II) breach by Foamex of its duty under ERISA § 404(a)(1)(B) to monitor the Committee;

(III) breach by Foamex under the theory of respondeat superior for the breaches by the members

of the Committee; (IV) breach by Fidelity of its duty under ERISA § 403(a)(1) to follow proper

directions when it followed the unauthorized direction of Foamex and violated the Plan's rules

by liquidating the Fund by selling all of its Foamex International stock; (V) breach by Foamex of

its duty under ERISA § 404(a)(1)(B) to monitor Fidelity; and (VI) breach by all defendants of

their cofiduciary duties under ERISA § 405.  Plaintiff filed a motion for class certification on

January 13, 2009.[9]  The Committee (which is no longer a defendant in the third amended

complaint), Ralph and Drap responded on June 26, 2009.  Fidelity also responded on June 26,

2009, joining the legal arguments set forth in Foamex's response.  Stanford replied on July 24,

2009, and Fidelity filed a sur-reply on August 14, 2009.

## II.     Class Certification Standards

Federal Rule of Civil Procedure 23 governs the propriety of class certification.

---

[9]On April 15, 2009 I stayed the action as to Foamex as it is in bankruptcy proceedings.

To obtain class certification under Rule 23, plaintiffs bear the burden of establishing "that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). "'Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met.'" *Hohider v. United Parcel Serv., Inc.*, ---F.3d----, 2009 WL 2183267, *3 (3d Cir. Jul. 23, 2009) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2009) (internal quotations omitted)). Significantly, the "'requirements of Rule 23 must be met, not just supported by some evidence.'" *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 321 (quoting *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006)). When deciding whether to certify a class of plaintiffs, the court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *Id.* at 307; *see Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001) ("A class certification decision requires a thorough examination of the factual and legal allegations."). "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 320.

Importantly, the "requirements set out in Rule 23 are not mere pleading rules," and the court must "delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *Id.* at 316 (internal quotations omitted); *see also id.* at 326 (stating that "actual, not presumed conformance with the Rule 23 requirements is essential" (alterations and quotation omitted)). "[T]he decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *Id.* at 307. Moreover, "the court must resolve all factual or legal disputes relevant to class certification, even

if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.*; *see also id.* at 316 ("An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met."). During the court's "preliminary inquiry into the merits," the "court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take." *Id.* at 317 (internal quotations omitted); *see Hohider*, 2009 WL 2183267, at *3, *19 (noting "critical" importance of determining how case will be tried when considering class certification). While the court may consider the substantive elements of plaintiff's claims, plaintiff's "burden at the class certification stage is *not* to prove the element[s]" of each claim. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 317 (emphasis added). "Instead, the task for plaintiffs at class certification is to demonstrate" that the elements of their claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members."[10]  *Id.* at 311-12.

---

[10] Defendants read *In re Hydrogen Peroxide* to create an even higher burden on plaintiff. Specifically, defendants argue that the plaintiff's claims concerning Plan Amendment No. 4 are foreclosed by the equitable doctrine of scrivener's error. Defendants seek reformation of the amendment's language. Whether the court should reform the Plan amendment is not at issue in a motion for class certification. Instead, the relevant question is whether plaintiff can counter defendants' scrivener's error defense with proof common to the entire class. As defendants point out, the court can reform the Plan to reflect the intended language of Amendment No. 4 only if defendants establish that "no plan participants were likely to have relied upon the scrivener's error in question . . . ." *See Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1105 n.2 (3d Cir. 1996) (discussing the Third Circuit's holding in *Int'l Union v. Murata Erie North America, Inc.*, 980 F.2d 889 (3d Cir.1992)). Because the court must find that no plan participants were likely to follow the erroneous Plan amendment, the evidence presented by the parties necessarily will be class-wide in nature. Defendants have not argued to the contrary. Thus, the court finds that the scrivener's error defense does not preclude certification. The court, however, will consider the merits of the scrivener's error defense later if raised in a proper motion.

III.    **Discussion**

A.    **Plaintiff's Claims**

Because a determination of how the case will proceed is "critical" to the issue of whether to certify a class, I begin with a discussion of plaintiff's claims.  Stanford brings this action pursuant to § 502(a)(2) of ERISA (codified as 29 U.S.C. § 1132(a)(2)), which permits a plan participant to file a civil action against a fiduciary for relief under § 409 of ERISA (codified as 29 U.S.C. § 1109).  Under § 409(a), fiduciaries found to have breached their fiduciary duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary."  In cases like this, where plan participants assert § 502(a)(2) claims against fiduciaries of a defined contribution plan, participants can assert claims on behalf of the entire Plan or on behalf of their individual plan accounts.  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1026 (2008) (holding that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account").  In the present action, Stanford alleges breaches that affected the entire Plan, not just his individual account.  (3d Am. Compl. ¶ 5.)  Thus, any recoupment of lost profits would inure to the benefit of the Plan.  *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985).

Each count of the third amended complaint asserts a breach of fiduciary duty claim, with each count centering in large part on specific transactions made by defendants: (1) the September 22, 2008 increase in the target cash balance to 20%; (2) the January 6, 2006 increase in the target

cash balance to 50%; (3) the total liquidation of all Foamex International stock in the Fund that

took place between January 23, 2006 and January 30, 2006; (4) the maintenance of a 50% target

cash balance from February 2006 until the Fund's closure in December 2006; and (5) the

willingness of defendants to allow participants invested in the Fund to transfer their investments

out of the Fund after the adoption of Amendment No. 4 to the Plan (collectively, "Challenged

Transactions").  (3d Am. Compl. ¶ 49; Pl.'s Reply Br. 16.)

