## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**WILLIAM STANFORD, JR., Individually and on Behalf of All Other Similarly Situated Persons and on Behalf of the Foamex L.P. Savings Plan,**

      **Plaintiff,**

**v.**

**FOAMEX L.P., FIDELITY MANAGEMENT TRUST CO., K. DOUGLAS RALPH, STEPHEN DRAP, GREGORY J. CHRISTIAN, and GEORGE L. KARPINSKI,**

      **Defendants.**

**No.  07-CV-04225**

**William H. Yohn, Jr.**

### PLAINTIFF STANFORD'S MEMORANDUM IN SUPPORT OF
### MOTION FOR PARTIAL SUMMARY JUDGMENT

#### I.  INTRODUCTION

Defendants, in two counterclaims, ask the Court to retroactively rewrite the unambiguous terms of the ERISA plan documents to the detriment of class members. *See Amended Answer to Third Amended Complaint, Counterclaim and Cross-Claim on Behalf of the Individual Defendants ("Foamex Amended Answer")* (Dkt. No. 110), pp. 17-21; *Answer & Defenses of Defendant Fidelity Management Trust Company to the Third Amended Complaint and Counterclaim Seeking Reformation of Plan Documents* (Dkt. No. 94), pp. 14-16.

The basis for the rewrite is the ancient contractual doctrine of "scrivener's error."  The scrivener's error doctrine is derived from the equitable contract law concept of mutual mistake.  It allows a court to modify language in an agreement to conform to the actual intent of all parties at the time of contract formation.  27 Samuel Williston & Richard Lord, A TREATISE ON THE LAW OF CONTRACTS § 70.93 (4th Ed. 2003) (hereafter

("Williston") ("[A] scrivener's error, like a mutual mistake, occurs when the intention of the parties is identical at the time of the transaction but the written agreement does not express that intention because of that error. . . .").

In the context of ERISA, however, the scrivener's error doctrine is sharply curtailed by two conceptual barriers. *First*, many ERISA plans, like the plan at issue here, are created unilaterally by an employer. Where a plan is not the result collective bargaining, any mistake in drafting is unilateral, not mutual. In such a situation, there can be no mutual error because there is no evidence of the employees' intent at the time of contract formation. Williston § 70:9 ("[A] clear mistake by one party, coupled with ignorance by the other party, is not a mutual mistake and will not be corrected.").

*Second*, ERISA, by statutory design, requires fidelity to the written terms of the plan. *See, e.g.,* 29 U.S.C. § 1102(a)(1); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S. Ct. 1223 (1995) (A "written plan is to be required in order that every employee may, on examine the plan documents, determine exactly what his rights and obligations are under the plan."); *Kennedy v. Plan Admin. For DuPont*, __ U.S. __, 129 S. Ct. 865, 875 (2009) ("The Estate's claim therefore stands or falls by 'the terms of the plan,' § 1132(a)(1)(B), a straightforward rule of hewing to the directives of the plan documents. . . . ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule."). These two foundational principles of ERISA law prevent the application of the scrivener's error doctrine here.

At issue is Plan Amendment No. 4 to the Foamex L.P. Savings Plan ("Plan"). Pursuant to this amendment, participants in the Foamex Stock Fund ("Stock Fund") were prohibited from putting new money into, *or taking any money out of*, the Stock Fund as of July 19, 2005:

Effective July 20, 2005, Section 4:31. is hereby amended and restated in its entirety to read as follows:

> [A] member may no longer direct new investments into *or transfer existing investments into or out of* the Foamex Stock Fund.  All investments in the Foamex Stock Fund as of July 19, 2005 shall remain in the Foamex Stock Fund until moved into an alternative investment fund or distributed according to the terms of the Plan.

Declaration of Richard E. Spoonemore, *Exh. A,* p. 3 at ¶ 10 (emphasis added).  This amendment was entirely consistent with the separate written resolution adopted by the Benefits Committee:

> RESOLVED, that the Company hereby amends the Foamex L.P. Savings Plan to . . . (iv) prohibit direction of investments into *or out of* the Foamex Stock Fund.

Spoonemore Decl., *Exh. B* (emphasis added).

