IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM STANFORD, JR., et. al., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | No. 07-cv-04225 |
| v. | : | |
| | : | Hon. William H. Yohn, Jr. |
| FOAMEX L.P., et. al., | : | |
| | : | *Filed Electronically* |
| Defendants. | : | |

**BRIEF OF INDIVIDUAL DEFENDANTS IN SUPPORT OF THEIR PARTIAL SUMMARY JUDGMENT MOTION AND IN OPPOSITION TO PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION**

Rosemary J. Bruno (admitted *pro hac vice*)
BUCHANAN INGERSOLL & ROONEY PC
550 Broad Street, Suite 810
Newark, New Jersey  07201
(973) 278-9800

John A. Goodman (Bar # 80785)
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, N.W., Suite 300
Washington, DC 20006
(202) 452-7900

Brian A. Casal (Pa. ID No. 89983)
BUCHANAN INGERSOLL & ROONEY PC
1835 Market Street, 14th Floor
Philadelphia, Pennsylvania  19103-2985
(215) 665-8700

Attorneys for Defendants
Douglas Ralph, Stephen Drap,
Gregory J. Christian, and
George L. Karpinski

Defendants Douglas Ralph, Stephen Drap, Gregory J. Christian, and George L. Karpinski (hereinafter collectively referred to as the "Individual Defendants"),[1] by and through counsel, file this brief in support of their Motion for Partial Summary Judgment ("Individual Defendants' Motion") and in opposition to Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion").

## I.  INTRODUCTION

Plaintiff files his Motion in an attempt to gain from a scrivener error despite admitting that he never knew of it, knew it was false and was not harmed by it. Such a result would be inequitable and could discourage employers from offering benefit plans to their employees for fear that opportunistic plaintiffs would review plan documents -- not to know their rights and obligations -- but to look for scrivener errors so as to file lawsuits. Plaintiff's reliance on the scrivener's error in question is disingenuous, as is Plaintiff's Motion.[2]

The disingenuous nature of Plaintiff's Motion is exemplified by its failure to discuss the very case this Court relied upon when addressing the scrivener's error issue in the Court's September 24, 2009 Memorandum (Doc. No. 99)("Court's Memo") regarding class certification. Specifically, this Court stated the following regarding the Individual Defendants' request to reform Amendment No. 4:

> As defendants point out, **the court can reform the Plan to reflect the intended language** of Amendment No. 4 only **if defendants establish that "no plan participants were likely to have relied upon the scrivener's error in question ...."** *See Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1105 n. 2 (3d Cir.1996) (discussing the Third Circuit's holding in *Int'l Union v. Murata Erie North America, Inc.*, 980 F.2d 889 (3d Cir.1992)).

Doc. No. 99 at 9, n.10 (emphasis added).

---

[1] As per this Court's April 15, 2009 Order, this case is stayed against Defendant Foamex L.P. and is proceeding only "against the remaining non-bankrupt defendants."  (Doc. 81)

[2] Further references to "Plaintiff's Motion" refer to Plaintiff's supporting memorandum. (Doc. No. 115).

Despite the Court's specific mention of and reliance on *McCormick*, Plaintiff not only ignores it, but also argues directly contrary to the Third Circuit's aforementioned discussion of the scrivener's error doctrine. Instead, Plaintiff relies heavily, if not completely, on a non-controlling, unpublished Fourth Circuit decision, *Cross v. Bragg*, 2009 WL 2196887 (4th Cir. 2009), that is easily distinguishable both on its facts and due to its minimal equitable concerns. Plaintiff fails to cite *McCormick* because *McCormick* mandates reformation here.

Not surprisingly, Plaintiff also completely ignores *Young v. Verizon Bell Atlantic Cash Balance Plan*, 2009 WL 3677350 (N.D. Ill., Nov. 2, 2009), which is a case decided after the Court issued the Court's Memo. Plaintiff fails to cite *Young* even though the *Young* Court discusses in great detail the Third Circuit's precedential holding in *Murata*. Plaintiff ignores *Young* because its well thought and detailed analysis of the "Factors to Consider in ERISA Plan Formation" also establishes that reformation is proper here. *Young*, 2009 WL 3677350, *39-46.

