IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM STANFORD, JR., Individually and on
Behalf of All Other Similarly Situated Persons
and on Behalf of the Foamex L.P. Savings Plan,

        Plaintiff,

v.

FOAMEX L.P., FIDELITY MANAGEMENT
TRUST CO., K. DOUGLAS RALPH, STEPHEN
DRAP, GREGORY J. CHRISTIAN AND
GEORGE L. KARPINSKI

        Defendants.

No. 07-CV-04225

William H. Yohn, Jr.

PLAINTIFF STANFORD'S MEMORANDUM IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY JUDGMENT
RE: FOAMEX L.P. AND GREGORY J. CHRISTIAN

## TABLE OF CONTENTS

I.   INTRODUCTION ..........................................................................................................1

II.  FACTS .......................................................................................................................3

     A.   The Structure of the Foamex L.P. Savings Plan. .......................................................3

     B.   The Foamex Stock Fund is Designed to Hold Foamex Stock. ...................................5

     C.   The Benefits Committee is Vested With the Authority to Adjust
          the Cash Composition of the Foamex Stock Fund. ...................................................6

     D.   The Foamex L.P. Benefits Committee Meets on July 13, 2005
          Amid Foamex L.P.'s Declining Prospects and Decides *Not* to
          Close the Foamex Stock Fund. ................................................................................7

     E.   Greg Christian, Acting on Behalf of Foamex L.P., Decides to
          Increase the Cash Composition of the Foamex Stock Fund to
          7 Percent...................................................................................................................9

     F.   Greg Christian, Acting on Behalf of Foamex L.P., Decides to
          Increase the Cash Composition of the Foamex Stock Fund to 20
          Percent......................................................................................................................9

     G.   Greg Christian or Tom McGinley, Acting on Behalf of Foamex
          L.P., Decides to "Omit Buys" within the Foamex Stock Fund. .............................10

     H.   Greg Christian, Acting on Behalf of Foamex L.P., Decides to
          Increase the Cash Composition of the Foamex Stock Fund to 50
          Percent....................................................................................................................10

     I.   Greg Christian, Acting on Behalf of Foamex L.P., Decides to
          Increase the Cash Composition of the Foamex Stock Fund to
          100 Percent..............................................................................................................11

     J.   Greg Christian, Acting on Behalf of Foamex L.P., Decides to
          Reestablish the Cash Composition of the Foamex Stock Fund at
          50 Percent................................................................................................................11

     K.   The Stock Fund Is Closed On December 22, 2006...................................................12

III. LAW AND ARGUMENT ..........................................................................................12

     A.   Foamex L.P. and Mr. Christian are Plan Fiduciaries...............................................13

Plaintiff Stanford's Mem. in Support of Motion for
Partial Summ. J. Re: Foamex L.P. and Christian
Cause No. 2:07-cv-04225-WY                    ii

B.    Foamex L.P. and Mr. Christian Breached Their Fiduciary
      Duties. ...................................................................................................................15

      1.    *The First Breach:  Foamex L.P. and Mr. Christian
            Usurped the Authority of the Benefits Committee Under the
            Trust Agreement to Set the Target Cash Percentage in the
            Foamex Stock Fund.* ......................................................................................15

      2.    *The Second Breach:  Foamex L.P. and Mr. Christian
            Usurped the Authority of the Benefits Committee Under the
            Plan to Select the Investment Options.* ...........................................................19

      3.    *The Third Breach:  Foamex L.P. and Mr. Christian
            Breached Their Fiduciary Duties By Ignoring Plan Terms.* ...........................23

C.    The Plan Sustained Losses As A Result of the Breaches of Duty. ...........................26

IV.   CONCLUSION.............................................................................................................28

Plaintiff Stanford's Mem. in Support of Motion for
Partial Summ. J. Re: Foamex L.P. and Christian
Cause No. 2:07-cv-04225-WY                    iii

# TABLE OF AUTHORITIES

## CASES

*Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey*
*Welfare Fund v. Wettlin Associates, Inc.*,
237 F.3d 270 (3d Cir. 2001) .................................................................................... 14

*Briefer v. Tellabs, Inc.*,
245 F.R.D. 345 (N.D. Ill. 2007) .............................................................................. 27

*Cannon v. MBNA Corp.*,
2007 WL 2009672 (D. Del. 2007) ........................................................................... 15

*DeWitt v. Penn-Del Directory Corp.*,
106 F.3d 514 (3d Cir. 1997) .................................................................................... 17

*Donovan v. Bierwirth*,
754 F.2d 1049 (2d Cir. 1985) .................................................................................. 27

*Edgar v. Avaya, Inc.*,
503 F.3d 340 (3d Cir. 2007) .................................................................................... 19

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) .......................................... 17

*In re Dynegy, Inc. ERISA Litig.*,
309 F.Supp.2d 861 (S.D. Tex. 2004) ....................................................................... 13

*In re Enron*,
2006 WL 1662596 (S.D. Tex. 2006) ........................................................................ 27

*In re Shering-Plough Corp. ERISA Litig.*,
420 F.3d 231 (3d Cir. 2005) .................................................................................... 27

*In re Unisys Sav. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996) ............................................................................24, 25, 26

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
510 U.S. 86, 114 S. Ct. 517, 126 L. Ed. 2d 524 (1993) .......................................... 14

*Kilkenny v. Guy C. Long, Inc.*,
288 F.3d 116 (3d Cir. 2002) .................................................................................... 17

*Kirschbaum v. Reliant Energy, Inc.*,
526 F.3d 243 (5th Cir. 2008) ................................................................................... 22

Plaintiff Stanford's Mem. in Support of Motion for
Partial Summ. J. Re: Foamex L.P. and Christian
Cause No. 2:07-cv-04225-WY                    iv

*LaRue v. DeWolff, Boberg & Associates, Inc.,*
   552 U.S. 248, 128 S. Ct. 1020 (2008) ................................................................27

*Leckey v. Stefano*,
   501 F.3d 212 (3d Cir. 2007) ..............................................................13, 17, 19, 23

*Lieb v. Merrill Lynch, Pierce, Fenner & Smith*,
   461 F. Supp. 951 (E.D. Mich. 1978) ..................................................................13

*McMahon v. McDowell*,
   794 F.2d 100 (3d Cir. 1986) ...............................................................................26

*Mertens v. Hewitt Associates*,
   508 U.S. 248, 113 S.Ct. 2063 (1993) .................................................................13

*Moench v. Robertson,*
   62 F.3d 553 (3d Cir. 1995) ..................................................................................19

*Olsen v. E.F. Hutton & Co., Inc.*,
   957 F.2d 622 (8th Cir. 1992) ..............................................................................13

*Srein v. Frankford Trust Co.*,
   323 F.3d 214 (3d Cir. 2003) ..........................................................................13, 14

## STATUTES

ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) ................................................................3

ERISA § 3(7), 29 U.S.C. § 1002(7) ..........................................................................3

ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) ...........................................................4

ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B) ...........................................................4

ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) .............................................13, 14

ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002 (21)(A)(iii) ............................................14

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ...........................................................15

ERISA § 402(a), 29 U.S.C. § 1102(a) ......................................................................4

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) .................................................21

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) .............................................21, 23

ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) .................................................17

ERISA § 404(a), 29 U.S.C. § 1104(a) .....................................................................12

Plaintiff Stanford's Mem. in Support of Motion for
Partial Summ. J. Re: Foamex L.P. and Christian
Cause No. 2:07-cv-04225-WY        v

ERISA § 409(a), 29 U.S.C. § 1109(a) ..................................................................................13

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ........................................................................13

## REGULATIONS

29 C.F.R. § 2509.75-5 ..........................................................................................................15

29 C.F.R. § 2509.75-5, FR-1 ...............................................................................................14

29 C.F.R. § 2550.404a–5 (c)(1) ...........................................................................................21

29 C.F.R. § 2550.404a–5 (d)(1)(i)(C) and (D) ....................................................................21

Preamble, Fiduciary Requirements for Disclosure in Participant-Directed
    Individual Account Plans; Final Rule, 75 Fed. Reg. 64910 (October 20,
    2010) ...............................................................................................................................21

## TREATISES

RESTATEMENT (SECOND) OF TRUSTS § 201 .........................................................................17, 18

RESTATEMENT (SECOND) OF TRUSTS § 205 .............................................................................27

Plaintiff Stanford's Mem. in Support of Motion for
Partial Summ. J. Re: Foamex L.P. and Christian
Cause No. 2:07-cv-04225-WY                    vi

## I.  INTRODUCTION

Plaintiff William Stanford and the class he represents had a portion of their 401(k) retirement savings invested in the Foamex Stock Fund.  The Stock Fund was, by definition, "a non-diversified stock fund that invests solely in Employer Stock [Foamex International common stock]."  *Exh. A*, p. 6, § 1.32.[1]  As one would expect, "the investment performance of the fund is directly tied to the financial performance of Foamex International Inc. and its subsidiaries, along with general market conditions." *Exh. B*, p. 7.  Before the breaches of duty that Stanford now complains of, that is exactly how the Foamex Stock Fund performed.  When Foamex stock declined in value, the net asset value ("NAV") of the Foamex Stock Fund would correspondingly drop. Conversely, when the stock rose, the NAV would rise proportionally.

