# APPENDIX 1

# AGREEMENT TO SETTLE CLAIMS
### *Stanford v. Foamex L.P. et al.*, No. 07-cv-04225,
### United States District Court for the Eastern District of Pennsylvania

This Agreement to Settle Claims ("Agreement") is between the plaintiff "Class" (as defined in ¶1.4), on the one hand, and defendants Foamex L.P., Gregory J. Christian, K. Douglas Ralph, Stephen Drap, George L. Karpinski ("Foamex Defendants," as further defined below) and Fidelity Management Trust Co. ("Fidelity," as further defined below). The Foamex Defendants and Fidelity are referred to collectively as the "Defendants," and Plaintiff and Defendants are referred to collectively as the "Parties." This Agreement is intended to implement complete and reciprocal releases between and among the Plaintiff, the Class (defined below), the Foamex Defendants and Fidelity, and is a full expression of the agreements between the Parties.

## RECITALS

This Agreement is made with reference to the following facts:

1.     Plaintiff William Stanford, Jr. commenced an action on July 9, 2007, in the Western District of Washington against the Foamex Defendants and Fidelity under section 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2), for losses sustained by the Foamex L.P. Savings Plan as a result of the liquidation of the Foamex Stock Fund ("Fund") in January 2006 and certain adjustments to the fund's cash target.   The case was transferred to the Eastern District of Pennsylvania on September 28, 2007.

2.     On September 24, 2009, the Court granted Plaintiff's motion for class certification. *See Stanford v. Foamex L.P.*, 263 F.R.D. 156 (E.D. Pa. 2009).

3.     On November 28, 2011, the Parties mediated this action before the Hon. Diane M. Welsh (Ret.), a former United States Magistrate Judge, who presently works with JAMS in Philadelphia, Pennsylvania.   After engaging in extensive, arms-length negotiations, including exchanging mediation briefs addressing the Parties' respective factual and legal arguments, the Parties agreed to settle their dispute.

4.     Based on extensive analysis of the facts and the law applicable to plaintiff's and the Class members' claims, and taking into account the extensive burdens and expense of litigation, including the risks and uncertainties associated with protracted trials and appeals as well as the fair, cost-effective and assured method of resolving the claims of the Class, Plaintiff and Class Counsel have concluded that this Agreement provides substantial benefits to the Class and is fair, reasonable, adequate and in the best interests of the Class.

5.     Defendants have similarly concluded that this Agreement is desirable in order to avoid the time, risk and expense of defending litigation, and to resolve finally and completely the claims of Plaintiff and members of the Class, and any potential cross-claims.

**AGREEMENT**

1. **Definitions.**

1.1 *"Action"* shall mean: *Stanford v. Foamex L.P., Fidelity Management Trust Co., K. Douglas Ralph, Stephen Drap, Gregory J. Christian and George L. Karpinski,* No. 07-cv-04225, an action pending in the United States District Court for the Eastern District of Pennsylvania.

1.2 *"Agreement Execution Date"* shall mean: the date on which this Agreement is fully executed.

1.3 *"Case Contribution Award"* shall mean: any monetary amount awarded by the Court in recognition of the Named Plaintiff's assistance in the prosecution of this Action.

1.4 *"Class"* shall mean: the class certified by the Court in its Order dated September 24, 2009, as follows:

> All individuals invested in the Foamex Stock Fund on September 22, 2005, except individuals who were members of the Foamex Benefits Committee at any time between September 22, 2005 and December 31, 2006, the members of their immediate families, and their successors or assigns.

*Stanford v. Foamex L.P.,* 263 F.R.D. 156, 175 (E.D. Pa. 2009).

1.5 *"Class Counsel"* shall mean: the attorneys appointed as class counsel by the Court's Order dated September 24, 2009 and their respective firms.

1.6 *"Class Members"* shall mean: those individuals who comprise the Class.

1.7 *"Court"* shall mean: the United States District Court for the Eastern District of Pennsylvania.