In count I, plaintiff asserts that all defendants breached their fiduciary duties by failing to

act in accordance with the Plan in violation of § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).[11]

Pursuant to § 404(a)(1)(D), "[f]iduciaries are required to discharge their duties with respect to a

plan . . . 'in accordance with the documents and instruments governing the plan insofar as such

documents and instruments are consistent with the provisions of [ERISA].'"  *Kilkenny v. Guy C.*

*Long, Inc.*, 288 F.3d 116, 121 (3d Cir. 2002) (quoting 29 U.S.C. § 1104(a)(1)(D)); *see also De-*

*Witt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997) (reminding that fiduciaries

are "obligated to comply with the terms of the plan").  In counts II and V, plaintiff asserts that

Foamex failed to monitor the Committee and Fidelity, respectively, in violation of §

404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), which requires a fiduciary to discharge its duties "with

the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent

man acting in a like capacity and familiar with such matters would use in the conduct of an

enterprise of a like character and with like aims."  One such duty, is the duty to monitor other

plan fiduciaries.  *See Graden v. Conexant Systems, Inc.*, 574 F. Supp. 2d 456, 466 (D.N.J. 2008)

---

[11] The proceeding as to count III will closely mirror the proceeding as to count I, as count III asserts a respondeat superior claim against Foamex for the alleged fiduciary breaches of its employees forth in count I.

("ERISA imposes upon those individuals empowered to appoint and remove plan fiduciaries a fiduciary duty to monitor those fiduciaries.").

In count IV, Stanford asserts that Fidelity, in its capacity as trustee, breached a fiduciary duty set forth in § 403(a)(1), 29 U.S.C. § 1103(a)(1). Section 403(a)(1) provides that a trustee enjoys exclusive "authority and discretion to manage and control" the plan assets, except to the extent that "the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter." Here, the Plan establishes that the Committee is its named fiduciary. (*See* Plan § 12.3; Trust Agreement § 7(b) & (c).) "[W]here a trustee is 'subject to the direction of a named fiduciary,' as Fidelity is here subject to the direction of [the Committee], then Fidelity must comply with the 'proper directions' of [the Committee] which are made in accordance with the plan and are not contrary to ERISA." *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 735, 746 (E.D. Va. 2005). Plaintiff's theory is two pronged: (1) Fidelity did not follow "proper direction" because it took orders from Foamex that the Plan did not authorize Foamex to make, and (2) Fidelity did not follow "proper direction" because the directions given to it ran contrary to the express terms of the Plan.

Lastly, in count VI, plaintiff asserts that all defendants breached their duties as co-fiduciaries under § 405, 29 U.S.C. § 1105. Co-fiduciary liability under ERISA holds a fiduciary responsible for another fiduciary's breach of a duty:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

§ 1105(a)(1)-(3); *see Graden*, 574 F. Supp. 2d at 467.  The focus of a co-fiduciary claim, therefore, is two-pronged.  First, a plaintiff must establish a breach of a fiduciary duty.  Next, the plaintiff must establish that a different fiduciary's actions fall within one of the situations outlined in § 1105(a)(1)-(3).

Though plaintiff raises distinct ERISA claims, review of the substance of these claims reveals that all of the claims share two important attributes.  First, the focus of a trial or of a dispositive motion will be on the defendants' actions with respect to each other and the Fund.  *See In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465 (E.D. Pa. 2000) (reminding that "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs"); *see also Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 189 (W.D. Mo. 2009).  Second, because the focus will be on defendants' actions, proof offered to establish the alleged fiduciary breaches will not rest on subjective findings with respect to individual plaintiffs, but, rather, offers of proof will be common to all class members.  *Cf. In re Merck & Co. Securities, Derivative & ERISA Litig.*, No. 05-1151, 2009 WL 331426, *8 (D.N.J. Feb. 10, 2009) (finding that "determination of whether Defendants breached a fiduciary duty of prudence to the Plans will not turn on the details of individual plaintiffs' subjective opinions").  Having set forth plaintiff's substantive claims and made these preliminary observations, I will now turn to the

requirements of Rule 23 mindful of the anticipated manner in which this case would proceed at

trial.[12]

## B.        Rule 23(a) Requirements

Rule 23(a)(1)-(4), which sets forth four requirements commonly known as numerosity,

commonality, typicality, and adequacy, states:

> One or more members of a class may sue or be sued as representative parties on
> behalf of all members only if: (1) the class is so numerous that joinder of all members
> is impracticable [numerosity]; (2) there are questions of law or fact common to the
> class [commonality]; (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class [typicality]; and (4) the representative
> parties will fairly and adequately protect the interests of the class [adequacy].

These requirements "assure both that class action treatment is necessary and efficient and that it

is fair to the absentees under the particular circumstances.  While numerosity addresses the first

of these concerns, . . . the last three requirements help determine whether the class action can be

maintained in a fair and efficient manner."  *Baby Neal*, 43 F.3d at 55.  Defendants only contest

typicality.  Nevertheless, because plaintiff bears the burden of establishing that Rule 23(a) is

satisfied, the court will review all four of the Rule 23(a) prerequisites.