The Defendants, in two independent but functionally identical counterclaims, assert that Plan Amendment No. 4 (and, presumably, the resolution as well) contained a "scrivener's error" and should be retroactively "reformed."  Stanford moves for an order dismissing both counterclaims with prejudice because, as a matter of law, Plan Amendment No. 4 is part of a unilateral ERISA Plan and cannot be retroactively "reformed."

The Fourth Circuit recently decided a nearly identical case.  *See Cross v. Bragg*, 2009 WL 2196887 (4th Cir. 2009).   The *Cross* defendants, a plan and its administrator, alleged that the plan document contained a "scrivener's error."  *Id.,* 2009 WL 2196887 at *6.  The defendants, like Foamex and Fidelity here, sought equitable reformation of the plan language.  The Fourth Circuit held that equitable reformation was unavailable.  *Id.*  Following the same test that the Third Circuit articulated in *International Union of Electronic, Elec., Salaried, Mach. and Furniture Workers, AFL-CIO v. Murata Erie North America, Inc.*, 980 F.2d 889 (3d Cir. 1992),  (hereinafter "*Murata*"), the Fourth Circuit held that equitable reformation is unavailable where (1) the plain language of the allegedly erroneous plan document was clear and unambiguous; (2) the

drafting error was the result of a unilateral mistake; and (3) defendants failed to prove the true "intent" of all plan participants related to the erroneous plan language. *Cross,* 2009 WL 2196887 at *6; *accord, Murata,* 980 F.2d at 907-08.

Equitable reformation is similarly unavailable here.  Amendment No. 4 is clear and unambiguous.  The alleged drafting error – if it was an error –  was a unilateral mistake by the Foamex Benefits Committee.[1]  Defendants cannot prove that all participants intended to disregard the plain language of Amendment No. 4.

Put simply, "[a]n extension of the scrivener's error doctrine to allow a plan drafter to reform an unambiguous ERISA plan because of its own unilateral mistake is not appropriate."  *Humphrey v. United Way of Texas Gulf Coast,* 590 F. Supp.2d 837, 847 (S.D. Tex. 2008).  As a matter of law, Plan Amendment No. 4 cannot be retroactively reformed and the counterclaims should be dismissed with prejudice.

## II.  FACTS

**A.   Under The Terms of the Plan, only Foamex or the Benefits Committee could Amend its Terms.**

Foamex established and sponsored the Plan in 2001.  It is an employee pension benefit plan within the meaning of section 3(2)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(2)(A).  The Plan permits only Foamex L.P. ("Foamex"), as the Plan Sponsor, or the Foamex L.P. Benefits Committee ("Benefits Committee"), as the Plan Administrator, to amend the Plan.  Spoonemore Decl., *Exh. B.* Neither Foamex nor the Benefits Committee need to negotiate with plan participants, a representative union or any other party to amend the Plan.  *Id.*

---

[1]  For purposes of this motion only, plaintiff and the class assumes that the language preventing participants from withdrawing existing investments "out of" the Fund was a drafting error and that the Benefits Committee only intended to prohibit new investments into the Fund.

B.   **The Benefits Committee Unilaterally Amended the Plan with Amendment No. 4.**

In July of 2005, the Benefits Committee met and approved an amendment to the Plan document. *See Foamex Amended Answer* (Dkt. No. 110), p. 18-19. It later executed a resolution specifically prohibiting investments "into or out of" the Foamex Stock Fund:

> RESOLVED, that the Company hereby amends the Foamex L.P. Savings Plan to . . . (iv) prohibit direction of investments into **or out of** the Foamex Stock Fund.

Spoonemore Decl., *Exh. B* (emphasis added).

The Benefits Committee formally adopted the amendment as Amendment No. 4 on September 8, 2005. Amendment No. 4, like the written resolution, unambiguously prohibits all transfers "out of" the Fund:

> Effective July 20, 2005, Section 4:31. is hereby amended and restated in its entirety to read as follows:
>
> [A] member may no longer direct new investments into **or transfer existing investments into or out of** the Foamex Stock Fund. All investments in the Foamex Stock Fund as of July 19, 2005 shall remain in the Foamex Stock Fund until moved into an alternative investment fund or distributed according to the terms of the Plan.

Spoonemore Decl., *Exh. A* (Amendment No. 4) at ¶10 (emphasis added).