Here, the record evidence establishes that the Committee met and discussed amending the Plan in an attempt to help Plan participants. Specifically, the Committee believed investments in the Fund were even more risky than normal. To minimize this risk, the Committee took steps both to preclude new investments into the Fund and to warn Plan participants that leaving their investments in the Fund "may not be appropriate" at that time. In so doing, the Committee sought advice from legal counsel, coordinated their efforts with Fidelity, and properly communicated to Plan participants exactly why they were amending the Plan. Then, some seven (7) weeks later, while dealing with a difficult financial crisis at the Company, their counsel's scrivener's error was inadvertently adopted into Amendment No. 4. Importantly, the scrivener's error was never relied on by Plaintiff, nor any other Plan participant. In fact, it was never even seen by Plaintiff, nor any other Plan participant. Even if a Plan participant saw the scrivener's

error, they could not have possibly relied on it. After all, it was directly contrary as to why they were told the Committee was amending the Plan. Indeed, Plan participants were specifically informed that the Plan was being amended "to [preclude] new participant investments" into the Fund because the Fund "may not be an appropriate investment for the 401(k) Plan." It is nonsensical to argue that the Committee would have then intentionally adopted an amendment that forces Plan participants to keep their money in the very Fund to which the Committee expressed concern. Clearly, the scrivener's error contained in Amendment No. 4 does not reflect the intent of the parties. Hence, because "no plan participants were likely to have relied upon the scrivener's error in question," controlling Third Circuit precedent mandates that the Court reform Amendment No. 4 to reflect the true intent of the parties.

## II.     STATEMENT OF MATERIAL UNDISPUTED FACTS

The Individual Defendants incorporate herein their Uncontested Statement of Material Facts filed separately and referred to hereafter as "SMF." All facts referenced herein are more specifically set forth in Individual Defendants' SMF with accompanying record cites.

## III.    SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate if pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to the parties' case, and upon which the party will bear the ultimate burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## IV. ARGUMENT

### A. Controlling Third Circuit Precedent Mandates Reformation of Amendment No. 4.

Pursuant to the equitable doctrine regarding scrivener's errors, Amendment No. 4 should be reformed to reflect that transfers out of the Fund were permitted after July 20, 2005. In *Int'l Union of Elec. Workers v. Murata Erie N. Am.,* the Third Circuit explained that ERISA plan documents may be reformed "based upon parol evidence, provided the evidence is 'clear, precise, convincing and of the most satisfactory character' that a mistake has occurred and that the mistake does not reflect the intent of the parties." 980 F.2d 889, 907 (3d Cir.1992).

Several years later, in *Cent. Penn. Teamsters Pension Fund v. McCormick Dray Line, Inc.,* the Third Circuit also discussed ERISA's statutory purpose when considering reformation of an ERISA plan document due to a scrivener's error:

> The central holding of *Murata's* "scrivener's error" discussion is that in circumstances where a court can establish that no plan participants were likely to have relied upon the scrivener's error in question in determining their rights and obligations under the plan, allowing reformation of the scrivener's error does not thwart ERISA's statutory purpose of ensuring that plan participants can rely upon the language.

85 F.3d 1098, 1105 n. 2 (3d Cir.1996).

The Court acknowledged the controlling law in the Third Circuit regarding the equitable doctrine regarding scrivener's error in the Court's Memo:

> As defendants point out, **the court can reform the Plan to reflect the intended language** of Amendment No. 4 only **if defendants establish that "no plan participants were likely to have relied upon the scrivener's error in question ...."** *See Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1105 n. 2 (3d Cir.1996) (discussing the Third Circuit's holding in *Int'l Union v. Murata Erie North America, Inc.*, 980 F.2d 889 (3d Cir.1992)).

Doc. No. 99 at 9, n.10 (emphasis added).

Hence, pursuant to *Murata* and *McCormick*, the Plan Amendment should be reformed if

4

the *Murata* evidentiary standards are satisfied and if reformation would not defeat ERISA's statutory purpose as required by *McCormick*.

       1.     *The record evidence supports equitable reformation.*

With respect to the evidentiary issues, the record evidence is "'clear, precise, convincing and of the most satisfactory character' that a mistake [had] occurred and that the mistake d[id] not reflect the intent of the parties." *Murata,* 980 F.2d at 907. Plaintiff fails to present any record evidence to the contrary because there is no such evidence.