That all changed in late 2005 and 2006.  In late 2005, Stanford noticed that the NAV of his shares in the Foamex Stock Fund was no longer tracking the movement of Foamex's stock price.  As Foamex's stock began to skyrocket after it appeared that it would successfully emerge from bankruptcy protection, the Foamex Stock Fund failed to make similar gains.  Thus, while Foamex Stock soared from less than $.03 a share on January 1, 2006 to $3.49 just seven months later—a gain of 11,533 percent—a unit in the Foamex Stock Fund grew at only a fraction of this rate, rising from $.02 to $.13. *Exh. DD*.

This was not the result contemplated by the Foamex L.P. Benefits Committee ("Benefits Committee"), the Named Fiduciary of the Plan and the only entity authorized to adjust the cash composition of the Foamex Stock Fund. The Benefits Committee had met on July 13, 2005 amid Foamex's downward spiral and, while closing the Foamex Stock Fund to new money, specifically permitted participants with existing investments in the Foamex Stock Fund to remain invested, if they chose to

---

[1] All "*Exh.__*" references are to the exhibits attached the Declaration of Richard E. Spoonemore.

incur the risk.  *Exh. M*.  The Benefits Committee did not alter the cash composition of the Foamex Stock Fund, keeping the cash target at five percent of the fund's value. Participants with funds already invested were warned – twice – of the risk of remaining in the Foamex Stock Fund. *Exh. BB*; *Exh. EE*. Many participants cashed out.  *Exh. W*. Stanford and the members of the class did not, correctly anticipating that Foamex stock would eventually recover.

Despite the Benefits Committee's decision, and unbeknownst to Stanford and the class, Foamex's Chief Restructuring Officer ("CRO") went rogue, usurping the authority of the Benefits Committee.  He authorized a series of directives to Fidelity that systematically increased the cash component of the Foamex Stock Fund, culminating in a January 20, 2006, directive to liquidate all Foamex stock within the suddenly inappropriately-named Foamex Stock Fund.  *Exh. O; Exh. P; Exh. R; Exh. S*.  Defendant Gregory Christian, the CRO, admitted at deposition that all of the directives were made by him, on behalf of Foamex L.P.  *Exh. D*, pp. 35-36, 38-39, 65-67, 83, 88-89, 98-99, 106-07, 115-17.   *See also Exh. H*,  pp. 47-48,  73-75,  85-87,  117-18,  152.    The other Benefits Committee members – George Karpinski, Stephen Drap and Doug Ralph – all confirmed that the Benefits Committee never authorized, approved or even discussed increasing the cash composition in the Foamex Stock Fund, let alone liquidating all stock from the Fund.[2] *Exh. E*, pp. 24-25, 27-28, 31-32, 34-38, 47; *Exh. F*, pp. 22-23, 26, 28-34, 36, 40-41; *Exh. G*, pp. 14-15, 18-22, 26-27.  *See also Exh. H*, pp. 47-48, 78-79, 86-87, 126-27, 152, 163, 172-73; *Exh. D*, pp. 66, 114-15, 117-118.

---

[2] Ironically, in May or June of 2006 committee member Drap, himself a participant in the Foamex Stock Fund, became concerned when he "noticed that the stock value for the Foamex stock was appreciating, but I was not seeing the NAV [net asset value] appreciation in my 401(k)." *Exh. G*, p. 31. He contacted Thomas McGinley, Foamex's Director of Compensation and Benefits and the Secretary of the Benefits Committee, and asked him why the NAV in the Foamex Stock Fund was not appreciating as Foamex stock rose. *Id.*, pp. 33, 35-36.  Mr. McGinley "told me that the NAV was not appreciating, because at that point in time the plan was primarily a cash plan . . . [t]hat the bulk of the stock had been cashed out."  *Id.* p. 33.  Mr. Drap then called Fidelity and was told that "they were acting under direction from Foamex."  *Id.*, pp. 31-32, 35.

As a result of the unauthorized directions issued by Mr. Christian on behalf of Foamex L.P. – which Fidelity followed[3] – Stanford and the class were no longer invested in the Foamex Stock Fund, as it was defined in the Plan, Summary Plan Description or Trust Agreement (the "Plan Documents").  Mr. Christian's "sell low, buy high" strategy locked in Plan losses.  Furthermore, invested heavily in cash throughout 2006, the Plan sustained massive opportunity losses as Foamex stock rose 20,000 percent that year.

There are no disputed facts as to Mr. Christian's conduct in directing the cash component and stock liquidation in the Foamex Stock Fund.  Partial summary judgment as to his conduct and that of his principal, Foamex L.P., is therefore uniquely appropriate with respect to Plaintiff's first count in his Third Amended Complaint. Specifically, this Court should hold that Mr. Christian and Foamex L.P. violated their fiduciary duty to the Plan and its participants by: (1) adjusting the cash composition of the Foamex Stock Fund without any authority to do so, (2) liquidating the Foamex Stock Fund without authority, and (3) taking actions that directly conflicted with the terms and requirements of the Plan Documents.

## II.  FACTS

### A.    The Structure of the Foamex L.P. Savings Plan.

Plaintiff Stanford and the members of the class were, at all relevant times, "participants" (as defined in ERISA § 3(7), 29 U.S.C. § 1002(7)) in the Foamex L.P. Savings Plan, an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  Foamex L.P. was the plan sponsor of the Plan within

---

[3] Fidelity never should have followed directives setting the cash target, or liquidating the stock, from Foamex L.P.  Under the Plan Documents and ERISA, it should have only followed instructions of the Named Beneficiary, the Benefits Committee (and then only if the instructions were consistent with the terms of the governing Plan Documents).  Stanford and the class have separately moved for summary judgment against Fidelity as a result of this, and other, breaches of its fiduciary duties.  *See Plaintiff Stanford's Motion for Partial Summary Judgment Re: Fidelity Management Trust Co.*

the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  *Exh. A*, p. 9, § 1.48; *Exh. C*, p. 1; *Exh. I*, p. 130; *Exh. Z*, p. 9.  Foamex was not the "named fiduciary" under ERISA § 402(a), 29 U.S.C. § 1102(a), nor was it the "plan administrator" under ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  Instead, the Foamex L.P. Benefits Committee (the "Benefits Committee") was specifically identified in the Plan as the ERISA Named Fiduciary.  *See Exh. A*, p. 55, § 12.3; *Exh. C*, p. 1; *Exh. I*, p. 130; *Exh. Z*, p. 9.  The Benefits Committee was also specifically identified in the Plan as the ERISA Plan Administrator. *Exh. A*, p. 9, § 1.47. *Exh. C*, p. 1.

Throughout 2005 and until November 1, 2006, the Benefits Committee was composed of Greg Christian, George Karpinski, Doug Ralph and Stephen Drap.  *Exh. D*, p. 18-19; *Exh. E*, p. 10; *Exh. F*, p. 11; *Exh. G*, pp. 9, 7.  Tom McGinley served as the Committee's secretary, although he was not a member of the Benefits Committee. *Exh. D*, pp. 22, 24; *Exh. K*; *Exh. N*; *Exh. M*; *Exh. U*; *Exh. V*; *Exh. Z*, p. 11, 50.  Mr. Christian served as the chair of the Benefits Committee, and was the CRO for Foamex L.P. *Exh. D*, pp. 14-15, 18-19.

As the Plan's Named Fiduciary under ERISA, the Benefits Committee was specifically vested with "all powers and duties necessary or appropriate to administer the Plan . . .":

> The complete authority to control and manage the operation and administration of the Plan shall be placed in the Foamex L.P. Benefits Committee (the "Committee").

*Exh. A*, p. 55, §§ 12.1, 12.3.  It was authorized to exercise its authority by a majority vote at meetings, or by a unanimous written vote outside a meeting:

> The Committee shall act by the majority of members then in office at all meetings, but it may act upon matters by unanimous vote in writing without a meeting.

*Exh. A*, p. 55, § 12.2.