1.8 *"Effective Date of Settlement"* shall mean: the date on which all of the conditions to settlement set forth in section 2 have been fully satisfied or waived.

1.9 *"Fidelity"* (or, to the extent applicable to Fidelity, the term "Defendants") means Fidelity Management Trust Company, its parents, subsidiaries, affiliates, successors, assigns, members, managers, partners, insurers, and their officers, directors, employees, attorneys and any other agent(s) of any such entity.

1.10 *"Final"* shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceeding for review ("Review Proceeding") has expired without the initiation of a Review

Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and final disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.11  *"Foamex Defendants"* means Gregory J. Christian, K. Douglas Ralph, Stephen Drap, and George L. Karpinski; Foamex L.P., its parents, subsidiaries and/or affiliates; and the successors, assigns, officers, directors, employees, attorneys and any other agent(s) of any such natural person or entity, and the current and former trustees, committees (and its members) or administrators of any pension or other benefit plan, such as the Plan, applicable to the employees or former employees of any of them, in their official and individual capacities, and shall include their respective insurers, including Payor, and reinsurers.

1.12  *"Named Fiduciary"* shall mean the person(s) and/or entity(-ies) with authority to direct Fidelity under the terms of the Plan documents and consistent with the provisions of ERISA §403(a)(1).

1.13  *"Named Plaintiff"* shall mean: William Stanford, Jr.

1.14  *"Net Settlement Amount"* shall mean:  the Settlement Amount minus Court-awarded attorney fees, costs, expenses, costs of administration, costs of notice, any Case Contribution Amount, and any other amount approved by the Court to be deducted from the Settlement Amount.

1.15  *"Payor"* shall mean Chubb & Son, a division of Federal Insurance Company, which is the issuer of the policy of insurance for the claims asserted by Plaintiff, and its parents, subsidiaries and/or affiliates; and the successors, assigns, insurers, officers, directors, employees, attorneys and any and all other agent(s) of any such natural person or entity.

1.16  *"Plan"* shall mean: The Foamex L.P. Savings Plan.

1.17  *"Plan of Allocation"* shall mean: the method of distributing, and the amount of the distribution, of the Net Settlement Amount to Class Members through the Plan as defined in section 7, *below*. It is specifically agreed and understood that development of the Plan of Allocation is the sole responsibility of Class Counsel, and that the Foamex Defendants and Fidelity will have no responsibility for determining how the Net Settlement Amount is calculated and/or allocated between and among Named Plaintiffs and/or Class Members.

1.18  *"Released Claims"* shall mean: subject to section 8 below, any and all claims of any nature whatsoever (except for claims arising from a breach of this Agreement) pertaining to any claims asserted by Plaintiff and the Class in the Action, or claims that could have been asserted by Plaintiff and the Class in the Action, including claims for any and all losses

(including "losses to the plan" within the meaning of Section 409 of ERISA), opportunity losses, damages, attorneys' fees, costs, expenses, contribution, indemnification or any other type of legal or equitable relief. This provision is not intended to limit in any way the release of claims between and among the Foamex Defendants and Fidelity, as contemplated in Section 3.3, *below*.

1.19   "*Releasees*" shall mean: Defendants and their Successors-in-Interest and Representatives.

1.20   "*Representatives*" shall mean: representatives, attorneys, agents, directors, officers, employees, insurers and reinsurers.

1.21   "*Settlement*" shall mean: the settlement to be consummated under this Agreement.

1.22   "*Settlement Amount*" shall mean:  the total amount of settlement described in Section 6.1, *i.e.*, $3,600,000.00

1.23   "*Successor-in-Interest*" shall mean: a person's estate, legal representatives, heirs, successors or assigns, and any other person who can make a legal claim by or through such person.

2.   **Conditions to Effectiveness of the Settlement.**

2.1   *General.*  The Settlement provided for in this Agreement shall not become binding unless and until each and every one of the following conditions in sections 2.2 through 2.6 have been satisfied or deemed waived by the Court.