## 1.        Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."  While no minimum number of plaintiffs is required to satisfy the numerosity

requirement, in general, "if the named plaintiff demonstrates that the potential number of

plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Steward v. Abraham*, 275 F.3d

220, 226-27 (3d Cir. 2001); *see In re Merck*, 2009 WL 331426, at * 7 (same); *Thomas v.*

---

[12] Unless otherwise stated, the court will treat all six counts of the complaint collectively,
as all six counts focus on the same course of defendants' conduct.

*SmithKline Beecham Corp.*, 201 F.R.D. 386, 391 (E.D. Pa. 2001) (finding that numerosity requirement is generally met when total number of class members exceeds 100).  Here, plaintiff asserts that the class will include at least 576 individuals, representing those individuals who were invested in the Fund on January 31, 2006, after the voluntary liquidation of Fund.  Plaintiff derives this number from a Foamex report that details the number of investors in the Fund when the Fund was totally liquidated.  (*See* Spoonemore Decl. Ex. D.)   Having reviewed this report, and without any reason presented by defendants to doubt the information contained therein, the court finds that the class of persons in this case would exceed 500 individuals.  The court further finds that joinder of these individuals would be impracticable, and, therefore, the court finds that the plaintiff has satisfied the numerosity requirement.

## 2.     Commonality

Next, Stanford must establish that "there are questions of law or fact common to the class."  Fed. R. Civ. Pro. 23(a)(2).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Baby Neal*, 43 F.3d at 56; *In re Merck*, 2009 WL 331426, at *7.  "Because the requirement may be satisfied by a single common issue, it is easily met."  *Baby Neal*, 43 F.3d at 56.  As plaintiff correctly points out, because the focus of each count is squarely on the behavior of the fiduciary defendants, common questions of law and fact exist as to each count regarding whether, and to what extent, defendants breached any fiduciary duty or duties owed to plaintiff and members of the prospective class.  *Georgi v. Recon Automotive Remanufacturers*, No. 07-5509, 2009 WL 1312607, *3 (E.D. Pa. May 7, 2009) (finding commonality satisfied where focus of lawsuit was on defendants' course of conduct, which was common to "all class members" and "subject to

common proof in a single trial"); *Thomas*, 201 F.R.D. at 394 (holding commonality met in

ERISA case where issues such as whether defendants owed plaintiff a fiduciary duty and, if so,

whether defendants conformed their actions to that duty were common to the entire class).

Common question of law and fact include whether the liquidation of the Foamex Stock

Fund was directed by a person without authority to direct the liquidation, whether Fidelity took

direction from a person who had no authority to direct liquidation, whether the defendants caused

or permitted the change in the holdings of the Foamex Stock Fund in a manner that conflicts with

its definition in the Plan document and whether the defendants restricted transfers out of the

Foamex Stock Fund in a manner that conflicts with the Plan document.  Defendants do not

dispute that the commonality requirement has been met.  Therefore, because disposition of the

claims contained in each count necessarily will involve questions of law and fact common to the

entire class, the court finds that plaintiff has satisfied the commonality requirement of Rule

23(a)(2).

### 3.     Typicality

Third, Stanford must demonstrate that "the claims or defenses of the representative

parties are typical of the claims or defenses of the class."  Fed. R. Civ. Pro. 23(a)(3).  "The

typicality inquiry is intended to assess whether the action can be efficiently maintained as a class

and whether the named plaintiffs have incentives that align with those of absent class members

so as to assure that the absentees' interests will be fairly represented."  *Baby Neal*, 43 F.3d at 57.

This inquiry focuses on "'whether the named plaintiffs' claims are typical, in common-sense

terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of

the class.'"  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal*, 43

F.3d at 55). The court must, in effect, discern whether potential conflicts exist within the proposed class. *Baby Neal*, 43 F.3d at 57.

Typicality will generally be found to exist when the named plaintiffs and the proposed class members "challenge[] the same unlawful conduct." *Baby Neal*, 43 F.3d at 58; *see also id.* at 57-58 ("Typicality entails an inquiry whether the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)) (alterations in original)). Therefore, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal*, 43 F.3d at 58 (quotation omitted); *see Georgi*, 2009 WL 1312607, at *3. "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58.

Plaintiff contends that the typicality requirement is satisfied here because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members. Indeed, as noted above, all of the claims in this case arise from the same course of defendants' conduct, that is, the five Challenged Transactions. Thus, the focus of each claim shines the spotlight squarely on defendants, as the actions of the defendants directly impacted the Fund, and, correspondingly, all those invested in the Fund. As the Third Circuit has repeatedly articulated, actions "'challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *In re Community Bank of Northern Virginia*, 418 F.3d 277,

17

303 (3d Cir. 2005) (quoting *Baby Neal*, 43 F.3d at 58)); *see In re Prudential Ins. Co. Am. Sales Pract. Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998) (finding typicality requirement satisfied where plaintiffs "suffered harm as the result of the same company-wide conduct that injured the absentee class members"); *Georgi*, 2009 WL 1312607, at *3 (same); *In re Ikon*, 194 F.R.D. at 176 (same).  Courts have routinely applied this principle in the ERISA context.  *See, e.g.*, *In re Merck*, 2009 WL 331426, at **7-8 (finding that "determination of whether Defendants breached a fiduciary duty of prudence to the Plans will not turn on the details of individual plaintiffs' subjective opinions"); *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 475 (E.D. Pa. 2007) (holding, when certifying settlement class in ERISA breach of fiduciary duty case, that typicality requirement met where breach of fiduciary duty claims challenged same allegedly unlawful conduct); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. 2006) (finding that plaintiff's § 502(a)(2) claim was "necessarily typical of those of the rest of the class" because the claims were based on "the effect the acts or omissions of [the defendant] had on the value of the Plan"); *Furstenau v. AT&T Corp.*, No. 02-5409, 2004 WL 5582592, *3 (E.D. Pa. Sept. 3, 2004) (holding plaintiff demonstrated typicality in § 502(a)(2) ERISA enforcement action where plaintiff would need to establish common issue of whether defendants breached their fiduciary duties).