### III.  LAW AND ARGUMENT

A.   **An ERISA Plan Document Can Be Equitably Reformed Only If (1) it is Ambiguous; (2) it is the Product of Mutual, Not Unilateral, Mistake; and (3) the Mistake Does Not Reflect the Intent of *Both* Parties.**

The Third Circuit explained the contours of the rarely applied doctrine of "scrivener's error" under ERISA in *Murata.* There, the defendants, the plan and its administrator, sought to equitably reform plan documents negotiated by a union and employer as a result of a collective bargaining agreement. The defendants argued that

agreed-upon plan documents had mistakenly omitted a provision that permitted the reversion of excess plan funds to the employer.  *See Murata*, 980 F.2d at 895.

The Third Circuit held that the defendants could counterclaim for equitable reformation under the doctrine of "scrivener's error."  *Id.* at 907.  To succeed on such a claim, however, the defendants would have to show, by clear and convincing evidence, that (1) a mistake occurred, (2) the mistake was mutual, and (3) that the mistake did not reflect the true intent of both parties to the contract.  *Id.*

In *Murata*, defendants presented evidence that the omission of plan language regarding the reversion of plan funds was a mistake, and that the omission was an error that occurred during the collective bargaining process, such that the mistake was mutual.  Since both parties claimed that they were entitled to the excess funds, the *Murata* defendants were able to show that no party reasonably relied upon the plan documents, which omitted any language about the ownership of excess Plan funds.

In contrast, when the alleged "error" at issue is ***unambiguous*** language in the actual plan document that was ***unilaterally*** drafted (*i.e., **not** the product of explicit bargaining), and there is no clear and convincing evidence of the plan participants' intent, the scrivener's error doctrine does not apply.  *See e.g., Cross*, 2009 WL 2196887,*7-*8 (reformation "requires that the party seeking reformation present clear and convincing evidence showing that 'the mistake [was] mutual, or if unilateral, it [was] accompanied by fraud on the part of the other contracting party.'"); *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 420-21 (7th Cir. 1999); *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1445 (9th Cir. 1995) (declining to apply doctrine because "consideration of parol evidence as to the intent of the [plan administrator] would be used to alter the unambiguous written terms of a formal plan document").  This Court should similarly reject the application of the scrivener's error doctrine here.

**B.      Amendment No. 4 is Unambiguous.**

"ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." *In re Lucent Death Benefits ERISA Litigation,* 541 F.3d 250, 254 (3d Cir. 2008).  The plan documents are the authoritative source of all the plan terms.  *Hooven v. Exxon Mobil Corp.,* 465 F.3d 566, 573 (3rd Cir. 2006).  "When a plan is clear and unambiguous, a court must determine its meaning as a matter of law without looking to extrinsic evidence."  *In re Lucent Death Benefits ERISA Litigation,* 541 F.3d at 255.

A plan document is "ambiguous" when the plain language of the document is "subject to reasonable alternative interpretations."  *Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227, 1232 (3d Cir. 1991).  Where "there is no ambiguity present in the plan instruments, the court's inquiry should go no further." *Marsh v. Crucible Inc. 1975 Salaried Retirement Plan,* 783 F. Supp. 938, 943 (W.D. Pa. 1992).  Plaintiffs need not show any actual reliance on the plan document.  *Burstein v. Retirement Account Plan For Employees of Allegheny Health Educ. and Research Foundation*  334 F.3d 365, 381 (3d Cir. 2003).  The only inquiry is whether the plain meaning of the plan document can be determined.

A "written [benefit] plan is to be required in order that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan."  *Curtis-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S. Ct. 1223 (1995).  Under ERISA, the plan documents must be interpreted to mean what they say.  The documents cannot be reformed simply because the drafter meant to write something else or ignored the actual language of the Plan documents when it implemented the Plan.  *See Cross,* 2009 WL 2196887 at *7 ("when the terms of an ERISA plan are clear and unambiguous, a federal court is obliged to apply it as written").

Amendment No. 4 is not ambiguous.  Its language is clear and capable of only one reasonable interpretation:

> [A] member may no longer direct new investments into or transfer existing investments into or out of the Foamex Stock Fund.