As detailed in the Individual Defendant's SMFs, the record evidence conclusively establishes that the scrivener's error contained in Amendment No. 4 is inconsistent with the intent of the parties. Moreover, a common sense approach to the reason why the Committee amended the Plan also establishes that Amendment No. 4 contained a scrivener's error. The Committee intended to amend the Plan so as to minimize the Plan participants' investments in the volatile and then overly risky Fund. (SMF ¶¶ 14, 15). This intent is evidenced by: 1) the oral and written discussions with the scrivener[3] (SMF ¶¶ 11-13), 2) the Minutes of the July 13, 2005 Benefits Committee meeting (SMF ¶¶ 14, 15); 3) the July 15 Memo to participants (SMF ¶¶ 16-17); 4) Fidelity's July 20 Letter to participants (SMF ¶¶ 19, 20), and 5) Trust Amendment No. 5. (SMF ¶¶ 22-23).

The Individual Defendants ensured that Plan participants were kept apprised exactly why the Plan was being amended. Indeed, via both the July 15 Memo and the July 20 Letter, Plan participants were told in no uncertain terms that the Committee determined that the Fund "may not be an appropriate investment." (SMF ¶¶16, 20). As a result of this determination, Plan participants were also clearly told via the July 15 Memo that "a decision has been made to close the Foamex Stock Fund **to new investments."** (SMF ¶ 16). Five days later, Plan participants

---

[3] Even the scrivener has admitted that a drafting error occurred. (SMF ¶ 29).

were once again informed that the amendment related only to new investments. The language contained in the July 20 Letter was clear: "This action only applies to new contributions." (SMF ¶ 20).

Although the aforementioned language plainly and clearly puts the Plan participants on notice as to the specific intent of Amendment No. 4, both of the aforementioned correspondences reinforced the fact the amendment did not apply to transfers out of the Fund. Indeed, both correspondences informed Plan Participants: "Money that is currently in the Foamex Stock Fund may remain in the Fund or can be moved into other investments" within the Saving Plan. (SMF ¶¶ 17, 20).

Plaintiff admits that he fully understood the true intent of Amendment No. 4 when he read each of these correspondences. (SMF ¶¶ 18, 21). After all, the intent could not have been clearer, as further evidenced by the fact that when the Trust Agreement was also amended, it was amended consistent with the Committee's intent and consistent with the aforementioned communications to the Plan participants. (SMF ¶ 22-3).

. Amendment No. 4 as drafted, however, precludes transfers out of the Fund due to a scrivener's error. (SMF ¶¶ 24-25, 29). The scrivener error preclusion of transfers out of the Fund is contrary to the oft stated purpose of Amendment No. 4. Indeed, the Committee took all of the aforementioned steps because it decided investments in the Fund were even riskier than normal. The Committee then warned Plan participants accordingly. To argue that the Committee then intended to adopt an amendment that forces Plan participants **to stay in the Fund** is nonsensical as such an amendment would have the exact opposite result of what was intended -- it would keep investments in the Fund at a time when the Committee was not only

6

warning Plan participants to consider getting out, but also precluding Plan participants from putting new money into the Fund.

The intent of Amendment No. 4 is also confirmed by the fact that Plan participants did transfer investments out of the Fund. In fact, between July 15, 2005 and September 8, 2005, approximately one-third of the Fund investment units were transferred out of the Fund. (SMF ¶ 27). Between September 8, 2005 and December 31, 2005, approximately another one-fourth of the Fund investment units were transferred out of the Fund. (SMF ¶ 35).

Based upon all the above, the "clear, precise, convincing" record evidence demonstrates that Fund participants were allowed to transfer assets out of the Fund after July 20, 2005 as was the clear intent of the Committee, and as many did. As such, because the *Murata* evidentiary standards are satisfied, Amendment No. 4 should be reformed to reflect that Fund participants were permitted to transfer assets from the Fund after July 20, 2005.

### 2. *Reformation here does not thwart ERISA's statutory purpose.*

With respect to ERISA's statutory purpose, the Third Circuit noted in *McCormack* that ERISA requires that plan participants should be able to read and rely on plan documents for their rights and obligations. *See McCormack*, 85 F.3d at 1105 n.2. Unless the plan participants actually relied upon the plan documents in question, however, this ERISA statutory purpose is not contravened by reformation of plan documents to reflect the intent of the parties. *Id.* at 1104-05.