Pursuant to a Trust Agreement between Foamex L.P. and Fidelity, Fidelity agreed to hold trust assets and perform other specified functions under the Plan. The Trust Agreement, like the Plan itself, recognized the distinction between Foamex L.P. (the Plan Sponsor) and the Benefits Committee (the Named Fiduciary and Plan Administrator). *Exh. C*, p. 1.

> **B.     The Foamex Stock Fund is Designed to Hold Foamex Stock.**

Under the Plan Documents, a participant was allowed to select among a menu of investments, each with a different investment objective. *Exh. A*, p. FOAMEX000098, § 4.3.1; *Exh. B*, pp. 6-7; *Exh. C*, p. 32. Under the terms of the Plan Documents, funds invested by participants were ***required*** to be invested consistent with their direction:

> Contributions made by or on behalf of a Member ***shall be invested in the investment fund or funds selected by the Member*** until the effective date of a new designation which has been properly submitted to the Plan Administrator.

*Exh. A*, p. FOAMEX 000098, § 4.4. *See also Exh. C*, p. 4, § 4(c) (Trust Agreement: "As authorized under the Plan, each Plan participant shall direct the Trustee in which investment option(s) to invest the assets in the participant's individual accounts."). Until it was closed by a December 22, 2006 amendment to the Trust Agreement, one of the investment options offered to employees was the Foamex Stock Fund. *Exh. C*, p. 5, 23; *Exh. C*, p. FOAMEX000161.

The Foamex Stock Fund is, as its name suggests, a nondiversified stock fund that is supposed to hold Foamex stock. The Plan defines "Employer Stock" as "the common stock of Foamex International, Inc." *Exh. A*, p. 6, § 1.26. The Foamex Stock Fund is specifically defined in the Plan as

> a non-diversified stock fund that ***invests solely in Employer Stock***. All such shares of Employer Stock to be held in the Foamex Stock Fund shall be acquired exclusively through purchases on the open market. Dividends, if any, shall be

used, as soon as practicable, to purchase additional such
shares of Employer stock.

*Exh. A*, p. 6, § 1.32 (emphasis added).  The Summary Plan Description describes the
Foamex Stock Fund as "non-diversified stock investment that invests in the common
stock of Foamex International, Inc." that is "directly tied" to the performance of Foamex
International Inc. stock.  *Exh. B*, p. 7.  It warns that the Fund is "considered to have a
high level of risk" and is "neither a mutual fund nor a diversified or managed
investment option."  *Id.*

The language of the Trust Agreement between Foamex and Fidelity,
although not as absolute as the Plan, directs that "Investments in the Stock Fund ***shall***
***consist primarily of shares of Sponsor Stock*."   *Exh. C*, p. FOAMEX000302, § 4(e)
(emphasis added).  The Trust Agreement, unlike the Plan, allows the Stock Fund to hold
"cash or short-term liquid investments," but only "in amounts designed to satisfy daily
participant exchange or withdrawal requests."  *Id.*

**C.   The Benefits Committee is Vested With the Authority to Adjust the
Cash Composition of the Foamex Stock Fund.**

Consistent with the Plan's vesting of "complete authority to control and
manage the operation and administration of the Plan" in the Benefits Committee, the
Trust Agreement only authorized the Named Fiduciary – the Benefits Committee – to
set the target cash percentage and drift allowance within the Foamex Stock Fund (after
consulting with the Trustee):

The Named Fiduciary shall, after consultation with the
Trustee, establish and communicate to the Trustee in writing
a target cash percentage and drift allowance for such short-
term liquid investments.

*Exh. C*, p. FOAMEX 000302, § 4(e).  The target cash percentage was set at 5 percent of
the Fund's value when it was originally created in 2000.  *Exh. J*, p. 10; *Exh. I*, p. 39.  This
was consistent with the common range of 3 to 5 percent cash within employer stock
funds.  *Exh. J*, p. 12.

**D.    The Foamex L.P. Benefits Committee Meets on July 13, 2005 Amid Foamex L.P.'s Declining Prospects and Decides *Not* to Close the Foamex Stock Fund.**

Foamex experienced severe financial difficulty in 2005.  *Exh. GG; Exh. HH*. Its stock, which had traded at $3.59 at the beginning of the year, had collapsed by mid-2005.  *Exh. CC*.  With the stock trading at around $.70/share, the Benefits Committee held a meeting on July 13, 2005, to discuss the volatility of Foamex stock, and to address the question of whether the Foamex Stock Fund should be closed. *Exh. M*; *Exh. H*, pp. 39-41.  It was generally understood among the committee members that Foamex might file for bankruptcy.  *Exh. E*, p. 17; *Exh. F*, pp. 16-17 ("increasingly clear" that reorganization without bankruptcy was "going to be difficult to achieve").   After discussion, the Benefits Committee resolved to close the fund to new money:

> Due to the recent volatility in the price of Foamex Stock, the Committee determined that the Foamex Stock Fund may no longer be an appropriate investment for the 401(k) Plan and agreed to close the Fund to new investments as soon as administratively possible.

*Exh. M.*

The Benefits Committee specifically considered whether "we want to force individuals who have balances to move them from the Foamex Stock Fund."  *Exh. H*, pp. 40-41.  The Benefits Committee decided ***not*** to close the Stock Fund, and determined that participants with existing investments in the Stock Fund ***could remain invested*** in the Foamex Stock Fund:

> Money currently in the Foamex Stock Fund will not be affected, and participants will be permitted to move those assets at their discretion.

*Exh. M.  See also Exh. H*, p. 41 ("The committee did not want to force employees to have money taken from the Foamex Stock Fund at that time."); *Exh. G*, pp. 13-14 (Committee decided that it was up to employees' own discretion with respect to keeping money in the stock fund); *Exh. F*, pp. 20-21 (employees left to make own decision concerning

whether to continue to hold shares in the Foamex Stock Fund); *Exh. E*, pp. 22-23 (same); *Exh. D*, pp. 30-31 (same).

The Benefits Committee instructed Mr. McGinley to "develop communication material with assistance from Fidelity." *Exh. M*. As a result, on July 15, 2005, a letter was sent to participants that warned them of the risks of holding investments in the Foamex Stock Fund, and informed them of the Benefits Committee's decisions:

> The Benefits Committee regularly reviews the performance of the investments within the Foamex 401(k) Savings Plan to ensure the appropriateness of the options provided to participants. . . . [D]ue to the recent volatility of the price of Foamex stock, the Benefits Committee has determined that the Foamex Stock Fund may no longer be an appropriate investment for a retirement plan such as the 401(k) Savings Plan at this time.

*Exh. EE*. The letter made it clear, however, that the Benefits Committee was not taking any action which would affect participants' current investments in the Stock Fund:

> ***This action applies only to new contributions. Money that is currently in the Foamex Stock Fund may remain in the fund*** or can be moved into other investment options within the Savings Plan at the participant's discretion.

*Id.* (emphasis added). Another similar letter was sent on July 20, 2005. *Exh. BB*.

The Benefits Committee made no other changes to the Foamex Stock Fund. Specifically, it did not alter the target cash percentage, or decide to omit buys within the Fund. *Exh. M*; *Exh. G*, pp. 12-13; *Exh. H*, pp. 41-42; *Exh. E*, pp. 20-21; *Exh. F*, pp. 19, 30.

Consistent with the decisions made by the Benefits Committee, the Plan was amended to preclude participants from directing "new investments into" the Foamex Stock Fund. *Exh. A*, p. FOAMEX000098. In addition, an amendment to the Trust Agreement was executed that froze new investments:

> Effective the close of business (4:00 p.m. ET) on July 20, 2005, amending the "investment options" section of Schedules "A" and "C" to reflect that the Foamex Stock Fund is frozen to new contributions and exchanges in.

*Exh. C*, p. FOAMEX000159.  Consistent with the Benefits Committee's decisions, neither amendment removed the Foamex Stock Fund from the list of available investment options available to participants, nor was the target cash percentage within the Stock Fund altered in any way.  *Exh. A*, p. FOAMEX 000098*; Exh. C*, p. FOAMEX000159.

**E.      Greg Christian, Acting on Behalf of Foamex L.P., Decides to Increase the Cash Composition of the Foamex Stock Fund to 7 Percent.**

On July 13, 2005 a letter of direction was sent to Fidelity instructing it to increase the cash composition within the Foamex Stock Fund to 7 percent.  *Exh. O*.  The decision was made by Greg Christian, acting in his capacity as CRO of the Plan Sponsor, Foamex L.P.  *Exh. D*, pp. 35-36; *Exh. H*, pp. 47-48.  Despite the fact that the direction was sent on the same day as the Benefits Committee meeting, the Benefits Committee did not make the decision to increase the target cash percentage, and was not involved in any capacity in discussing, arriving at, or communicating, this decision.  *Exh. E*, pp. 24-25; *Exh. F*, pp. 22-23, 26, 30; *Exh. G*, pp. 14-15; *Exh. H*, pp. 47-48, 172-73.