2.2   *Court Approval.*  The Settlement contemplated under this Agreement shall have been approved by the Court, as provided herein.  The Parties agree that the Court should approve the terms of the Agreement and the Settlement contemplated hereunder, and Defendants hereby consent to the filing of the motion(s) described in Section 2.2.1 and 2.2.3, *below*, as unopposed by all Defendants.  Except as otherwise provided herein, the Parties agree to undertake their best efforts, including promptly taking all steps and efforts contemplated by the Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Agreement) or otherwise, to carry out this Agreement, including the following:

2.2.1   *Motion for Preliminary Approval and Notices.*  The Court shall have preliminarily approved the Agreement ("Preliminary Approval Order") and authorized the issuance of notice to the Class.  Class Counsel shall make a motion for preliminary approval and authorization to send notice ("Preliminary Motion").  Defendants shall have no responsibility for such a filing, but must approve the

pleading prior to filing, provided that such approval shall not be unreasonably delayed or withheld. The Court must conclude that the notice to be sent fairly and adequately describes the terms of the Agreement, gives notice of the time and place of the hearing for final approval of the Settlement, describes how a Class Member may comment on, object to, or support the Settlement. The Court must also conclude that the manner of providing the notice to Class Members comports with the requirements of Fed. R. Civ. P. 23 and other applicable law.

2.2.2   *Issuance of Class Notice.*  On the date and in the manner set by the Court in its Preliminary Approval Order, Class Counsel shall have caused the Court-approved notice to be delivered to Class Members in the form and manner approved by the Court.   The Parties shall confer in good faith with regard to the form of notice. The Foamex Defendants and/or Fidelity shall provide Class Counsel with the last known participant addresses and contact information in electronic spreadsheet format.

2.2.3   *Fairness Hearing.*  On the date set by the Court in its Preliminary Approval Order, Class Counsel will request final approval of the settlement at the hearing ("Fairness Hearing") during or after which the Court will determine by order (the "Final Order") whether: (i) the proposed Settlement between the Parties is fair, reasonable and adequate and should be approved by the Court; (ii) final judgment should be entered ("Judgment"); (iii) the requirements of FRCP 23 and due process have been satisfied in connection with the distribution of the notice; (iv) the Plan of Allocation is approved; (v) reimbursement of notice and associated expenses to Class Counsel should be made, and the amount of such expenses; (vi) to award a Case Contribution Award and if so, the amount; (vii) to award attorney fees, costs, and expenses to Class Counsel and if so, the amount; (viii) to approve payment from the Settlement Amount for administration fees and expenses and Settlement implementation expenses.   The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

2.2.4   *Motion for Final Approval.*  On the date set by the Court in its Preliminary Approval Order, Class Counsel will file a motion ("Final Approval Motion") for a Final Approval Order. Defendants shall have no responsibility for the filing of a Final Approval

Motion, except for their consent, which shall not be unreasonably withheld, to the filing of the Final Approval Motion.

2.3 *Finality of Final Approval Order.*  The Final Approval Order shall have become Final.

2.4 *Funding of Settlement Amount.*  Defendants or their Representatives have paid a total of $3,600,000 pursuant to section 6.

2.5 *No Termination.*  The Settlement shall not have terminated pursuant to section 8, below.

2.6 *Independent Fiduciary Review and Approval.*  The Agreement has been approved by an independent fiduciary.  No later than fifteen days after the Court's entry of an order preliminarily approving the Agreement, the Foamex Defendants shall retain, at their own cost and expense, an independent fiduciary to consider whether to approve and authorize in writing the Agreement in accordance with Department of Labor Prohibited Transaction Class Exemption 2003-39.  If such independent fiduciary declines to so approve and authorize the Agreement no later than the fifth business day prior to the Fairness Hearing, the Agreement shall terminate.

3. *Releases.*

3.1 *Releases of the Releasees.*  Subject to section 8, upon the Effective Date of Settlement, Named Plaintiff on behalf of himself and on behalf of the Class absolutely and unconditionally releases and forever discharges Releasees from any and all Released Claims that Plaintiff or the Class directly, indirectly, derivatively, known or unknown, suspected and unsuspected, or in any other capacity ever had or now have.