Defendants offer five arguments to overcome these well-settled principles.  First, defendants argue that plaintiff admitted in his deposition that he does not represent Fund participants who decided to transfer their investment from the Fund to another investment vehicle during the time period in question.  Plaintiff, who is not an attorney, counters that at the time of his deposition, he believed that legally he could only represent people with identical

claims. (*See* Stanford Decl. ¶ 2.)  Since that time, plaintiff has learned that his claims need not

be identical to all class members.  Defendants read too much into Stanford's deposition

testimony.  The requirement imposed by the typicality hurdle concerns whether plaintiff's claims

*are* typical of the absent class members, not whether plaintiff *thinks* such claims are typical.  As I

discussed above, and as plaintiff correctly articulates in his briefing, the typicality requirement

does not demand identical claims, only that they be reasonably coextensive with those of the

absent class members.  *See Baby Neal*, 43 F.3d at 57-58 and *Hanlon v. Chrysler Corp.*, 150 F.3d

1011, 1020 (9th Cir. 1998).  Rather, where the focus of the claims is aimed at the same course of

defendants' conduct, courts have routinely granted class certification.  I find that plaintiff's

erroneous belief as to the status of Third Circuit precedent does not permit defendants to

circumvent these well-settled principles.

Second, defendants argue that plaintiff's claims are too uncertain and undefined to satisfy

the typicality requirement.  Quite to the contrary, the court finds that plaintiff has set forth his

claims with specificity.  Plaintiff's claims are based on the obligation of fiduciaries to follow the

terms of the controlling Plan.  The Plan states that the Fund invests "solely" in the common stock

of Foamex International.  The Trust Agreement allows the Fund to hold cash or short-term liquid

investments "to satisfy daily participant exchange or withdrawal requests for transfers and

payments."

Plaintiff contends that defendants committed the Challenged Transactions in violation of

the Plan and Trust Agreement and the actions were not necessary to provide a liquidity to satisfy

participant requests for withdrawals.  For purposes of meeting the typicality requirement, I so

find.  Plaintiff submits a chart developed from the supplemental Spoonemore declaration, Exhibit

19

"S" showing the limited demand to withdraw assets from the Fund from October 2005 through

its termination December 2006.  The percentage of the Fund's net assets withdrawn in October

2005 was 5.38% but in the months thereafter it varied from a high of 3.73% to a low of 0.20%.

During this same time period the daily cash component objective was increased to 50% on

January 6, 2006, 100% on January 30, 2006 and was reset to 50% on February 9, 2006 where it

was maintained until the Fund was terminated on December 22, 2006.  Plaintiff is alleging that

defendants breached their fiduciary duties by making several specific transactions with respect to

the Fund.  Interestingly, despite arguing that plaintiff's claims are too indefinite, defendants were

able to muster thorough arguments regarding the merits of each of alleged fiduciary breaches.

(*See* Defs' Resp. 21-22.)  Accordingly, I find that plaintiff has set forth his claims with sufficient

clarity.

Third, defendants contend Third Circuit precedent precludes certification because other

class members may raise claims that Stanford has not raised.  Defendants argue that because

Stanford does not challenge the closing of the Fund, any other class member wishing to do so

could raise a claim atypical to Stanford's complaint.  Likewise, because the court previously

dismissed Stanford's misrepresentation claim on insufficient pleading grounds, defendants assert

that other plaintiffs able to satisfy the pleading requirement for a misrepresentation claim would

be capable of raising an atypical claim.  Defendants' third argument misses the mark because

"[t]he mere fact that some members of the class may have additional state or federal law claims,

not asserted by the named plaintiffs, does not preclude a finding of typicality."  *In re Community

Bank of Northern Virginia*, 418 F.3d 277, 303 (3d Cir. 2005); *see Barnes v. Am. Tobacco Co.*,

161 F.3d 127, 141 (3d Cir. 1998); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 241

(W.D. Pa. 2008); *see also Baby Neal*, 43 F.3d at 58 ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.").  Here, Stanford's third amended complaint attacks conduct that directly impacted all those invested in the Fund.  The fact that the class members may have other claims with reference to conduct not at issue here does not mean that plaintiff does not meet the typicality standard.  I find that as a fellow investor in the Fund, Stanford interests are sufficiently aligned with the rest of the class. That Stanford may not have raised every conceivable claim concerning this conduct does not divorce Stanford's interests in prosecuting this case from the interests of the absent class members.  Therefore, defendants' third attempt to defeat typicality fails.