Spoonemore Decl., *Exh. B* at ¶10.  Defendants admit as much.  *See Foamex Amended Answer* (Dkt. No. 110), p. 20 at ¶ 13 (conceding that amendment said "that not only new investments and transfers into the Stock Fund were precluded, but also that transfers out of the Fund were precluded.").  There is no possible alternative interpretation of the words "out of" in the Amendment other than to freeze participants' exit from the Fund.  Nor do the words "out of" render the Amendment "incomprehensible."  *See e.g., Rea v. The Hershey Co. 2005 Enhanced Mutt. Sep. Plan,* 2008 WL 2782663, *8-*9 (M.D. Pa. 2008) (use of the word "affect" instead of "effect" rendered the relevant Plan language unintelligible).  The clear language in Amendment No. 4 is reiterated in the Benefit Committee's resolution, which is likewise unambiguous:   the purpose of the amendment is to "prohibit direction of investments into or out of the Foamex Stock Fund."  Spoonemore Decl., *Exh. B.*

The bedrock principle of ERISA is that the terms of the plan document govern the rights and benefits provided.  *Curtiss-Wright Corp.*, 514 U.S. at 83; *Kennedy*, 129 S. Ct. at 875.  In case after case, this is true, even when the clear terms of the plan are found to divest plan participants of asserted rights or benefits.  *See e.g., In re Lucent Death Benefits ERISA Litigation,* 541 F.3d at 256-57; *Hooven,* 465 F.3d 574-75; *Marsh,* 783 F. Supp. at 943.  It should be equally true here, where the plain language of the plan documents may result in a benefit to plan participants.

### C.   The Alleged Error was a Unilateral, Not Mutual, Mistake.

The Plan at issue is a unilateral contract. *See e.g., Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227, 1232 (3d Cir. 1991).  The

Benefits Committee adopted Amendment No. 4. *See Foamex Amended Answer* (Dkt. No. 110), p. 19 at ¶ 12. Neither Plaintiff nor any other class member had any role in the drafting of the Amendment. *Id*. If the Amendment No. 4 is a mistake, then it is a unilateral mistake made entirely by the Benefits Committee.

A unilateral mistake by a plan drafter may not be equitably reformed. *Humphrey*, 590 F. Supp.2d at 847-48. Reforming a drafter's unilateral mistake violates ERISA's core principles. Specifically, such reformation violates ERISA's strict requirements for maintaining and administering the written plan documents. ERISA requires that all employee benefit plans be maintained pursuant to a written instrument. 29 U.S.C. § 1102(a)(1). It is that written instrument that is the authoritative source of all plan terms. *Hooven,* 465 F.3d at 573. Indeed, ERISA plans must be administered in strict compliance with the Plan documents. 29 U.S.C. § 1104.

Thus, the Amendment must be read as it is written. If the plain language was in error, as defendants claim, then defendants, not the plan participants, bear responsibility for this error.

### D. Defendants Have No Evidence of the Plan Participants' "Intent" at the Time of Contract Formation.

There is no evidence of plan participants' intent when Amendment No. 4 was adopted. Such evidence simply does not exist. Amendment No. 4 was not the product of negotiations between the Benefits Committee and Plan participants. It is difficult, if not impossible, to discern the true "intention" of the non-drafting party to a unilateral contract. *See Taylor,* 933 F.2d at 1232. That is why the only cases in which equitable reformation to a unilateral contract is permitted involve either cases in which the disputed language was omitted, such as in *Murata,* or where the Plan language is completely unintelligible, such as in *Rea.* Here, it is impossible for defendants to prove that no Plan participant relied upon Amendment No. 4 and that all intended to disregard it.

At best, Defendants can show that (1) plan participants were sent letters indicating that they could transfer out of the Foamex Stock Fund; (2) all participants who tried to leave the Fund were allowed to do so; and (3) Plaintiff Stanford testified that he was unaware of and did not rely on Amendment No. 4's language, and he is not aware of any plan participant who relied on the language. *See Foamex Amended Answer* (Dkt. No. 108), pp. 17-21. All of these facts, even taken in the light most favorable to defendants, only show that Plaintiff Stanford and perhaps others were ***ignorant*** of the language of Amendment No. 4. As a matter of law, this evidence is inadequate proof that all plan participants ***knew*** of Amendment No. 4, ***knew*** it was a mistake and ***intended*** to disregard it.