As previously stated, Plaintiff admits that he knew transfers out of the Fund were always allowed, as did other Plan participants. (SMF ¶ 18, 27). Consistently, the STD (SMF ¶9), the July 15 Memo and the July 20 Letter all inform plan participants that transfers out of the Fund were allowed. In fact, between July 15, 2005 and September 8, 2005, approximately one-third of

the Stock Fund investment units were transferred out of the Fund, which refutes any notion that Plan participants thought transfers out of the Fund were precluded at that time.

Moreover, if Plan participants reviewed the Plan documents prior to September 8, 2005, they would have reaffirmed what they already knew -- transfers out of the Fund were allowed -- because Amendment No. 4 had not yet been adopted.[4]  Indeed, the SPD, which is the plan document most likely to be reviewed by Plan participants, especially because it was on the Company's intranet, clearly informed Plan participants that transfer out of the Fund were permitted.  (SMF ¶ 9).

If they reviewed the Plan documents after September 8, 2005, they would have seen an ambiguity in the Plan documents because although Amendment No.4 contained the scrivener's error, neither the SPD nor the Trust Agreement did.  (SMF ¶ 33).  In fact, if a Plan participant read the Plan documents correctly, they would realize that the ambiguity should be resolved in favor of the language contained in the Trust. (*Id.*).  Indeed, as per the Trust Agreement, to the extent the Trust Agreement and the Plan conflict, the Trust Agreement controls.  (*Id.*).  Hence, even though the Trust Agreement and the Plan conflict due to the scrivener's error in the Amendment No. 4, the correct language contained in the Trust Agreement trumps the scrivener's error

Regardless, Amendment No. 4, which was never circulated to Plan participants, was only in the possession of Foamex, the Committee, their attorneys and Fidelity.  (SMF ¶ 34). Also, no Plan participant ever asked to review the Plan during the relevant timeframe, which conclusively establishes that no Plan participant even saw Amendment No. 4 during the relevant time frame.  (SMF ¶ 34).  Thus, having not seen it and being informed to the contrary,

---

[4] Plaintiffs "ambiguity" argument can be summarily dismissed because it fails to consider that, subsequent to the adoption of Amendment No. 4, an ambiguity did exist with a proper reading of all the plan documents.

8

no Plan participant could have relied upon the scrivener's error. In fact, between September 8, 2005 and December 31, 2005, approximately one-fourth of the Stock Fund investment units were transferred out of the Fund, which once again refutes any notion that transfers out of the Fund were precluded as a result of Amendment No. 4 being adopted.

Hence, as discussed above, ERISA statutory purpose could not be contravened by reforming Amendment No. 4 because no Plan participant saw (nor relied upon) the scrivener's error. Moreover, as also more fully discussed above, a proper reading and review of all the Plan documents would have alerted Plan participants that Amendment No. 4 contained the scrivener's error.

As a result and pursuant to *Murata* and *McCormick,* this Court should reform Amendment No. 4 to reflect that investments were allowed to be transferred out of the Fund after July 20, 2005. Consistently, the Court should grant the Individual Defendant's Motion and deny Plaintiff's Motion.

  **B.**  **The "Factors to Consider in ERISA Plan Formation" Discussed in *Young* Also Support Reformation.**

Although the holdings in *Murata* and *McCormick* mandate reformation alone, the "Factors to Consider in ERISA Plan Formation" discussed in *Young* also support reformation. As with *Murata* and *McCormick,* the *Young* Court also emphasized the importance of what it refers to as ERISA's well-established "plan documents" rule. "The rule aims to ensure that 'every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan.'" *Young*, 2009 WL 3677350, *40. (*quoting Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S.Ct. 1223 (1995)). After discussing the importance of the "plan documents rule, the *Young* court then analyzed "Reformation Principles in Light of the Plan Documents Rule," all of which support reformation here.

9

### *1.   Mutual Mistake*

Consistent with the holdings in *Murata* and *McCormick*, the *Young* Court analyzed the "mutual v. unilateral mistake distinction." *Id.* at 41. In so doing, the *Young* Court held that "a drafting error by an ERISA plan drafter is only a mutual mistake if the employees were 'on notice' of the plan sponsor's actual intent." *Id.* Indeed, "[c]ourts have also acknowledged the viability of an ERISA reformation claim where communications to participants clearly summarized intended plan terms that were not reflected in the formal plan due to a drafting error." *Id.* (*citing Rea v. The Hershey Co. 2005 Enhanced Separation Plan*, 2008 WL 2782663, at *8 (M.D.Pa. July 15, 2008))(finding reformation appropriate where the plan participants received consistent communications describing true intent and where reliance on typographical error was doubtful)(*Air Line Pilots Ass'n v. Shuttle, Inc.*, 55 F.Supp.2d 47, 53 (D.D.C.1999)(acknowledging reformation is allowed where scrivener error in plan conflicted with intent that was communicated to participants).