**F.      Greg Christian, Acting on Behalf of Foamex L.P., Decides to Increase the Cash Composition of the Foamex Stock Fund to 20 Percent.**

On September 22, 2005, a letter of direction was sent to Fidelity instructing it to increase the cash composition to 20 percent, subject to a minimum of 19.5 percent and a maximum of 20.5 percent.  *Exh. P*.  The decision to increase the cash composition to 20 percent was made by Greg Christian acting on behalf of Foamex L.P.  *Exh. D*, pp. 66-67; *Exh. H*, pp. 73-75.  The Benefits Committee was not involved in any capacity in increasing the cash composition of the Foamex Stock Fund to 20  percent.  *Exh. E*, pp. 27-28; *Exh. F*, pp. 26, 30; *Exh. G*, p. 18;  *Exh. H*, pp. 78-79, 172-73; *Exh. D*, p. 66.

**G.      Greg Christian or Tom McGinley, Acting on Behalf of Foamex L.P.,
Decides to "Omit Buys" within the Foamex Stock Fund.**

On September 29, 2005, a letter of direction was sent to Fidelity instructing it not to purchase any more shares of Foamex Stock within the Foamex Stock Fund. *Exh. Q.* The decision to "omit buys" was made either by Mr. McGinley or by Mr. Christian, on behalf of Foamex L.P. *Exh. H*, pp. 85-87; *Exh. D*, pp. 79-80. In any event, the Benefits Committee was not involved in the decision and instruction omitting buys. *Exh. D*, pp. 114-15; *Exh. E*, pp. 31-32; *Exh. F*, pp. 28-30; *Exh. G*, p. 19; *Exh. H*, pp. 86-87.

**H.      Greg Christian, Acting on Behalf of Foamex L.P., Decides to Increase
the Cash Composition of the Foamex Stock Fund to 50 Percent.**

On January 4, 2006, without the involvement of the Benefits Committee, Mr. Christian decided to close the Foamex Stock Fund and liquidate all of the shares of Foamex Stock from within the Fund. *Exh. D*, pp. 83, 88-89; *Exh. H*, pp. 117-18; *Exh. J*, p. 152. Two days later, at his direction, a letter was sent to Fidelity instructing it to increase the cash composition to 50 percent, subject to a minimum of 49 percent and a maximum of 51 percent. *Exh. R.* These decisions were made by Greg Christian acting for Foamex L.P., and were designed to phase in the complete liquidation of Foamex stock from the Foamex Stock Fund. *Exh. D*, pp. 98-99; *Exh. J*, pp. 155-56, 158; *Exh. D*, p. 104; *Exh. J*, pp. 35-36, 159.

The Benefits Committee was not involved in any capacity in deciding to liquidate all stock from the Foamex Stock Fund, nor was it involved in the decision to increase the cash composition of the Fund to 50 percent. *Exh. D*, pp. 89, 114; *Exh. H*, pp. 117-18, 126-27; *Exh. E*, pp. 33-34, 37; *Exh. F*, pp. 31-34; *Exh. G*, pp. 20-23.

At the time this decision was made, there were 588 participants in the Foamex Stock Fund, which held less than $30,000.00 in total assets. *Exh. J*, p. 151; *Exh. MM*; *Exh. DD*.

I.     **Greg Christian, Acting on Behalf of Foamex L.P., Decides to Increase the Cash Composition of the Foamex Stock Fund to 100 Percent.**

On January 20, 2006, a letter of direction was sent to Fidelity instructing it to liquidate all of the Foamex stock from the Foamex Stock Fund.  *Exh. S*.  This decision was made by Greg Christian acting in his capacity as an executive of the Foamex L.P.  *Exh. D*, pp. 106-07.   The Benefits Committee had nothing to do with the decision to liquidate the stock.  *Exh. E*, pp. 35-36, 38; *Exh. F*, pp. 31-33, 36; *Exh. G*, pp. 21-22.

Foamex L.P. also made the decision to eliminate the Foamex Stock Fund as an available investment option. *Exh. S*, p. 1 ("a decision has been made by Foamex L.P. to eliminate the Foamex Stock Fund as an investment option in the Plan."); *Exh. D*, pp. 106-07.  The Benefits Committee was not involved in this decision.  *Exh. D*, p. 113; *Exh. E*, pp. 33-34; *Exh. F*, pp. 31-32; *Exh. G*, pp. 21-22.

Neither the Plan nor the Trust Agreement was amended to permit the liquidation of Foamex stock within the Fund, or to reflect the elimination of the Foamex Stock Fund as an investment option, when this liquidation took place.  *See generally Exh. A; Exh. C; Exh. J*, pp. 184-85; *Exh. Z*, pp. 57, 202-04.

J.     **Greg Christian, Acting on Behalf of Foamex L.P., Decides to Reestablish the Cash Composition of the Foamex Stock Fund at 50 Percent.**

Only seven days after the Foamex Stock Fund had been completely converted into a cash fund, Mr. Christian, in his capacity as CRO of Foamex L.P., attempted to undo the sales.  *Exh. FF*.  Hurricanes that had hit the Gulf in August and September of 2005 had cut off the raw material to the polyurethane foam industry.  *Exh. D*, p. 115.  Foamex, however, had pre-purchased "a large quantity of raw materials, which put [Foamex] in a unique position to serve the industry, which precipitated a spike in the demand for Foamex products and the ability to raise prices."  *Id*., pp. 115-16.  This information began to filter into the market, and Foamex stock began to rise.  *Id*., p. 116.  After this rise had begun, Mr. Christian, on behalf of Foamex L.P., instructed

Fidelity to repurchase Foamex stock back into the Foamex Stock Fund on February 9, 2006, with a target of 50 percent, and a drift allowance of 10 percent. *Exh. T*; *Exh. H*, p. 152; *Exh. D*, pp. 116-17.   Consistent with his instructions, from the end of February until December 2006, the Fund was comprised of between 40 percent and 60 percent cash. *Exh. DD*.   The repurchase prices, however, were much higher than the sale prices of the stock. *Exh. CC*.   Again, the Benefits Committee was not involved in any capacity in resetting this cash target or drift allowance. *Exh. D*, pp. 117-18; *Exh. H*, pp. 152, 163, 172-73; *Exh. E*, p. 47; *Exh. F*, pp. 40-41; *Exh. G*, pp. 26-27.

### K.      The Stock Fund Is Closed On December 22, 2006.

Under the Seventh Amendment to the Trust Agreement dated December 22, 2006, Foamex L.P. and Fidelity amended the Trust Agreement to remove the Foamex Stock Fund as an investment option. *Exh. C,* p. FOAMEX000161.   The shares were liquidated and assets transferred into a money market fund. *Id*.

### III.  LAW AND ARGUMENT

ERISA imposes strict fiduciary duties upon plan fiduciaries.   ERISA § 404(a), 29 U.S.C. § 1104(a).   Fiduciaries that breach their duties are personally accountable to the Plan for all losses that they cause:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the Plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

ERISA § 409(a), 29 U.S.C. § 1109(a).  A claim for a breach of fiduciary duty arises under the civil enforcement provisions of ERISA, specifically ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

Under ERISA's statutory scheme, the elements of a breach of fiduciary duty claim consist of "(1) a plan fiduciary [who] (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007).

### A.      Foamex L.P. and Mr. Christian are Plan Fiduciaries.

The definition of a fiduciary under ERISA is broad:

> ERISA, however, defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, *see* 29 U.S.C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties – and to damages – under § 409.

*Mertens v. Hewitt Associates*, 508 U.S. 248, 262, 113 S.Ct. 2063, 2071 (1993) (emphasis in original).   Under ERISA, fiduciary status is conferred whenever a person or entity "exercises any authority or control respecting management or disposition" of plan assets.    ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).    Explicit authority is not a prerequisite.  *Srein v. Frankford Trust Co.*, 323 F.3d 214, 220-21 (3d Cir. 2003).   Rather, under this "functional fiduciary" standard, the question is whether the person or entity exercised actual control or authority over plan assets, not whether the plan documents purport to give it that control.  *In re Dynegy, Inc. ERISA Litig.*, 309 F.Supp.2d 861, 872-73 (S.D. Tex. 2004).   Thus, a person who takes action that affects plan assets, even if done without authority, will be deemed a fiduciary under ERISA.  *Olsen v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir. 1992).   This definition "is consistent with Congress' desire that ERISA protect 'the interests of participants in employee benefit plans and their beneficiaries,' 29 U.S.C. § 1001(b) (1988), because it imposes fiduciary status upon those who act like fiduciaries as well as those who actually are fiduciaries."  *Id*.  *See also Lieb v. Merrill Lynch, Pierce, Fenner & Smith*, 461 F. Supp. 951, 954 (E.D. Mich. 1978)

(where "the broker has usurped actual control over a technically non-discretionary account," the broker is an ERISA fiduciary liable for damages).