3.2 *Defendants' Releases of Named Plaintiff, the Class and Class Counsel.*  Subject to section 8, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiff, the Class, Class Members and Class Counsel from any and all claims relating to the institution or prosecution of the Action.

3.3 *Defendants' Release of Each and Every Other Defendant.*  Subject to section 8, upon the Effective Date of Settlement, the Releasees, individually and collectively, absolutely and unconditionally release and forever discharge each and every other Releasee from any and all claims relating to the Action including, without limitation, all rights of indemnity or contribution (whether equitable, contractual or legal), breach of contract, and subrogation, that were or could have been asserted in the Action or in any subsequent proceeding.

3.4     *Wind Down and Termination of Plan.*  The Parties understand that the Plan will wind down and terminate once the Plan of Allocation is implemented.  Subject to section 8, upon the Effective Date of Settlement, the Parties unconditionally release and forever discharge, to the fullest extent permitted by law but as limited by ERISA, § 410, 29 U.S.C. § 1110, any and all claims against the Plan, the members of the Foamex L.P. Savings Plan Benefits Committee, the Named Fiduciary, the Foamex Defendants, Fidelity and their Representatives and Successors-In-Interest, arising from the Plan's wind down and termination activities.

4.     *Representations and Warranties.*

4.1     *Named Plaintiff.*  Named Plaintiff represents and warrants that he has not assigned or otherwise transferred any interest in any Released Claims against any Releasee, and further covenants that he will not assign or otherwise transfer any interest in any Released Claim.

4.2     The Parties, and each of them, represent and warrant that they are voluntarily entering into this Agreement as a result of arm's length negotiations; in executing this Agreement they are relying upon their own judgment, belief and knowledge, and the advice and recommendations of their own counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof.  The Parties, and each of them, represent and warrant that they have carefully read the contents of this Agreement; they have made such investigation of the facts pertaining to the Settlement, this Agreement and all of the matters pertaining thereto as they deem necessary; and this Agreement is signed freely by each person executing this Agreement on behalf of each party.  Each individual executing this Agreement on behalf of any other Person does hereby represent and warrant to the other parties that he or she has the authority to do so.

4.3     *Payments from Payor.*  The Foamex Defendants represent and warrant that they have received unqualified assurances from Payor that Payor will make the payments as per Sections 6.1 and 6.3 of this Agreement.  In the event Payor fails or refuses to make payment, the Foamex Defendants will take all necessary actions to enforce the assurances from Payor and cause payment.

5.     *No Admission of Liability.*   The Parties understand and agree that this Agreement embodies a compromise and settlement of disputed claims, and that nothing herein, including the furnishing of consideration, shall be deemed to constitute an admission of any wrongdoing or liability by any of the Releasees.  Neither the fact nor the terms of this Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this

Agreement to Settle Claims or arising out of or relating to the Final Order and motions for approval.

**6.      *Settlement Amount and Disbursement of Same.***

6.1      *Total Amount of Settlement.*   The Foamex Defendants, by and through Payor, shall pay $2,850,000 and Fidelity shall pay $750,000 to resolve all claims in the Action.   The combined total, $3,600,000, shall be deemed a common fund generated as a result of the Action.

6.2      *Fidelity.*   Within twenty (20) days after the Final Approval Order becomes Final, Fidelity shall pay to Class Counsel the sum of $750,000. This constitutes the entire payment by Fidelity, and Fidelity shall make to further payments whatsoever. Notwithstanding any other provision(s) of this Agreement, Fidelity shall bear no responsibility for defraying the costs or fees arising from or associated with the settlement, for its implementation, for the Plan of Allocation, for any distribution(s) to class members, or for any of the associated activities contemplated by this Agreement, provided, however that Defendants shall provide Class Counsel with the information set forth in Section 7.3.  Fidelity shall not be held jointly or severally liable, or liable in any manner whatsoever, for payment of any amounts the Foamex Defendants are obligated to pay under this Agreement.