Fourth, defendants argue that calculation of damages will require an individualized inquiry analyzing the loss incurred by each class member rather than a simple mechanistic calculation.  Such individualized inquiries, defendant argues, defeat class certification.  Contrary to defendants's argument, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977).  Though the need to make individualized calculations of damages does not defeat class certification automatically, I must consider whether "'there would be problems involved in proving damages which would outweigh the advantages of class certification'" and would justify limiting the class certification "'to the determination of liability.'"  *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137 (3d Cir. 2000) (quoting *Bogosian*, 561 F.2d at 456).  I find that this case is not one in which the problems of calculating damages outweigh the benefits

of proceeding as a class action.  Plaintiff brings this action on behalf of the entire Plan, and any recovery will inure to the Plan's benefit.  *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir.1986) (citing *Massachusetts Mut. Life Ins. Co.*, 473 U.S. at 140).  Recovery in the first instance, therefore, is based on losses suffered by the Plan.  *See In re Shering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3d Cir. 2005) (reminding that § 502(a)(2) claims are brought on behalf of Plan to recover *Plan* losses); *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007) (citing *In re Shering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3d Cir. 2005)) (reasoning in § 502(a)(2) claim alleging fiduciary misconduct that "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA"); *In Re Enron*, 2006 WL 1662596, at *4 (same). Further, if the Plan were to recover pursuant to § 409, distribution of the recovery to Plan participants can be accomplished with a class-wide metric that compares: the actual value of a member's investment in the Fund to the value of the Fund had defendants not engaged in the Challenged Transactions.  Moreover, that certain class members will have cashed-out of the Fund prior to its closing on December 22, 2006 will alter potential recovery, but it neither alters the means of calculating damages nor does it drastically complicate the calculation process.  Instead, to calculate damages, one would compare the actual value of the assets on the day of transfer rather than on the date of the Fund's closing.[13]  Thus, because the court finds that a class-wide

---

[13] Defendants also argue that because Foamex International's stock dropped dramatically in Fall 2005, fiduciaries saved money for Plan participants by maintaining a higher target cash balance than in previous months.  While this may be correct, defendants argument again goes to the merits of plaintiff's claims, not to the merits of whether class certification is appropriate.

metric exists for determining the amount, if any, of loss suffered by the Plan, the court finds that typicality of claims is not destroyed by the potentially varying recovery among class members.[14]

Fifth, defendants argue that the ERISA's "safe harbor" defense, codified in § 404(c), precludes class certification because the defense is unique to Stanford and because the defense prompts individualized analyses with respect to all of the potential class members.  ERISA § 404(c) is an affirmative defense under which "[i]n the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account . . . no person who is otherwise a fiduciary shall be liable under this part [29 U.S.C §§ 1101-14] for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c)(1)(A).  Defendants essentially argue that regardless of any fiduciary breaches, the Plan cannot recover because those individuals who remained invested in the Fund voluntarily chose to do so.

Turning first to defendants' unique defense argument, "[a] proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to

---

[14] Defendants rely on several cases in which district courts denied class certification in cases where damages calculations were, to some extent, individualized.  The court does not find these cases persuasive because the courts in those cases denied certification on many grounds, not simply the possibility of varying damage awards.  *See Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 549 (D.N.J. 2001) (denying class certification in employment case in large part because of necessary and individualized liability determinations); *Continental Orthopedic Appliances, Inc. v. Health Ins. Plan of Greater New York*, 198 F.R.D. 41, 47-48 (E.D.N.Y. 2000) (denying class certification in antitrust case where alleged damages could have been suffered due to a variety of reasons prompting individualized causation, injury, and damages analyses).  Here, as I discuss throughout this memorandum, determinations of liability and causation will focus primarily on the actions of defendants.  Moreover, even though class members may ultimately recover varying amounts, their eligibility for recovery will be determined by objective, rather than subjective, facts, i.e., the fact of their investment in the Fund and the defendants' conduct.

become a major focus of the litigation."[15]  *Beck*, 457 F.3d at 301.  This rule avoids a situation

where the class representative needs to "devote time and effort to the defense at the expense of

issues that are common and controlling to the class."  *Id.* at 297.  The court finds that the safe

harbor defense would not be unique to Stanford.  It seems clear that the 404(c) "defense, if

applicable, would presumably work to defeat the claims of the class as a whole . . . ."  *Zhu v.

Schering Plough Corp.*, 03-1204, 2008 WL 4510039, *5 (D.N.J. Sept. 30, 2008); *see In re

Merck*, 2009 WL 331426, at *13 (finding same).[16]  Because the defense is not unique to Stanford,

defendants' unique defense argument fails.

The court also concludes that any § 404(c) analysis would not require the court to conduct

the type of individualized inquiries that tend to defeat class certification.  Defendants

acknowledge that the § 404(c) safe harbor defense may be available as to all members of the

putative class, but also argue that the § 404(c) inquiry is individual in nature.  "[C]ourts have

recognized [that] there is a problematic inconsistency in contending both that 1) Defendants have

a viable § 404(c) defense, which would defeat the claims of the entire class; and 2) application of

that defense is highly individualized."  *In re Merck*, 2009 WL 331426, at * 13 (citing *Zhu*, 2008

WL 4510039, at *5).  Nonetheless, because the § 404(c) defense appears to apply, if at all, on a

_____

[15] Because of the similarity between the typicality and adequacy requirements, the availability of unique defenses is relevant to both inquiries.  *See Beck*, 457 F.3d at 296.