The defendants in *Cross* tried to obtain equitable reformation using similar evidence, and failed. *Cross*, 2009 WL 2196887 at *7-*8. Just like here, their sole evidence of plan participants' "intent" was testimony that the named plaintiffs had not relied upon the allegedly-erroneous plan documents, and were not aware of any plan participants who had. *Id.* at *8.

The Fourth Circuit rejected this evidence. A ***lack of intent*** is wholly different from proof of ***actual intent***. *Id.* "A clear mistake by one party, coupled by ignorance by the other party, is not a mutual mistake and will not be corrected." *Id., quoting* Williston §70.9. Without evidence of the plaintiffs' intent, or any evidence of negotiations with respect to the disputed plan language, the defendants' claim for equitable reformation was dismissed. *Id.* This Court should do so here.

## IV.  CONCLUSION

WHEREFORE, Plaintiff and the class he represents pray that the Court enter Judgment in their favor dismissing the counterclaims of all defendants with prejudice and awarding them their costs and attorneys fees and other such relief as the Court deems just and equitable.

DATED:  February 3, 2010.

SIRIANNI YOUTZ
MEIER & SPOONEMORE

BY:   _/s/ Richard E. Spoonemore_
Richard E. Spoonemore  (WSBA #21833)
*Admitted Pro Hac Vice*
719 Second Avenue, Suite 1100
Seattle, WA  98104
Tel. (206) 223-0303; Fax (206) 223-0246
rspoonemore@sylaw.com

EKMAN, BOHRER & THULIN, P.S.
Charles H. Thulin  (WSBA #9039)
*Admitted Pro Hac Vice*
220 W. Mercer Street, Suite 400
Seattle, WA  98119
Tel. (206) 282-8221; Fax (206) 285-4587
c.thulin@ekmanbohrer.com

JENNINGS SIGMOND, P.C.
Kent Cprek (PA ID No. 40806)
510 Walnut Street, Suite 1600
Philadelphia, PA  19106-3683
Tel. (215) 351-0615; Fax (215) 922-3524
usdc-edpa-erisa@jslex.com

Counsel for Plaintiff William Stanford, Jr.

### CERTIFICATE OF SERVICE

I certify, under penalty of perjury, that on February 3, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that a true and correct copy of the foregoing was served upon the following by ECF:

- **ROSEMARY J. BRUNO**
  rosemary.bruno@bipc.com,linda.prifold@bipc.com

- **BRIAN CASAL**
  brian.casal@bipc.com,marjorie.harms@bipc.com

- **AMY COVERT**
  acovert@proskauer.com

- **KENT CPREK**
  usdc-edpa-erisa@jslex.com

- **JOHN A. GOODMAN**
  john.goodman@bipc.com,elizabeth.lychenheim@bipc.com,betty.reznicek@bipc.com

- **BARBARA W. MATHER**
  matherb@pepperlaw.com

- **SARA BETH RICHMAN**
  richmans@pepperlaw.com,pearsons@pepperlaw.com

- **CHARLES F. SEEMANN , III**
  cseemann@proskauer.com,jrichie@proskauer.com,kdipaola@proskauer.com

- **HOWARD SHAPIRO**
  hshapiro@proskauer.com

- **MICHAEL D. SPENCER**
  mspencer@proskauer.com,jrichie@proskauer.com,tneville@proskauer.com

- **RICHARD E. SPOONEMORE**
  rspoonemore@sylaw.com,matt@sylaw.com,rspoonemore@hotmail.com,
  theresa@sylaw.com

- **CHARLES H. THULIN**
  c.thulin@ekmanbohrer.com,c.jones@ekmanbohrer.com

- **MARSHALL WALTHEW**
  walthewm@pepperlaw.com,mocharnd@pepperlaw.com

THIS DOCUMENT HAS BEEN FILED ELECTRONICALLY AND IS AVAILABLE FOR VIEWING AND DOWNLOADING FROM THE ECF SYSTEM.

DATED:  February 3, 2010.

BY:   */s/ Richard E. Spoonemore*
Richard E. Spoonemore  (WSBA #21833)
*Admitted Pro Hac Vice*