In further discussing the "mutual mistake" issue, the *Young* Court cited to the Third Circuit's precedential holding in *Murata*. Specifically, the *Young* Court held "where both the plan sponsor and plan beneficiaries were operating under the same understanding of the sponsor's intent, it is a 'mutual' mistake if the plan does not reflect that understanding." *Id.* (*citing Murata*, 980 F.2d at 907)(citation omitted).

As discussed above, the Plan participants here were clearly put on notice of the Committee's intent to preclude transfers into the Fund but not out of the Fund. Consistently, Plan participants operated "under the same understanding" of this intent by transferring a significant amount of investments out of the Fund both after July 20, 2005 and after

Amendment No. 4 was adopted seven (7) weeks later. Hence, pursuant to *Murata* and *Young*, the scrivener's error was a "mutual mistake" that supports reformation.

Importantly, the unpublished decision in *Cross* contained no such analysis because there were no communications to Plan participants reflecting the alleged true intent of the amendment in question. *See Cross v. Bragg*, 2009 WL 2196887 * 6-8 (4th Cir. 2009) for the Court's analysis of the scrivener error issue. The unpublished *Cross* decision has no application here as it is contrary to controlling Third Circuit case law, is factually different, and does not have the equitable concerns herein.[5]

*2.   Reliance*

The next "Reformation Principle" discussed in *Young* was "reliance." Importantly, Plaintiff does not address *Young* even though the *Young* Court specifically relies upon *Murata* in determining that reliance is an important principle when deciding whether reformation is appropriate. In so discussing, the *Young* Court stated:

> In *Murata*, the Third Circuit emphasized the importance of reliance, stating it was a key consideration in determining whether reformation would comport with the plan documents rule. *Murata*, 980 F.2d at 907. The Ninth Circuit also recognized that actual reliance is a determinative factor in the analysis of reformation of a scrivener's error in the ERISA context. *Cinell*i, 61 F.3d at 1445 (finding insufficient evidence of such reliance).

*Young*, 2009 WL 3677350, *43.

Indeed, "[w]hen there is no evidence that any plan beneficiaries actually relied on an error in the plan, "ERISA's goal of providing clear Plan documents is ... less pertinent." *Id.* (*quoting Murata*, 980 F.2d at 907). As discussed above, Plaintiff admits that he did not rely on

---

[5] *Cross* involved seven (7) plaintiffs seeking benefits that they were informed they were entitled to receive when "a full statement" of the Plan was issued. *Cross v. Bragg*, 2009 WL 2196887 *1, fn.4 (class never certified)(4th Cir. 2009). The scrivener error was not noticed until six (6) years later and required the Administrator to undertake an investigation to determine an error was made. *Id.* Plaintiff's representation to the Court that *Cross* is "a nearly identical case" is simply false. Plaintiff's Motion at 3.

11

the scrivener's error contained in Amendment No. 4. Moreover, no other Plan participant could have relied on it either because they were never aware of it.

Importantly, the unpublished decision in *Cross* contains no analysis on reliance. On page 10 of Plaintiff's Motion, Plaintiff concedes reliance and dismisses it as not relevant, which is directly contrary to the controlling precedent in the Third Circuit, contrary to *Young*, and also contrary to this Court's guidance in the Court's Memo. Clearly, both Plaintiff's Motion and *Cross* provide no guidance because the reliance principle applied to the facts in the case support reformation.

### 2. "Course of Dealing" Between the Parties

The next "Reformation Principle" discussed in *Young* was "'Course of Dealing' Between the Parties," which also supports reformation. The *Young* Court noted that when a consistent course of dealing is established by objective evidence, it shows there was a mutually understood agreement. *Young*, 2009 WL 3677350, *44. "Course of dealing evidence is particularly reliable in contract interpretation because the credibility of such evidence is 'not a function of the self-serving testimony of a party to the contract.'" *Id.* (citation omitted). In once again citing to *Murata*, the *Young* court also stated the "history between the parties will demonstrate what they believed their written agreement was, even if a scrivener's error resulted in the actual written terms differing from that understanding." *Id.* (*citing Murata*, 980 F.2d at 908.)