Mr. Christian, on behalf of Foamex L.P., has admitted to adjusting the cash target within the Foamex Stock Fund. *Exh. D*, pp. 35-36, 38-39, 65-67, 98-99. He admitted to directing the liquidation of the Foamex Stock Fund, rendering it a cash fund. *Exh. S*; *Exh. D*, pp. 104-07. He also admitted to directing, on behalf of Foamex L.P., the repurchase of Foamex stock. *Exh. D*, pp. 116-17; *Exh. T*. Finally, either Mr. Christian or Mr. McGinley, on behalf of Foamex L.P., directed Fidelity to "omit buys" of Foamex stock with the Stock Fund. *Exh. H*, pp. 85-87; *Exh. D*, pp. 79-80.

All of these actions constitute the exercise of "control respecting management or disposition of [plan] assets" rendering Mr. Christian and Foamex L.P. fiduciaries under ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).[4] Each decision necessarily affected plan assets:

> Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive.

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 94-95, 114 S. Ct. 517, 523-24, 126 L. Ed. 2d 524 (1993). *See also Srein,* 323 F.3d at 220-21 (any authority or control over plan assets renders one a fiduciary under ERISA); *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 275 (3d Cir. 2001) (". . . liability is created by subsection (i), which addresses fund assets and directs that fiduciary status be assigned to the extent that a person "exercises any authority or control respecting management or disposition of its assets.").

---

[4] Mr. Christian is also a fiduciary because he is a member of the Benefits Committee, which is the Named Fiduciary. ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002 (21)(A)(iii); 29 C.F.R. § 2509.75-5, FR-1.

As a matter of law, Mr. Christian and Foamex L.P. are "fiduciaries" under ERISA with respect to the conduct at issue in this action.[5]

**B.      Foamex L.P. and Mr. Christian Breached Their Fiduciary Duties.**

**1.      The First Breach:  Foamex L.P. and Mr. Christian Usurped the Authority of the Benefits Committee Under the Trust Agreement to Set the Target Cash Percentage in the Foamex Stock Fund.**

ERISA requires that plan identify "one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan."    ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  As the Department of Labor has explained, "[t]he purpose of this requirement [to identify a named fiduciary in the Plan] is to enable employees and other interested persons to ascertain who is responsible for operating the plan."  29 C.F.R. § 2509.75-5.  Under the Foamex Plan, the Benefits Committee was designated as the "Named Fiduciary" for "purposes of ERISA" and was given "complete authority to control and manage the operation and administration of the Plan."  *Exh. A*, p. 55, §§ 12.1, 12.2, 12.3; *Exh. C*, p. 1; *Exh. I*, p. 130; *Exh. Z*, p. 9.

Consistent with the Plan and ERISA, the Trust Agreement unambiguously placed the power to adjust the cash composition in the Foamex Stock Fund in the hands of the Named Fiduciary – the Benefits Committee.  *Exh. C*, p. FOAMEX 000302, § 4(e)

---

[5] In addition to being a fiduciary itself, Foamex L.P. is also liable for the acts of Mr. Christian under the doctrine of *respondeat superior*.  Mr. Christian was "principally the decision-maker on behalf of Foamex L.P."  *Exh. D*, p. 83.  It is undisputed that he took the challenged actions on behalf of Foamex L.P., and in his capacity as its CRO.  *Exh. D*, pp. 36, 38-39, 64-67, 98-99, 106-07, 116-17.  Foamex is therefore liable for his conduct.  *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986) ("Furthermore, if a beneficiary or participant can show that the plan fiduciaries breached their duties, he may also be able to recover damages, for the benefit of the plan, directly from the employer."); *Cannon v. MBNA Corp.*, 2007 WL 2009672, *3 (D. Del. 2007) ("Courts applying the *respondeat superior* doctrine have held that in order for the doctrine to apply in an ERISA case, an employee must breach its fiduciary duties while acting in the scope of employment.").

("The Named Fiduciary shall . . . establish and communicate to the Trustee in writing a target cash percentage . . . .").

In contrast, neither Foamex L.P. nor Foamex International had the authority to set the cash composition in the Foamex Stock Fund. *Exh. I*, p. 91; *Exh. Z*, pp. 12, 26, 30, 36, 51-52, 150, 192-93, 211. Foamex L.P., in fact, gave up that power. The original Trust Agreement authorized the Plan Sponsor, with Fidelity's agreement, to set the cash composition:

> Investments in the Stock Fund will consist primarily of shares of Sponsor Stock. However, in order to satisfy daily participant requests for exchanges, loans and withdrawals, the Stock Fund will also hold cash or other short-term liquid investments in an amount that has been agreed to in writing *by the Sponsor* and the Trustee.

*Exh. C*, p. 38 (Schedule H) (emphasis added). This appeared to conflict with other language in the original Trust Agreement that gave the Benefits Committee that power. *Exh. C*, p. 5, § 4(e). To clarify who had the authority, Foamex L.P. and Fidelity amended this provision in 2001 to **explicitly remove Foamex L.P.'s ability to participate in setting the cash target**. *Exh. C*, pp. FOAMEX 000310-12. This amendment simultaneously affirmed that only the Named Fiduciary had this power: "The Named Fiduciary shall, after consultation with the Trustee, establish and communicate to the Trustee in writing a target percentage and drift allowance for such short-term liquid investments." *Exh. C*, p. FOAMEX 000302. As Fidelity's Account Director admitted, Foamex L.P. "pass[ed] that right [to set the cash composition] on to the Plan administrator and the named fiduciary, the committee."[6] *Exh. I*, p. 91.

---

[6] Foamex L.P. theoretically could have amended the Plan and Trust Agreement (assuming Fidelity agreed), to transfer the right to set the cash composition back from the Benefits Committee to itself. It never did so. *Exh. Z*, pp. 30, 36 (absent amendment to the Plan, the Plan Sponsor had no authority under the Plan during the class period to direct Fidelity to change the cash composition or to liquidate the Stock Fund).

ERISA requires strict fidelity to the written Plan Documents. Pursuant to ERISA § 404(a)(1)(D), "[f]iduciaries are required to discharge their duties with respect to a plan . . . 'in accordance with the documents and instruments governing the plan insofar as such documents are consistent with the provisions of [ERISA].'" *Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 121 (3d Cir. 2002) (*quoting* 29 U.S.C. § 1104(a)(1)(D)). Put simply, fiduciaries are "obligated to comply with the terms of the plan." *DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997). As such, a fiduciary who acts outside the scope of his or her authority under the plan documents breaches his or her fiduciary duty under ERISA. *Leckey*, 501 F.3d at 223-25.

In *Leckey*, the plaintiff alleged that a fiduciary distributed trust assets in a form that was not authorized under the plan. *Id.* at 225. The fiduciary argued that even if the distribution was not authorized, he was absolved from liability because he acted in good faith and upon advice of counsel. *Id.* at 223. The district court agreed, and ruled that an ERISA breach of fiduciary duty claim premised on the lack of authority required a showing of bad faith. *Id.*

Following the comments to the RESTATEMENT (SECOND) OF TRUSTS § 201, the Third Circuit reversed, holding that evidence of bad faith is not required. *Id.* at 225. Rather, a fiduciary is strictly liable under ERISA for conduct that exceeds the authority granted to him under the governing documents:

> When . . . a trustee takes action that exceeds his authority, ***he is strictly liable for any loss*** (and accountable for any profit). While this may seem harsh, "[a] trustee who is in doubt as to the interpretation of the instrument can protect himself by obtaining instructions from the court."

*Id.* (*quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)) (emphasis added). As the court noted, this rule flows directly from the comment (b) to the RESTATEMENT:

> ***A trustee commits a breach of trust*** not only where he violates a duty in bad faith, or intentionally although in

good faith, or negligently, but also *where he violates a duty because of a mistake as to the extent of his duties and powers*.  This is true not only where his mistake is in regard to a rule of law, whether statutory or common-law rule, but also where he interprets the trust instrument as authorizing him to do acts which the court determines he is not authorized by the written instrument to do.  In such a case, he is not protected from liability merely because he relied upon the advice of counsel.  If he is in doubt as to the interpretation of the instrument, he can protect himself by obtaining instructions from the court.  *The extent of his duties and powers is determined by the trust instrument and the rules of law which are applicable, and not by his own interpretation of the instrument or his own belief as to the rules of law*.