6.3      *Foamex Defendants.*   Within twenty (20) days after the Final Approval Order becomes Final, the Foamex Defendants shall pay, by and through Payor:

6.3.1    to Class Counsel: the attorney fees, costs, expenses and Case Contribution Award in the amount awarded or approved by the Court, less $750,000 (*i.e.,* the amount contributed by Fidelity pursuant to Section 6.2, *above*); and

6.3.2    to the Plan to be distributed to Class Members as set forth in the Allocation Plan: the sum of $2,850,000 minus the sum paid pursuant to 6.3.1, *above.*

6.3.3    The Foamex Defendants shall not be held jointly or severally liable, or liable in any manner whatsoever, for payment of any amounts Fidelity is obligated to pay under this Agreement.

6.4      *Sole Monetary Contribution.*   The payments set forth herein totaling $3,600,000 satisfies any and all claims for costs and attorney's fees by Class Counsel, claim for a Case Contribution Award to the Named Plaintiff, any costs, any expenses of administration including class notice, and all taxes on the Qualified Settlement Fund, in addition to the amount to be distributed to the Plan pursuant to this Agreement.  Notwithstanding any other provision of this Agreement, Defendants shall have no liability for

any payments to the Named Plaintiff, the Class, Class Members, Class Counsel or each other beyond those payments specifically set forth in section 6.1 through 6.3 of this Agreement.

7. *Plan of Allocation.*

7.1 *Creation of Plan of Allocation.* Class Counsel shall prepare and propose to the Court a Plan of Allocation. Upon approval of the Plan of Allocation by the Court, the Named Fiduciary will direct Fidelity to allocate among the Plan accounts of the Class Members the Net Settlement Amount deposited into the Plan trust according to the approved Plan of Allocation. Neither the Foamex Defendants nor Fidelity shall have any responsibility for preparing, proposing, approving, calculating or implementing the Plan of Allocation, except as (and to the extent) the Named Fiduciary is to direct Fidelity and Fidelity is directed to take action in accordance with this Section 7.1, the Trust Agreement, and Section 403(a)(1) of ERISA. The Parties agree that the Net Settlement Amounts may not be deposited into the Plan's trust unless and until the Court has approved the Plan of Allocation.

7.2 *Modification of Plan of Allocation.* In the event Defendants or Class Counsel determine that it is necessary to modify the Plan of Allocation, Class Counsel and Defendants shall jointly discuss such modification and determine whether the modification is reasonable and appropriate under the circumstances. If the Parties deem modification appropriate, then the Parties will jointly petition the Court for approval of any such material modification.

7.3 *Provision of Information Necessary for Plan of Allocation.* The Foamex Defendants and/or Fidelity agree to provide Class Counsel with information reasonably necessary to create the Plan of Allocation. This information specifically includes, for each participant in the Foamex Stock Fund, that participant's beginning balance in the Foamex Stock Fund on September 22, 2005, all transactions within the Foamex Stock Fund account of the participant (including the dates and amounts of transactions) between September 22, 2005 and December 31, 2006, and the ending balance of that participant's account balance on December 31, 2006.

8. *Termination of Agreement to Settle Claims.*

8.1 *Court Rejection.* If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court.

8.2    *Court Approval of Non-Opt-Out Settlement Class*.   The Class definition adopted by the Court pursuant to Fed. R. Civ. P. 23(b)(1) is a material term of this Agreement, and is the Class contemplated by this Agreement.  If the Preliminary Approval Order or the Final Approval Order provides any Class member(s) with the right to opt out of the settlement contemplated by this Agreement, this Agreement shall become null and void, and the Action shall return to the *status quo* as it existed on November 27, 2011.

8.3    *Court Modification*.  If the Court issues an order in the Action modifying the Agreement and if within 31 days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of this Agreement as modified by the Court or by the Parties, then, provided that no appeal is then pending from such ruling, this Agreement shall automatically terminate, and thereupon become null and void, on the 31st day after issuance of the order referenced in this section.