[16]  As one district court persuasively explained:
Assuming Defendants raise . . .a [§ 404(c)] defense, the Court fails to see why the defense would be unique to Plaintiffs' claims and would not instead apply to the claims of all of the members of the proposed class, given that it is clearly Defendants' position in this case that they bear no responsibility for the Plan losses at issue here in light of the control Plan participants exercised over the investment of their accounts . . . .
*Lively v. Dynegy, Inc.*, 2007 WL 685861, *10 (S.D. Ill. Mar. 2, 2007).

class-wide basis,[17] adjudication of a § 404(c) defense in a class action setting seems quite

appropriate.  *See id.* at * 13 (finding "litigation of § 404(c) defense is well-suited to treatment on

a class-wide basis" and that "this defense neither destroys nor significantly impairs the finding of

typicality"); *Zhu*, 2008 WL 4510039, at *5 (finding that § 404(c) analysis "would not require

individualized consideration of the facts and circumstances applicable to each Plan participant");

*see also, e.g.*, *Brieger*, 245 F.R.D. at 352-53 (finding that plaintiff's ERISA action raised claims

against defendants on behalf of the Plan and holding that § 404(c) defense did not defeat

typicality); *Lively v. Dynegy, Inc.*, No. 05-00063, 2007 WL 685861, *10 (S.D. Ill. Mar. 2, 2007)

(holding same).

Overall, the court does not find any of defendants' arguments persuasive or controlling on

the issue of typicality.  Conversely, because the court does find that plaintiff's claims center on a

course of conduct that gives rise to alleged class-wide injuries, plaintiff has demonstrated that his

interests are sufficiently aligned with the absent class members to satisfy the typicality

requirement.

### 4.    Adequate Representation

Fourth, Stanford must show that "the representative parties will fairly and adequately

protect the interests of the class."  Fed. R. Civ. Pro. 23(a)(4).  "[T]he adequacy inquiry 'assures

that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the

class representatives are experienced and qualified to prosecute the claims on behalf of the entire

---

[17]If the § 404(c) defense does apply in such circumstances, and the court offers no opinion
as to whether it does, defendants would only need to establish that the class members indeed did
retain their investment in the Fund despite its risks.  Defendants certainly can make such a
showing with evidence that is common to the entire class.

class.'"  *Beck*, 457 F.3d at 296 (quoting *Baby Neal*, 43 F.3d at 55).  Whether a particular plaintiff

will provide "'[a]dequate representation depends on two factors: (a) the plaintiff's attorney must

be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the

plaintiff must not have interests antagonistic to those of the class.'" *In re Merck*, 2009 WL

331426, at * 9 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313

(3d Cir. 2007)).

Because Stanford is challenging the same course of conduct and seeking the same relief

as the rest of the absent class members, the court finds that Stanford's interests are sufficiently

aligned with the those of the class.  In addition, Stanford has proven himself both willing and

able to zealously prosecute these claims on behalf of the other class members.  In particular,

Stanford's deposition reveals that Stanford possesses a firm understanding of both the claims he

has raised and the factual predicate for those claims.  (Stanford Dep. 42:16-25, 43:15-24.)

Therefore, the court concludes that Stanford provides adequate representation.[18] Likewise, the

court finds, and the defendants do not contest, that plaintiff's attorneys are qualified,

experienced, and able to pursue the legal interests of the entire proposed class.  Plaintiff's

counsel have ample experience and have enjoyed considerable success in ERISA litigation, class

---

[18] Defendants argue that Stanford's interests conflict with other potential class members because Stanford is alleging that defendants inappropriately permitted some Plan participants to transfer their investments from the Fund after the adoption of Plan Amendment No. 4.  The court fails to see how this raises a conflict of interest sufficient to defeat class certification.  Stanford challenges the actions *of the Plan's fiduciaries*, not the Plan's participants.  If the Plan is to recover, recovery will be pursuant to § 409, which requires the *fiduciaries* to reimburse the Plan for any losses sustained as a result of the fiduciary breaches.  Thus, the court is not persuaded by defendants' conflict of interest argument.

action litigation, and, most importantly, ERISA class action litigation.[19]  Accordingly, the court

finds that plaintiff's counsel provides adequate representation for the class.  Because both

plaintiff and plaintiff's counsel provide adequate representation, the court concludes that Rule

23(a)(4) is satisfied.

###    C.    Rule 23(b) Requirements

Having met all of the requirements of Rule 23(a) with respect to each of his six claims,

plaintiff now must establish that at least one of the Rule 23(b) situations applies to this case.

Plaintiff seeks certification pursuant to 23(b)(1) and 23(b)(3), which permit class certification if:

> (1) prosecuting separate actions by or against individual class members would create
> a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class
>> members that would establish incompatible standards of conduct for the party
>> opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical
>> matter, would be dispositive of the interests of the other members not parties
>> to the individual adjudications or would substantially impair or impede their
>> ability to protect their interests;
> . . . . [or]
> (3) the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a class
> action is superior to other available methods for fairly and efficiently adjudicating the
> controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution
>> or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already
>> begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the
>> claims in the particular forum; and
>> (D) the likely difficulties in managing a class action

---

[19]*See* Spoonemore Decl. paragraphs 2-6; Thulin Decl. paragraphs 2-3; and Cprek Decl.
paragraphs 2-7.

Certification pursuant to Rule 23(b)(1) creates a mandatory class, while certification pursuant to

Rule 23(b)(3) creates the so-called "opt-out" class, permitting would-be class members to opt-out

of the class in favor of pursuing individual actions.  Significantly, as many courts and

commentators have reasoned, where certification of a class is proper pursuant to Rules 23(b)(1)

and 23(b)(3), the court should certify the class pursuant to Rule 23(b)(1).[20]  Thus, the court will

begin with Rule 23(b)(1), for if certification is proper under 23(b)(1), the court need not address

Rule 23(b)(3).