As Plaintiff admits, Plan participants not only knew they were always permitted to transfer their investments out of the Fund, they did. This uncontested evidence of a "course of dealing" between the parties also supports reformation. Once again, neither Plaintiff's Motion nor *Cross* provide any analysis on "'Course of Dealing' Between the Parties."

### *4.     Windfall*

The fourth "Reformation Principle" discussed in *Young* was "Windfall," which also supports reformation.   Once again, the *Young* Court turned to *Murata* in analyzing the "Windfall" principle.  "A related consideration to the reliance question is whether the results without reformation would be "absurd" or create a windfall to some plan participants. *Young*, 2009 WL 3677350, *45 (*citing Murata*, 980 F.2d at 907)("the Third Circuit relied on 'scrivener's error' in the ERISA context in part because of the unanticipated 'windfall' that could result if it rejected reformation") (citation omitted).

Here, the results would be absurd without reformation.  The Committee went to great lengths to warn participants that investments in the Fund were even riskier than normal.  The Committee relied on counsel, coordinated with Fidelity and sent correspondences to Plan participants all to try and minimize the investments in the Fund.  Plan participants that ignored these warnings and left their investments in the Fund should not now benefit due to a scrivener's error that they never even knew about.  More importantly, the Individual Defendants should not be punished for its attempts to help Plan participants based upon their legitimate concerns as to the volatility of the Fund.  An old adage is "the taker hates the giver", it would be absurd for the Court to award a windfall to the Plaintiff-taker at the expense of the Individual Defendants-giver.  The principle of "Windfall," also ignored by Plaintiff and *Cross*, supports reformation.

### *5.     Additional ERISA Policy Considerations*

The *Young* Court also addressed "Additional ERISA Policy Considerations" in its "Reformation Principles" analysis, which also support reformation.  In so doing, the *Young* Court relies upon the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).  In *Howe*, the Supreme Court noted that Congress, in enacting

ERISA, did not intend to create a system that could potentially discourage employers from offering benefits plans due to high administrative and litigation costs.  *Young*, 2009 WL 3677350, *46 (*citing Varity Corp.*, 516 U.S. at 497).

The *Young* Court then considered whether "an absolute bar on reformation of a drafting error could have the effect of discouraging employers from establishing and maintaining employee benefit plans."  *Young*, 2009 WL 3677350, *46.  The *Young* Court held that it would, and this Court should do the same.  Indeed, not only could such an effect result from an absolute bar on reformation, but companies and individuals, such as the Individual Defendants herein, could suffer serious financial hardship simply because an opportunistic plaintiff compared and contrasted all of the plan documents and found a typographical error that no one even knew about and that did not harm anyone.  Such financial hardship can have harsh results, such as loss of jobs, personal bankruptcy, loss of homes, etc...  Clearly, this was not and is not the intent of ERISA.  Amendment No. 4 should be reformed, as is the fair, just and equitable result.

## C. CONCLUSION

For the above stated reasons, the Foamex Defendants' Motion for Partial Summary Judgment should be granted and Plan Amendment No. 4 should be reformed as per the Individual Defendants' Proposed Order. Consistently, Plaintiff's Motion for Partial Summary Judgment should be denied.

Dated: February 23, 2010          /s/ John A. Goodman

                    John A. Goodman (Bar # 80785)
                    BUCHANAN INGERSOLL & ROONEY PC
                    1700 K Street, N.W., Suite 300
                    Washington, DC 20006
                    (202) 452-7900

                    ROSEMARY J. BRUNO (admitted *pro hac vice*)
                    BUCHANAN INGERSOLL & ROONEY PC
                    550 Broad Street, Suite 810
                    Newark, New Jersey  07201
                    (973) 278-9800

                    BRIAN A. CASAL (Pa. ID No. 89983)
                    BUCHANAN INGERSOLL & ROONEY PC
                    1835 Market Street, 14th Floor
                    Philadelphia, Pennsylvania  19103-2985
                    (215) 665-8700

                    Attorneys for Individual Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2010, I caused a true and correct copy of the foregoing to be filed electronically with the Court and is available for viewing and downloading from the ECF system. All parties were served by the Court's electronic filing system.

/s/ John A. Goodman  (jag80785)