*Id*. at 224 (*quoting* RESTATEMENT (SECOND) OF TRUSTS § 201, comment (b) (1959)) (emphasis added).  (The court also made it clear that it is never, under any circumstance, permissible to breach the clear language of a plan.  *Id*. at 225.)

Mr. Christian went rogue.  He, on behalf of Foamex L.P., acted outside the scope of his authority when he directed the change in the cash composition of the Foamex Stock Fund.  In contrast, the Benefits Committee had utterly nothing to do with any of these decisions.  *Exh. E*, pp. 24-25, 27-28, 31-32, 34-38, 47; *Exh. F*, pp. 22-23, 26, 28-34, 36, 40-41; *Exh. G*, pp. 14-15, 18-22, 26-27; *Exh. H*, pp. 47-48, 78-79, 86-87, 126-27, 152, 163, 172-73; *Exh. D*, p. 66, 114-15, 117-118.  On the contrary, the Benefits Committee had decided, in its July 13, 2005 meeting, to affirmatively permit existing participants to

continue to remain invested in the Foamex Stock Fund, which was operating under a 5 percent cash target.[7]

As a matter of law, Mr. Christian and Foamex L.P. breached their fiduciary duties to Stanford and the class by deciding, authorizing and directing the changes in the cash composition in the Foamex Stock Fund on July 13, 2005 (5 to 7 percent), September 22, 2005 (7 to 20 percent), September 29, 2005 (omitting buys), January 6, 2006 (20 to 50 percent), January 20, 2006 (50 to 100 percent) and February 9, 2006 (100 to 50 percent) when they had no authority to do so. *Leckey*, 501 F.3d at 223-25. Summary judgment on liability should be entered against defendants Christian and Foamex L.P. for this conduct.

**2.    The Second Breach:  Foamex L.P. and Mr. Christian Usurped the Authority of the Benefits Committee Under the Plan to Select the Investment Options.**

All the Plan Documents specifically gave the participants the right to select among a menu of investments, each with a different investment objective. *Exh. A*, p. FOAMEX000098;  *Exh. B*,  pp. 6-7;  *Exh. C*,  p. 32.    Throughout 2005 and until

---

[7] Under ERISA, the Benefits Committee's decision to keep the Foamex Stock Fund open and invested 95 percent in Foamex Stock for those already invested is presumptively reasonable. *Edgar v. Avaya, Inc.,* 503 F.3d 340, 345 (3d Cir. 2007); *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir. 1995) ("[A] . . . fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision.").

Stanford and the class do not seek to rebut this presumption.  The class has no issue with the Benefits Committee's decision to freeze the fund to new investments, while allowing participants with assets already invested in the Foamex Stock Fund to remain invested in a stock fund that held only five percent cash. *Exh. I*, p. 35 (Mr. Barnes unable to identify any risk to the fund if the Fund was simply left alone in July 2005).  The participants were appropriately warned about the risks of staying in the Foamex Stock Fund. *Exh. EE; Exh. M.* In fact, many participants did not want to take the risk, and exited the Foamex Stock Fund in July and August of 2005. *Exh. W.*  Those that remained are deemed to have fully understood that the fund was risky. *See Moench,* 62 F.3d at 570 (". . . we point out that the participants in the plan effectively became investors in [the employer] and thus should have expected to run risks inherent in that role.").  By their explicit directions, those participants – such as Mr. Stanford – wanted to be invested in Foamex stock, not cash, despite the risk.  If the participants wanted to split their investment between cash and Foamex stock, then they could have (and some may have) transferred some portion of their assets from the Foamex Stock Fund to money market fund.

December 22, 2006, the Foamex Stock Fund was just such an option.  *Exh. C*, pp. 5, 23; *Exh. C,* p. FOAMEX000161.

Under the terms of the Plan Documents, the Foamex Stock Fund was designed to track the movement of Foamex stock.  *Exh. A*, p. 6, § 1.32; *Exh. B*, p. 7; *Exh. C,* p. FOAMEX00302, § 4(e).  It was required to hold Foamex stock, and was only permitted to hold cash in an amount set by the Named Fiduciary for the sole purpose of providing liquidity for participant exchanges and withdrawals.  *Exh. C,* p. FOAMEX000302 (cash in fund must be "designed" to meet exchange or withdrawal requests).  As this Court previously recognized, the provision allowing the fund to hold cash is narrow.  It only permits the Stock Fund to hold cash in order to satisfy daily exchange requests:

> A restriction exists – the liquid investments must be calculated to satisfy participant requests for exchanges, loans, and withdrawals.

Order 8/20/08 (Dkt. No. 59), p. 15.[8]

When a participant directed his or her assets to a specific investment option – such as the Foamex Stock Fund – the Plan required that those assets be invested in that fund.  *Exh. A*, p. FOAMEX000098, § 4.4 (participant's contribution "shall be invested in the fund or funds selected" by that participant).[9]  Under the Plan, the Benefits Committee was given the authority to add or change the funds, but only upon providing advance notice to the participants:

> The Plan Administrator may change or add investment funds from time to time.  Each Member shall be notified of a

---

[8] The question of whether the Foamex Stock Fund could hold cash for any reason other than to satisfy daily exchange requests was extensively briefed in connection the Defendants' Motions to Dismiss.  *See Stanford's Consolidated Opposition to Defendants' Motions to Dismiss* (Dkt. No. 35), pp. 11-12 (citing cases).

[9] This was modified by the Fifth Amendment to the Trust Agreement, which provided that new money after July 20, 2005 could not be directed into the Foamex Stock Fund.  *Exh. C,* p. FOAMEX000159.  It did not, however, affect the money that had previously been directed into the Foamex Stock Fund.  *Id.*  *See also Exh. H*, p. 41; *Exh. G*, pp. 13-14; *Exh. F*, pp. 20-21; *Exh. E*, pp. 22-23; *Exh. D*, pp. 30-31; *Exh. BB.*

> change in Investment Funds at least thirty (30) days prior to the Valuation Date on which the change is to occur. In the event of a change in the available investment options, the Plan Administrator shall establish reasonable procedures for the transfer of funds.

*Exh. A*, p. FOAMEX000098.

In short, until the Trust Amendment freezing the Stock Fund to new money, the Plan Documents explicitly permitted participants to direct their contributions into the Foamex Stock Fund, a fund that was required to hold Foamex Stock. Even after the amendment, participants were entitled to have their pre-amendment direction honored, and they were entitled to at least 30 days prior notice of any change.[10]

The Benefits Committee never modified or eliminated the Foamex Stock Fund. To the contrary, at its July 13, 2005 meeting the Committee specifically decided that participants with existing balances in the Foamex Stock Fund would be permitted to keep those assets invested, if they chose to do so. *Exh. H*, pp. 40-41; *Exh. G*, pp. 13-14;

---

[10] Under ERISA, no fiduciary, including the Benefits Committee as Named Fiduciary, or Mr. Christian or Foamex L.P. as usurping "functional" fiduciaries, could so drastically change the cash composition of the Foamex Stock Fund without prior notice to Plan participants and beneficiaries. The changes to the cash component without advance notice to participants violates ERISA § 404(a)(1)(A) and (B), 29 U.S.C. §1104(a)(1)(A) and (B), which require fiduciaries to act prudently and solely in the interest of the plan's participants and beneficiaries.

When an ERISA plan assigns investment responsibilities to the plan's participants and beneficiaries, it is the "view of the Department [of Labor] that plan fiduciaries must take steps to ensure that participants and beneficiaries are made aware of their rights and responsibilities with respect to managing their individual plan accounts . . . ." Preamble, Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans; Final Rule, 75 Fed. Reg. 64910 (October 20, 2010). Although the Department's specific *interpretive* regulations, which are effective December 10, 2010, prescribe only rules that specifically relate to the timely disclosure of investment options that are assumed not to have changed internal composition (*i.e.*, requiring disclosure *when a participant first becomes eligible to direct investments* and annually thereafter, 29 C.F.R. § 2550.404a–5 (c)(1)), a fiduciary's already existing obligation under ERISA § 404(a)(1)(A) and (B) to notify participants and beneficiaries cannot be any less when the very composition of the investment option changes (here, the Foamex Stock Fund's transformation from a passively managed unitized stock fund with a minimal cash content to an actively managed fund investing either substantially in cash, even in all cash). *Cf.* 29 C.F.R. § 2550.404a–5 (d)(1)(i)(C) and (D) (requiring the fiduciary to disclose the "type or category of the investment (e.g., money market fund, balanced (stocks and bonds) fund, largecap fund)" and the "type of management utilized by the investment (e.g., actively managed, passively managed)."