8.4    *Third Circuit Reversal*.  If the Third Circuit reverses the Court's order approving the Settlement, and if within 91 days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Agreement as modified by the Third Circuit or by the Parties, then, provided that no appeal is then pending from such a ruling, this Agreement shall automatically terminate and thereupon become null and void, on the 91st day after issuance of the order referenced in this section

8.5    *Pending Appeal*.  If an appeal is pending of an order declining to approve the Settlement, this Agreement shall not be terminated until final resolution of dismissal of any such appeal, except by written agreement of the Parties.

**9.    Consequences of Termination**.  If the Agreement is terminated and rendered null and void for any reason, then the following shall occur:

9.1    *Reversion of Action*.  The Action shall revert to its status as of November 27, 2011.

9.2    *Releases and Terms Void*.  All Releases given or executed pursuant to this Agreement shall be null and void and none of the terms of the Agreement shall be effective or enforceable.

**10.    Attorney Fees and Expenses; Case Contribution Award.** As provided in section 2.2, above, and pursuant to the common fund doctrine, Class Counsel shall petition the Court prior to the Fairness Hearing for an award of attorneys' fees not to exceed one-third of the Settlement Amount and a Case Contribution Award not to exceed $20,000, and for reimbursement of costs and expenses, to be paid from the Settlement Amount. The Case Contribution Award and attorneys' fees, costs and expenses awarded by the Court shall be paid as set forth in section 6.  Defendants and their Representatives

expressly agree not to contest or take any position with respect to any application for attorneys' fees, costs, expenses and Case Contribution Award, and acknowledge that these matters are left to the sound discretion of the Court.

**11.    Miscellaneous**

11.1    *Jurisdiction.*  The Court shall retain exclusive jurisdiction over all Parties to resolve any dispute that may arise regarding this Agreement or the orders and notices required herein, including any dispute regarding the validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Agreement.

11.2    *Governing Law.*  This Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Pennsylvania law will apply without regard to conflict of law principles.

11.3    *Severability.* The provisions of this Agreement are not severable.

11.4    *Amendment.*  Before entry of a Final Approval Order, this Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties.  Following entry of a Final Approval Order, this Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.

11.5    *Waiver.*  The provisions of this Agreement may be waived only an instrument in writing executed by the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

11.6    *Construction.*  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision thereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause the provision to be construed against the drafter thereof.

11.7    *Principles of Interpretation.*  The following principles of interpretation apply to this Agreement:

11.7.1  *Headings.*  The headings herein are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement.

11.7.2  *Singular and Plural.*  Definitions apply to the singular and plural forms of each term defined.

11.7.3  *References to a Person.*  References to a person include references to an entity, and include successors and assigns.

11.8 *Further Assurances.* Each of the Parties agree, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith promptly execute and deliver such other documents and take such other actions as may be necessary to consummate the subject matter and purpose of this Agreement.

11.9 *Survival.* All representations, warranties and covenants set forth in herein shall be deemed continuing and shall survive the Effective Date of Settlement.

11.10 *Entire Agreement.* This Agreement contains the entire agreement among the Parties relating to this Settlement.

11.11 *Counterparts.* This Agreement may be executed by exchange of executed faxed or PDF signature pages, and any signature transmitted in such a manner shall be deemed an original signature. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute one and the same instrument.

11.12 *Binding Effect.* This Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors, Representatives and successors-in-interest.

11.13 *Offer of Compromise.*

11.13.1 The Parties expressly acknowledge and agree that this Settlement Agreement and any exhibits and related documents thereto along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event shall this Settlement Agreement, any of its provisions or any negotiations, statements, or court proceedings relating to its provision in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any juridical, administrative, regulatory, or other proceedings, except in a proceeding to enforce this Settlement Agreement or the rights of the Parties or their counsel.