      Rule 23(b)(1) defines two related types of class actions, both designed to prevent

prejudice to the parties arising from multiple potential suits involving the same subject matter.

Rule 23(b)(1)(A) is designed to prevent prejudice to the party opposing the class, permitting a

class action to be maintained if "prosecuting separate actions by or against individual class

members would create a risk of . . . inconsistent or varying adjudications with respect to

individual class members that would establish incompatible standards of conduct for the party

opposing the class . . . ."  Rule 23(b)(1)(B) is designed to prevent prejudice to potential members

of the class, permitting a class action to be maintained if "prosecuting separate actions by or

---

[20] *See, e.g.*, *First Fed. of Mich. v. Barrow*, 878 F.2d 912, 919 (6th Cir. 1989) (citing *Robertson v. Nat'l Basketball Assoc.*, 556 F.2d 682, 685 (2d Cir. 1977)) (reasoning that where certification is appropriate pursuant to Rule 23(b)(1) and (b)(3), case should be treated as a 23(b)(1); *Mehling*, 246 F.R.D. at 475 n.6 ("[A] class that can be certified pursuant to Rules 23(b)(1) and (b)(2) should not be treated as a 23(b)(3) class action."); 5 Moore's Federal Practice § 23.40[3], p. 23-155 (3d ed. 2009) ("If a case qualifies as a class action under Rule 23(b)(3) and also under either Rule 23(b)(1) or (b)(2), courts most often will certify the class action pursuant to Rule 23(b)(1) or (b)(2)."); *cf. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (reminding that where certification is appropriate pursuant to Rule 23(b)(2) and (b)(3), case should be treated as a 23(b)(2) action); *Wetzel v. Liberty Mut. Co.*, 508 F.2d 239, 253 (3d Cir. 1975) (reasoning "that an action maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3) which serve no useful purpose under (b)(2)").

against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  The court begins its analysis of Rule 23(b)(1) with a review of the recent Supreme Court decision in *LaRue*.

In *LaRue*, the petitioner was a participant in a defined contribution plan, which permitted participants to "direct the investment of their contributions in accordance with specified procedures and requirements."  128 S. Ct. at 1022.  When the plan's fiduciary failed to follow petitioner's directions regarding certain changes to his individual plan account, petitioner brought a § 502(a) claim against the plan fiduciary.  *Id.* at 1022-23.  Significantly, the alleged injuries suffered by petitioner's account were not common to the entire plan; rather, the harm caused by the fiduciaries alleged breaches impacted only petitioner's individual plan account.  *Id.* at 1023. The Court reaffirmed that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries," but recognized that § 502(a)(2) "does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  *Id.* at 1026. Importantly, the *LaRue* Court did not hold that participants in a defined contribution plan could no longer bring a § 502(a)(2) claim on behalf of the entire plan.  Rather, *LaRue* merely recognized an additional cause of action available under § 502(a)(2).  *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008).  Thus, *LaRue* has no impact on the Stanford's ability to assert a plan-wide claim under § 502(a)(2).

*LaRue* does, however, have an impact on both the Rule 23(b)(1)(A) and (b)(1)(B) analyses.  With respect to Rule 23(b)(1)(A), defendants argue that Rule 23(b)(1)(A) is

inapplicable because plaintiff's only seek monetary damages.  Stanford counters that numerous

courts have certified class actions pursuant to Rule 23(b)(1)(A) where a plaintiff seeks primarily

money damages.  Each argument misses the mark.  The issue is not whether plaintiff seeks

primarily monetary damages; rather, the focus of a Rule 23(b)(1)(A) analysis is on whether

separate actions could lead to adjudications that establish "incompatible standards of conduct for

the party opposing the class."  Fed. R. Civ. Pro. 23(b)(1)(A); *see In re Merck*, 2009 WL 331426,

at *11.  Here, because the Fund has closed, the court is not concerned that separate adjudications

would create such unworkable standards concerning investment in the Fund.  However, the court

is concerned with the effect of inconsistent orders[21] with respect to individual Plan accounts.

When raising a plan-wide claim, a plaintiff is pursing a claim on behalf of the *entire* plan, which

necessarily includes discrete accounts within the plan.  Accordingly, if a court entertaining an

individual account claim were to reach a different conclusion from a court entertaining a plan-

wide claim, the fiduciaries would be left with incompatible orders concerning the same account.

For example, if Stanford were successful in his plan-wide claim, but "Participant A" were

unsuccessful when raising the same claims in an individual account action, one court order

would require defendants to reimburse Participant A while another court order would foreclose

such recovery.  Such competing orders lead to incompatible standards of conduct for the

defendants.  Thus, because plan-wide claims are still available under *LaRue*, the risk of

inconsistent orders arising from parallel plan-wide and individual account claims satisfies Rule

23(b)(1)(A).

---

[21] Importantly, plaintiff seeks injunctive relief in the form of an "[o]rder [that] defendants
. . . make good the losses . . . sustained by the Plan and its participants . . . due to defendants'
breaches of their fiduciary duties[.]"  (3d Am. Compl. p. 20.)