*Exh. F*, pp. 20-21; *Exh. E*, pp. 22-23; *Exh. D*, pp. 30-31.   The subsequent communications to the participants informed them that "[m]oney currently in the Foamex Stock Fund will not be affected" by the decision to freeze the Stock Fund to new money.   *Exh. BB*, p. FOAMEX000485.   *See also Exh. EE* ("Money that is currently in the Foamex Stock Fund may remain in the fund . . . ."). The Trust Agreement and Plan were both amended in such a way so as not to affect participants with existing balances in the Foamex Stock Fund.   *Exh. A*, p. FOAMEX000098; *Exh. C*, p. FOAMEX000159.

The requirements that participants' directions be honored, and that their funds be invested in the Foamex Stock Fund pursuant to their directions, are "hard wired" into the Plan Documents:

> The Plan documents, considered as a whole, compel that the Common Stock Fund be available as an investment option for employee-participants . . . . These mandatory provisions are embedded in the Plan and could not be  terminated or modified absent a Plan amendment.

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 249-50 (5th Cir. 2008).

Mr. Christian, in fact, knew that amendments to the Plan and Trust Agreement would be necessary to properly remove the Foamex Stock Fund as an investment option.   *Exh. D*, pp. 101-02.   *See also Exh. J*, p. 161 (Fidelity: "As part of the fund closing process a trust amendment would have been required."). Yet, without any amendments in place, Mr. Christian eliminated the Foamex Stock Fund, as defined by all the Plan Documents, as an investment option.   *See Exh. J*, pp. 184-85; *Exh. H*, p. 147. The Foamex Stock Fund was first turned into a blended stock/cash fund, then it was turned into an all cash fund, before returning back to a 50/50 stock/cash fund.   In short, the Foamex Stock Fund was replaced with an actively managed fund that held only cash, or cash and varying (and changing) amounts of Foamex Stock.   Whatever this fund was, it certainly was not the "Foamex Stock Fund" as defined in any of the Plan Documents.

The decision to, in effect, remove the Foamex Stock Fund by stealth –by altering its composition in a way that conflicted with its definition – usurped the Benefits Committee's exclusive authority to eliminate the Fund.  On the contrary, the Benefits Committee specifically decided not to close the Foamex Stock Fund at its July 13, 2005 meeting, and affirmed existing participants' right to remain invested in the Stock Fund.  Mr. Christian had no authority to override both the Benefits Committee's decision, and the participants' specific directions, forcing participants (without their knowledge or consent) into a cash managed fund.[11]   *Leckey*, 501 F.3d at 223-25.  Summary judgment on liability should be entered against defendants Christian and Foamex L.P. for this conduct.

### 3.   The Third Breach:  Foamex L.P. and Mr. Christian Breached Their Fiduciary Duties By Ignoring Plan Terms.

Even if Foamex L.P. and/or  Mr. Christian had the authority to adjust the cash composition and liquidate the Foamex Stock Fund without amending the Plan Documents – and they did not – the Plan and Trust Agreement do not permit the Foamex Stock Fund to hold cash for any reason other than to facilitate transfers and exchanges.  Foamex L.P. and Mr. Christian breached their fiduciary duties because the increases in the cash target, as well as the liquidation, were not made for this purpose.

The standard of prudence under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), focuses on the process undertaken in fiduciary decision-making:

---

[11] Foamex L.P. theoretically could have amended the Plan and Trust Agreement (assuming Fidelity had agreed), to eliminate the Foamex Stock Fund in 2005 or early 2006.  In fact, in December of 2006, nearly a year later, Foamex L.P. and Fidelity did agree to eliminate the Foamex Stock Fund as an investment option.  They appropriately amended the Trust Agreement to make this change.  *Exh. C,* p. FOAMEX000161.  (They had previously eliminated other investments options – all by an appropriate amendments. *Exh. C*, pp. FOAMEX000155, 158.)  However, no amendment to either the Plan or the Trust was in place when the Foamex Stock Fund was hedged with cash or liquidated in 2005 through December 22, 2006.  *See Exh. Z*, pp. 30, 36 (absent amendment to the Plan, the Plan Sponsor had no authority under the Plan during the class period to direct Fidelity to change the cash composition or to liquidate the Stock Fund).

> Consistent with these common law principles, the courts measure section 1104(a)(1)(B)'s "prudence" requirement according to an objective standard, ***focusing on a fiduciary's conduct in arriving at an investment decision***, not on its results, and ***asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment***. In addition, the prudence requirement is flexible, such that the adequacy of a fiduciary's independent investigation and ultimate investment selection ***is evaluated in light of the "'character and aims'" of the particular type of plan he serves***.

*In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434-35 (3d Cir. 1996) (citations omitted) (emphasis added).

A fiduciary does not meet this standard of conduct by simply following the advice of a consultant. *Id.* at 435 ("[W]e believe that ERISA's duty to investigate requires fiduciaries to review the data a consultant gathers, to assess its significance and to supplement it where necessary . . . .").

Here, there is no evidence that Mr. Christian ever considered whether the various cash targets he was setting bore any relationship to the liquidity needs of the Foamex Stock Fund. At best, he testified that he simply followed recommendations made by Fidelity.[12] *Exh. D*, pp. 37, 67, 85, 97-98, 136-37. However, he never received any data concerning the actual demand for withdrawals or exchanges. *Exh. D*, pp. 49, 70-71, 74-75, 76; *Exh. H*, pp. 74, 80-81, 162-63. There is no evidence that he did anything to confirm that Fidelity's recommendations were, in fact, necessary to provide liquidity. Specifically, he testified that he had no idea why the 20 percent figure was used in September 2005, as opposed to some other figure. *Exh. D*, pp. 67, 70-71. He admitted that his decisions setting the cash targets at 50 percent, and liquidating the Foamex Stock, had nothing to do with participant demands for exchanges and withdrawals. *Exh. D*, pp. 87-88, 97, 125-26. *See also Exh. J*, pp. 28, 35-36, 48, 158-59; *Exh. H*, p. 155. It

---

[12] Fidelity denies that it made any recommendations. *Exh. J*, pp. 21-23, 24-25, 34-36, 44-48, 94-95. For purposes of this motion, plaintiff will assume that Mr. Christian's testimony is accurate.

was an effort to actively manage the Stock Fund.  *Exh. J*, p. 181.  The letter omitting buys does not even purport to justify that action on liquidity needs.  *Exh. Q*.  These actions were not even minimally designed to set an appropriate cash target "in light of the character and aims" of the Foamex Stock Fund.  *In re Unisys Sav. Plan Litig.*, 74 F.3d at 434-35.

A review of the actual data of demand in the Foamex Stock Fund confirms this result.  *Id.* at 436 ("the thoroughness of a fiduciary's investigation is measured not only by the actions it took in performing it, but by the facts that an adequate evaluation would have uncovered").  At the time Mr. Christian was increasing the cash target to 50 percent and then liquidating the Stock Fund, there was little or no demand to withdraw assets from the Stock Fund.  *Exh. W*; *Exh. H*, pp. 136-37, 150, 160.  The following chart, derived from the data in *Exh. W*, illustrates the lack of any significant demand:

| Month | Net Withdrawals in Month | % of Fund's Net Assets Withdrawn in *Entire Month* | Average % of Fund Assets Withdrawn *per trading day* (based on 20 trading days a month) | Foamex Stock Fund Cash Composition |
|---|---|---|---|---|
| October 2005 | $3,323.51 | 5.38% | **0.27%** | Daily cash component increased to 20% on 9/22/05.<br><br>Daily cash component increased on 9/29/05: "…no additional shares of Foamex Stock (FMXIQ) should be purchased." |
| November 2005 | $1,818.80 | 3.70% | **0.19%** | >20% cash target maintained |
| December 2005 | $268.16 | 0.80% | **0.04%** | >20% cash target maintained |
| January 2006 | $428.67 | 2.32% | **0.12%** | Daily cash component increased to 50% on 1/6/06.<br><br>Daily cash component increased to 100% by 1/30/06. |
| February 2006 | $813.36 | 3.73% | **0.19%** | Daily cash component reset to 50% on 2/9/06. |
| March 2006 | $475.52 | 1.32% | **0.07%** | 50% cash target maintained |
| April 2006 | $5,535.45 | 2.51% | **0.13%** | 50% cash target maintained |

| Month | Net Withdrawals in Month | % of Fund's Net Assets Withdrawn in *Entire Month* | Average % of Fund Assets Withdrawn *per trading day* (based on 20 trading days a month) | Foamex Stock Fund Cash Composition |
|---|---|---|---|---|
| May 2006 | $4,662.94 | 2.29% | **0.11%** | 50% cash target maintained |
| June 2006 | $456.07 | 0.20% | **0.01%** | 50% cash target maintained |
| July 2006 | $2,427.04 | 1.06% | **0.05%** | 50% cash target maintained |
| August 2006 | $3,552.00 | 1.61% | **0.08%** | 50% cash target maintained |
| September 2006 | $6,631.28 | 2.98% | **0.15%** | 50% cash target maintained |
| October 2006 | $3,477.47 | 1.30% | **0.07%** | 50% cash target maintained |
| November 2006 | $8,8697.00 | 3.60% | **0.18%** | 50% cash target maintained |
| December 2006 | All | All | All | Fund Terminated on 12/ 22/06. |