Without limiting the foregoing, this Settlement Agreement, any exhibits thereto, any related documents, any related negotiations, statements, or court proceedings shall not be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability, wrongdoing, fault, or omission of any kind whatsoever by Defendants with respect to

any alleged liability, wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of a Final Approval Order as contemplated herein. Defendants specifically deny all of the allegations made in connection with the Action.

11.13.2 This Settlement Agreement is entered into only for purposes of settlement. In the event that the Final Approval Order is not entered, then this Settlement Agreement, including any releases or dismissals hereunder, is canceled, and no term or condition of this Settlement Agreement, or any draft thereof, or of the discussion, negotiation, documentation or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose, or used for any purposes whatsoever.

11.14 *Withdrawal Upon Objection by State or Federal Authority.* Defendants may unilaterally withdraw from and terminate this Settlement Agreement within 20 days after receiving notice that any federal or state regulator or agency:   (a) objects either to any aspect or term of the Settlement Agreement and the parties, after good faith negotiations over the same, are unable to agree to modifications to address the objection(s); or (b) requires any modification to the Settlement Agreement, including, without limitation, a constriction or expansion of the scope of the contemplated relief that Defendants in their sole discretion deem reasonably material.

11.15 If this Settlement Agreement is terminated:

11.15.1 This Settlement Agreement shall be null and void and shall have no force or effect and no Party to this Settlement Agreement shall be bound by any of its terms, except for the terms.

11.15.2 All of the provisions, and all negotiations, statements, and proceedings relating to it, shall be without prejudice to the rights of Defendants, Plaintiffs, or any Class Member, all of whom shall be restored to their respective positions occupied as of November 27, 2011, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Parties' substantive or procedural rights are prejudiced by the attempted settlement.

11.15.3 Defendants expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action.

11.15.4 Neither this Settlement Agreement, nor the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Settlement Agreement, shall be admissible or entered into evidence for any purpose whatsoever.

11.15.5 Any Settlement-related order(s) or judgment(s) entered into this Action after the date of execution of this Agreement shall be deemed vacated and shall be without any force or effect; and

11.15.6 Defendants are not responsible for any of Class Counsel's attorneys' fees and/or internal costs for the settlement, including, but not limited to, any investigative, expert, and/or actuarial costs, or any other claims for fees or expenses.

11.16 Except as otherwise provided in this Settlement Agreement, each Party to this Settlement Agreement shall bear his, her, or its own costs of the Action. Plaintiff and Class Counsel will seek reimbursement of costs from the common fund pursuant to Section 10 of this Agreement, which shall be Plaintiff and Class Counsel's sole remedy in this regard.

11.17 The Parties to this Settlement Agreement reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement, as well as to correct any inadvertent, non-substantive mistakes or typographical errors contained in any of the Settlement papers.

11.18 Proper notice shall be given to Plaintiff and Defendants of all applications for Court approval or Court orders required under this Settlement Agreement.

11.19 The Parties agree and acknowledge that this Settlement Agreement includes a covenant of good faith and fair dealing.

11.20 The waiver by one Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

11.21 If one Party to this Settlement Agreement considers another Party to be in breach of its obligations under this Settlement Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Settlement Agreement.

11.22 All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the

Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the action to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this section, "legal holiday" includes New Year's Day, Birthday of Martin Luther King., Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States.

11.23  *Notices.* All notices to the Parties or counsel required by this Settlement Agreement shall be made in writing and communicated by electronic and regular mail to the following addresses (unless one of the Parties subsequently designates one or more other designees):

> Richard E. Spoonemore, Esq.
> Sirianni Youtz Spoonemore
> 999 Third Avenue, Suite 3650
> Seattle, Washington 98104
> rick@sylaw.com
> Attorneys for Plaintiff and the Class

> Rosemary J. Bruno, Esq.
> Buchanan Ingersoll & Rooney PC
> 550 Broad Street, Suite 810
> Newark, New Jersey 07102
> rosemary.bruno@bipc.com
> Attorneys for Foamex Defendants

> Howard Shapiro, Esq.
> Proskauer Rose LLP
> The Poydras Center
> Suite 1800
> 650 Poydras Street
> New Orleans, Louisiana 70130
> hshapiro@proskauer.com
> Attorneys for Defendant
> Fidelity Management Trust Co.