I likewise find that while *LaRue* is relevant to the Rule 23(b)(1)(B) discussion, it does not preclude class certification pursuant to Rule 23(b)(1)(B) in the circumstances presented by this case. Generally speaking, an action "charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust'" is a "[c]lassic example[]" of the type of case appropriate for certification under Rule 23(b)(1)(B). *Ortiz v. Firehoard Corp.*, 527 U.S. 815, 834 (1999) (quoting Fed. R. Civ. Pro. 23 advisory committee notes). Not surprisingly, therefore, because of the unique and representative nature of an ERISA § 502(a)(2) suit, numerous courts have held class certification proper pursuant to Rule 23(b)(1)(B). *See, e.g.*, *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 352 (N.D. Ill. 2008) (certifying class in § 502(a)(2) case because adjudication as to representative's suit would be dispositive as to the other plan participants and because remedy would involve recovery and distribution of Plan assets, thereby undermining other participant's ability to protect their interests); *Brieger*, 245 F.R.D. at 357 (same); *In re Enron*, 2006 WL 1662596, at *14 (referring to § 502(a)(2) suit as "paradigmatic example" of a 23(b)(1)(B) class); *In re Ikon*, 191 F.R.D. at 466 (holding that "given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief" and that "[t]here is also risk of inconsistent dispositions that would prejudice the defendants").

Defendants assert that because plan participants can now pursue individual account actions against plan fiduciaries, a participant's ability to protect his or her interests would not be affected by a separate plan-wide claim. Though this argument has some appeal and some support, *see In re First Am. Corp. ERISA Litig.*, 2009 WL 1851308 (C.D. Cal. June 10, 2009),

the court does not find it persuasive.  Here, because Stanford challenges behavior of defendants that allegedly injured the entire Fund, Stanford's claims would be identical to any individual account claim that another putative class member may raise.  Indeed, as discussed above, a participant's individual account is still a part of the Plan, and, therefore, an adjudication as to the Plan will likewise impact a participant's individual accounts.  Thus, the availability of an individual account claim under § 502(a)(2) does not alleviate the concerns cited by the numerous courts that have certified ERISA class actions pursuant to Rule 23(b)(1)(B) in situations where claims on behalf of the Plan are identical to those on behalf of an individual account.  Therefore, I find that certification is proper pursuant to Rule 23(b)(1)(B).

As I discussed above, where certification is proper under Rule 23(b)(1) and (b)(3), courts should, and generally do, certify the class pursuant to Rule 23(b)(1).  Thus, even assuming that certification is proper under Rule 23(b)(3), the court will not consider certification under that provision because certification is proper pursuant to Rule 23(b)(1).  Accordingly, the court need not discuss in further detail Rule 23(b)(3).[22]

---

[22] The court notes, however, that certification of this action pursuant to Rule 23(b)(3) appears proper.  Certification pursuant to Rule 23(b)(3) is proper "when the court 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *In re Hydrogen Peroxide*, 552 F.3d at 310 (quoting Fed. R. Civ. Pro. 23(b)(3)). The requirements of Rule 23(b)(3) are generally referred to as "predominance" and "superiority."  Here, each requirement is easily met.

First, predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," a standard that requires more than the Rule 23(a) commonality standard.  *Id.* at 311.  As the court notes numerous times during this memorandum, because the focus of fiduciary breach claims is on the actions of the defendants, not plaintiff, issues common to the class clearly predominate.

Second, a superiority determination "asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *In re Community Bank*, 418 F.3d at 309 (internal quotation omitted).  In a case

**D.      Class Definition**

"An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel . . . ."  Fed. R. Civ. Pro. 23(c)(1)(B); *see Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 184 (3d Cir. 2006).  As discussed above, the court will certify this class as to all of the claims raised in the six counts of plaintiff's complaint.  Moreover, the court will appoint plaintiff's current counsel as counsel for the class. The last issue, therefore, is defining the class.  Defendants challenge plaintiff's proposed class definition, asserting they cannot discern which persons are eligible for membership in the class because plaintiff has altered the definition of the class on numerous occasions.  "At a minimum, the plaintiff must 'define the class in a way that enables the court to determine whether a particular individual is a class member.'"  *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 497 (E.D. Pa. 2009) (quoting *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995).  Although plaintiff's class definition has evolved since plaintiff filed this action, the current definition of the class is clear:

> All individuals invested in the Foamex Stock Fund on September 22, 2005, except individuals who were members of the Foamex Benefits Committee at any time between . . . September 22, 2005 and December 31, 2006, the members of their immediate families, and their heirs, successors or assigns.

Plan participants must have been invested in the Fund at the time of the Challenged Transactions to be part of the class.  The first such transaction occurred on September 22, 2005, which is the

---

like this one, where the plaintiff's claims attack the same course of defendants' conduct, proceeding as a class action is far superior to allowing piecemeal litigation of the exact same claims in countless lawsuits potentially occurring throughout the country.

Having found that both of the Rule 23(b)(3) requirements are met, if this case were not certifiable pursuant to Rule 23(b)(1), the court would certify the case pursuant to Rule 23(b)(3).

date specified in the class definition.  Because no new participants were allowed to invest in the

Fund thereafter, there are no additional members of the class.  Because the fact of membership is

the only predicate fact necessary for class membership, the court will easily be able to discern

who is a class member simply by analyzing a Fund report that details which Plan participants

were invested in the Fund on the date in question.  Thus, I find plaintiff's class definition

satisfactory.

## IV.   Conclusion

Having reviewed the record, the court finds that plaintiff has established each of the Rule

23(a) requirements for class certification.  Likewise, the court finds class certification proper

pursuant to Rule 23(b)(1).  Thus, the court will grant plaintiff's motion for class certification as

to all of the claims in plaintiff's complaint.  An appropriate certification order follows.