Even with respect to September 2005, when nearly 40 percent of the Fund was withdrawn, there was no need to hold 20 percent cash to meet *daily* participant requests. With 21 trading days in September 2005, the average daily demand was less than 2 percent of the total Fund assets. *Exh. W.* Likewise, the average daily demand for withdrawals averaged less than 4 percent in August of 2005, and less than 2 percent in July of 2005.[13] *Id.*

As a result, even if Mr. Christian, acting for Foamex L.P., had the authority to set the target cash component, he breached his fiduciary duty by failing to go through an appropriate process to arrive at a cash target in an amount "designed" to meet daily withdrawal requests. *See In re Unisys Sav. Plan Litig.*, 74 F.3d at 434-35.

**C.    The Plan Sustained Losses As A Result of the Breaches of Duty.**

This action is brought on behalf of the entire Plan, and any recovery will inure to the Plan's benefit. *McMahon v. McDowell*, 794 F.2d 100, 109 (3d Cir. 1986).

---

[13] Moreover, even if the demand for withdrawals exceeded the cash held in the fund on a given day, the worst thing that happens is that participants wait a few days for their trade to settle as Foamex shares are sold in the market. *Exh. H*, pp. 202-03; *Exh. I*, pp. 21, 35-36. This potential delay was communicated to participants who invested in the Foamex Stock Fund. *Exh. B*, p. 7.

Recovery is therefore based on losses suffered by the Plan. *See In re Shering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 235 (3d Cir. 2005); *Briefer v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007) (losses in a § 502(a)(2) claim alleging fiduciary misconduct "will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA"); *In re Enron*, 2006 WL 1662596, *4 (S.D. Tex. 2006) (same).

The Plan's losses are computed by calculating what the Foamex Stock Fund would have held "but for" the breaches of duty. This includes all of the profits that would have been gained in the Plan by keeping Foamex stock in the Foamex Stock Fund at 95 percent of the Fund's value, the pre-breach level:

> Contrary to respondents' argument, however, § 502(a)(2) encompasses appropriate claims for "lost profits." Under the common law of trusts, which informs our interpretation of ERISA's fiduciary duties, trustees are "chargeable with ... any profit which would have accrued to the trust estate if there had been no breach of trust," including profits forgone because the trustee "fails to purchase specific property which it is his duty to purchase."

*LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 263 n.4, 128 S. Ct. 1020, 1029 n.4 (2008) (citing 1 RESTATEMENT (SECOND) TRUSTS § 205) (citations omitted). *See also* RESTATEMENT (SECOND) OF TRUSTS § 205 (losses include "any loss or depreciation in value of the trust estate resulting from the breach of trust" and "any profit which would have accrued to the trust estate if there had been no breach of trust."). *Id.*, comment (c) ("If the trustee commits a breach of trust, he is chargeable with any profit which would have accrued to the trust estate if he had not committed such breach of trust."); *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) ("One appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust."). As this Court noted:

> Further, if the Plan were to recover pursuant to § 409, distribution of the recovery to Plan participants can be

accomplished with a class-wide metric that compares: the actual value of a member's investment in the Fund to the value of the Fund had defendants not engaged in the Challenged Transactions.

Order dated 9/24/09 (Dkt. No. 99), p. 22.

Given Foamex's stock meteoric rise – around 20,000 percent in 2006, from $.01 to $.02 in January to over $4.00 in December – the fact of damage to the Plan is manifest. *Exh. CC.* "But for" the unauthorized increases in cash (and total liquidation), the Foamex Stock Fund would have held only 5 percent cash – the original target cash percentage. With 95 percent of the fund's value in stock, the Plan would have realized far more profits than what actually occurred, with the fund holding more (and for a period of time, all) cash. The loss is heightened by the fact that the complete liquidation of the stock took place when the share price was only $.01 a share, but the repurchase prices occurred when the stock was trading between $.04 and $.06. *Exh. DD.*[14] As Mr. McGinley testified, "it was quite clear that we were receiving money – money market returns in the Foamex Stock Fund" at the same time Foamex stock was rocketing. *Exh. H*, pp. 192-3; *Exh. DD*.

## IV.  CONCLUSION

Mr. Christian, on behalf of Foamex L.P., usurped the Benefits Committee's authority. He engaged in conduct which was inconsistent with the terms of the Plan Documents, and caused the Plan to sustain a multi-million dollar loss. He, and Foamex L.P., must now be held to account for that conduct, and that loss. Partial summary judgment in favor of the class should be entered on liability.

---

[14] The Class's expert has calculated those losses at $3,972,566.43, excluding interest. *Exh. II*, p. 7. This motion does not seek entry of judgment of a money judgment in that amount, only an order finding that Mr. Christian and Foamex breached their fiduciaries duties under ERISA, and that the Plan is entitled to recover its losses as a result of those breaches. The exact amount of that loss, interest, and fees under ERISA are reserved for later adjudication, as are Plaintiffs' other counts in his Third Amended Complaint.

DATED:  January 24, 2011.

SIRIANNI YOUTZ SPOONEMORE

BY:    /s/ Richard E. Spoonemore
Richard E. Spoonemore  (WSBA #21833)
*Admitted Pro Hac Vice*
719 Second Avenue, Suite 1100
Seattle, WA  98104
Tel. (206) 223-0303; Fax (206) 223-0246
rspoonemore@sylaw.com

EKMAN, BOHRER & THULIN, P.S.
Charles H. Thulin  (WSBA #9039)
*Admitted Pro Hac Vice*
220 W. Mercer Street, Suite 400
Seattle, WA  98119
Tel. (206) 282-8221; Fax (206) 285-4587
c.thulin@ekmanbohrer.com

JENNINGS SIGMOND, P.C.
Kent Cprek (PA ID #40806)
510 Walnut Street, Suite 1600
Philadelphia, PA  19106-3683
Tel. (215) 351-0615; Fax (215) 922-3524
usdc-edpa-erisa@jslex.com

Counsel for Plaintiff William Stanford, Jr.

## CERTIFICATE OF SERVICE

I certify, under penalty of perjury, that on January 24, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that a true and correct copy of the foregoing was served upon the following by ECF:

- **ROSEMARY J. BRUNO**
  rosemary.bruno@bipc.com, linda.boccino@bipc.com

- **BRIAN CASAL**
  brian.casal@bipc.com, marjorie.harms@bipc.com

- **AMY COVERT**
  acovert@proskauer.com

- **KENT CPREK**
  usdc-edpa-erisa@jslex.com

- **JOHN A. GOODMAN**
  john.goodman@bipc.com, elizabeth.lychenheim@bipc.com, betty.reznicek@bipc.com

- **BARBARA W. MATHER**
  matherb@pepperlaw.com

- **SARA BETH RICHMAN**
  richmans@pepperlaw.com, uholikd@pepperlaw.com

- **CHARLES F. SEEMANN , III**
  cseemann@proskauer.com, jrichie@proskauer.com, kdipaola@proskauer.com

- **HOWARD SHAPIRO**
  hshapiro@proskauer.com

- **MICHAEL D. SPENCER**
  mspencer@proskauer.com, jrichie@proskauer.com, tneville@proskauer.com

- **RICHARD E. SPOONEMORE**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, theresa@sylaw.com

- **CHARLES H. THULIN**
  c.thulin@ekmanbohrer.com, c.jones@ekmanbohrer.com

- **MARSHALL WALTHEW**
  walthewm@pepperlaw.com, mocharnd@pepperlaw.com

THIS DOCUMENT HAS BEEN FILED ELECTRONICALLY AND IS AVAILABLE FOR VIEWING AND DOWNLOADING FROM THE ECF SYSTEM.

DATED:  January 24, 2011.

BY:   _/s/ Richard E. Spoonemore_
Richard E. Spoonemore  (WSBA #21833)
*Admitted Pro Hac Vice*