**SIGNATURES:**

FIDELITY MANAGEMENT TRUST CO.,

DATED: _____   By _____

_____

Its _____

STATE OF _____  )
                           ) ss.
COUNTY OF _____)

On this ____ day of _____, 2012, before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, personally appeared _____, to me known to be the _____ of FIDELITY MANAGEMENT TRUST CO., who executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of FIDELITY MANAGEMENT TRUST CO., for the uses and purposes therein mentioned, and on oath stated that s/he is authorized to execute the said instrument on behalf of FIDELITY MANAGEMENT TRUST CO.

Witness my hand and official seal hereto affixed the day and year first above written.

_____
NOTARY PUBLIC in and for the State of _____, residing at _____
My commission expires:_____

FOAMEX L.P. SAVINGS PLAN,

DATED: _____     By _____

_____

Its _____

STATE OF _____ )
_____ ) ss.
COUNTY OF _____)

On this ____ day of _____, 2012, before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, personally appeared _____, to me known to be the _____ of FOAMEX L.P. SAVINGS PLAN, who executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of FOAMEX L.P., for the uses and purposes therein mentioned, and on oath stated that s/he is authorized to execute the said instrument on behalf of FOAMEX L.P. SAVINGS PLAN.

Witness my hand and official seal hereto affixed the day and year first above written.

_____
NOTARY PUBLIC in and for the State of _____, residing at _____
My commission expires:_____

**GREGORY CHRISTIAN**

DATED: _____     By _____

STATE OF _____ )
                           ) ss.
COUNTY OF _____ )

      On this day personally appeared before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, Gregory Christian, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

      GIVEN under my hand and official seal this _____ day of _____, 2012.

_____
NOTARY PUBLIC in and for the State of _____, residing at _____.
My commission expires: _____.

**K. DOUGLAS RALPH**

DATED: _____   By _____

STATE OF _____ )
                           ) ss.
COUNTY OF _____ )

On this day personally appeared before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, K. Douglas Ralph, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _____ day of _____, 2012.

_____
NOTARY PUBLIC in and for the State of _____, residing at _____.
My commission expires: _____.

AGREEMENT TO SETTLE CLAIMS
Page 20 of 24

**STEPHEN DRAP**

DATED: _____     By _____

STATE OF _____ )
                                                ) ss.
COUNTY OF _____ )

      On this day personally appeared before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, Stephen Drap, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

      GIVEN under my hand and official seal this _____ day of _____, 2012.

                        _____

                        NOTARY PUBLIC in and for the State of _____, residing at _____.
                        My commission expires: _____.

**GEORGE L. KARPINSKI**

DATED: _____   By _____

STATE OF _____ )
                                                    ) ss.
COUNTY OF _____ )

On this day personally appeared before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, George L. Karpinski, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _____ day of _____, 2012.

_____
NOTARY PUBLIC in and for the State of _____, residing at _____.
My commission expires: _____.

WILLIAM STANFORD, JR.

DATED: _____      By _____

STATE OF _____ )
                             ) ss.
COUNTY OF _____ )

On this day personally appeared before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, William Stanford, Jr., to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _____ day of _____, 2012.

_____
NOTARY PUBLIC in and for the State of _____, residing at _____.
My commission expires: _____.

AGREEMENT TO SETTLE CLAIMS
Page 23 of 24

**APPROVED:**

SIRIANNI YOUTZ SPOONEMORE

_____

Richard E. Spoonemore
Attorneys for the Plaintiff and the Class


BUCHANAN INGERSOLL & ROONEY PC


_____

Rosemary J. Bruno
Attorneys for Foamex Defendants


PROSKAUER ROSE LLP


_____

Howard Shapiro
Attorneys for Fidelity