IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM STANFORD, JR., Individually and on Behalf of All Other Similarly Situated Persons and on Behalf of the Foamex L.P. Savings Plan,<br><br>Plaintiff,<br><br>v.<br><br>FOAMEX L.P., FIDELITY MANAGEMENT TRUST CO., K. DOUGLAS RALPH, STEPHEN DRAP, GREGORY J. CHRISTIAN, and GEORGE L. KARPINSKI,<br><br>Defendants. | No. 07-CV-04225<br><br>William H. Yohn, Jr. |

**MEMORANDUM IN SUPPORT OF
<u>MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT</u>**

## I. INTRODUCTION

No class member has objected to the proposed Settlement Agreement which, if approved, establishes a fund that exceeds the principal amount of loss sustained by the Plan as a result of the Challenged Transactions.[1] The lack of any objections is not surprising given that even after the payment of the requested fees, costs/expenses and an incentive award, class members will recover nearly 70 percent of their principal loss.

The Agreement is more than fair, reasonable and adequate. In fact, the Agreement was evaluated by an independent fiduciary of the Foamex L.P. Savings Plan (the direct beneficiary of the recovery under ERISA) as required by the Agreement. *See* Settlement Agreement, ¶2.6. In a letter dated June 19, 2012, the independent fiduciary concluded that the Agreement was fair and reasonable:

> Based on its evaluation of the relevant documents and information associated with the Litigation and the Settlement, and taking into account the fiduciary obligations imposed by ERISA, Evercore Trust has concluded that: (i) there is a genuine controversy involving the Plan; (ii) the terms of the Settlement, including the $3.6 million cash Settlement Amount, the Settlement release, the plan of allocation, and Plaintiffs' Motion for Attorney's Fees, are reasonable, in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone. . . .

Declaration of Richard E. Spoonemore Re: Final Approval, *Exh. A*, p. 2.[2] In determining whether to approve the Agreement, the independent fiduciary's sole professional and

---

[1] The Challenged Transactions are: (1) the increase in cash to 20 percent, (2) the increase in cash to 50 percent, (3) the liquidation of the Stock Fund, and (4) the reestablishment of 50 percent cash. *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 164 (E.D. Penn. 2009).

[2] The fiduciary considered whether to approve the Agreement in accordance with the requirements of Department of Labor Prohibited Transaction Class Exemption 2003-39. Available at www.dol.gov/ebsa/Regs/fedreg/notices/2003032191.htm (last visited 7/11/12).

fiduciary responsibilities are to the Plan and the participants and beneficiaries of the Plan.

By the motion accompanying this Memorandum, the Class respectfully requests that the Court also approve the Settlement Agreement.  *See* Fed. R. Civ. P. 23(e)(2).

## II.  STATEMENT OF FACTS

The facts of this case are set forth in detail in this Court's September 29, 2011 Memorandum.  *See* Memorandum (Dkt. #205), pp. 2-19.  *See also Stanford*, 263 F.R.D. at 160 (findings of fact in class certification decision found by a preponderance of the evidence).  The facts pertaining to the negotiation of the Settlement Agreement are set forth in the Declaration of Richard E. Spoonemore in Support of Motion for Preliminary Approval of Settlement Agreement (Dkt. #216), ¶2.

As directed by the Court, direct mail notice was provided to class members based upon an address list provided to the class by the defendants.  Spoonemore Decl. Re: Final Approval, ¶2.  The notice included a personalized "not less than" estimate of the recovery that the class member would receive, if the Settlement Agreement and requested attorney fees, costs, expenses and incentive award were approved by the Court.[3]  *Id.*, *Exh. B*.  Notices that were returned with forwarding addresses were immediately resent.  *Id.*, ¶2.  Free address updating sites were used to update all notices that were returned.  For those with recoveries over $50.00, paid address updating services were also used to update addresses.  *Id.*, ¶2.  At the conclusion of the

---

[3] The mailing to class members included four separate items: (1) a copy of the Court-approved notice; (2) a copy of the Plan of Allocation; (3) a copy of the Settlement Agreement itself and (4) a personalized "estimate of recovery" sheet which detailed that class member's calculated share of the settlement fund (as a percentage) plus a statement of how much that class member could expect to receive.  *See* Spoonemore Decl. Re: Final Approval, *Exh. B* (exemplar set of notice documents).

process, only 25 notices could not be delivered (16 of them were for amounts less than $50.00). *Id.*, ¶2.

There were no objections. *Id.*, ¶3. Class counsel responded to between 10 and 15 calls from class members. *Id.*, ¶3. None of these class members expressed any unhappiness with any part of the Settlement Agreement. *Id.* On the contrary, the class members were uniformly pleased with the Settlement Agreement. *Id.* A number of them wanted to express their thanks to Mr. Stanford. *Id.*

### III.  LAW AND ARGUMENT

**A.  Legal Standards for Final Approval of a Class Action Settlement Agreement.**

Final approval of a class action settlement requires an analysis of the nine factors set forth in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

These factors support final approval of the Settlement Agreement.

**B.  The Complexity, Expense and Likely Duration of the Litigation.**

The first *Girsh* factor captures the costs, in both time and money, of continued litigation. *In re Cendant Corp. Lit.*, 264 F.3d 201, 233 (3d Cir. 2001). While trial would have certainly been expensive given the number of witnesses (including expensive experts), much of the expense of the litigation had already occurred. Of primary concern, however, was the likelihood that any losing party would have appealed, further adding delay and expense to this case. Given that the case law under ERISA

tends to be in flux, any appeal would have been complex and expensive. *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 460 (D.N.J. 2008) ("Further, the likelihood of appeal from any decision on the merits counsels in favor of approving the Settlement."); *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 517 (E.D. Pa. 2007) ("Post-trial motions and appeals would further prolong the litigation and would significantly reduce the value of any monetary recovery to the class.").

C.   **The Reaction of the Class to the Settlement.**

No class member objected to the Agreement. On the contrary, in responding to class member's telephone calls after notice was sent, class members uniformly expressed their strong support of the Agreement and their gratitude to Mr. Stanford for taking on this case. Spoonemore Decl. Re: Final Approval, ¶3. This factor "cuts strongly in favor of the Settlement." *In re Cendant Corp. Lit.*, 264 F.3d at 235 ("The District Court correctly found that this factor weighed strongly in favor of the Settlement.").

D.   **The Stage of the Proceedings and Amount of Discovery.**

"The stage-of-proceeding facet of the *Girsh* test captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Productions Liability Lit.*, 55 F.3d 768, 813 (3d Cir. 1995). *See also In re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) ("A settlement should not be approved if the parties do not have an 'adequate appreciation' of the merits of the case.").

As the Court is aware, this case settled after the close of discovery and on the eve of trial. Spoonemore Decl. (Dkt. #216), ¶2. In the years leading up to the settlement, extensive discovery had taken place. Tens of thousands of documents were exchanged,

with 13 depositions taken at various locations across the country, including Newark, Boston, Philadelphia, Washington D.C. and Dallas. *Id*. The depth of discovery was evident in material filed in support of the various cross-motions for summary judgment. *See, e.g.,* Plaintiff Stanford's Undisputed Material Facts (Dkt. #171); Declaration of Richard E. Spoonemore with *Exhibits A-NN* (Dkt. #172).

In addition to fact discovery, numerous experts had been retained by all parties on a variety of subjects. Spoonemore Decl. (Dkt. #216), ¶2. These experts issued detailed and exhaustive reports. Depositions of the key experts were taken as well. Discovery was extensive, and "the proceedings had advanced to the point that counsel could fairly, safely, and appropriately decide to settle the action." *In re General Motors Corp. Pick-up Truck Fuel Tank Productions Liability Lit.*, 55 F.3d at 814.

E. **Risks of Establishing Liability.**

A court examines the risk of establishing liability to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *In re General Motors Corp. Pick-up Truck Fuel Tank Productions Liability Lit.*, 55 F.3d at 814.

1. **Foamex and Christian.**

Given that this Court concluded that Foamex and Christian breached their fiduciary duties under ERISA, the remaining risk was whether plaintiff could prove at trial a causal relationship between the breach of duty and losses to the Stock Fund:

> [T]he undisputed evidence shows that Foamex lacked the authority to make those [cash] adjustments or to liquidate the fund. The undisputed evidence also demonstrates that it was Christian, acting on behalf of Foamex, who made the decisions at issue here. Plaintiff has thus satisfied his burden of demonstrating that Foamex and Christian breached their duty to act in accordance with the Plan documents, and no reasonable fact-finder could disagree on the basis of the evidence submitted thus far.

Memorandum (Dkt. #205), p. 37.[4] *See also id.*, p. 22 ("[A] reasonable fact finder could not fail to find that Foamex and Christian breached their fiduciary duty to act in accordance with the Plan. . . ."), pp. 28-29 ("A fact-finder could not reasonably find on the basis of the evidence submitted that Foamex had the authority to eliminate the Foamex Stock Fund as an investment option and liquidate the fund when it had not amended the Plan."); p. 34 ("[T]he fact that Foamex lacked the authority to adjust the cash target is sufficient to establish a breach of fiduciary duty on the part of Foamex and Christian ….").

By the time a proposed settlement was reached, the question with respect to Foamex and Mr. Christian was this question of a causal relationship between a breach of duty by the unauthorized transactions and a loss to the Plan, issues which are addressed in section II, F, *below*.

### 2. Fidelity

In its decision on the cross-motion, this Court held that "[t]here is thus a genuine question as to whether Fidelity could have reasonably believed that it was following the

---

[4] Prior to this decision, Foamex and Christian had offered a variety of defenses to liability which the Court rejected in ruling on the cross-motions for summary judgment. Specifically, the Court found that Foamex and Christian were acting as ERISA fiduciaries when they adjusted the cash target. Memorandum (Dkt. #205), pp. 23-27. It concluded that under the Plan Documents and ERISA, Foamex and Christian had no authority to either (1) adjust the cash composition of the Fund or (2) to liquidate the Fund. *Id.*, pp. 22, 28-29, 34-35, 37, 49 n. 22. It rejected their argument that the transactions, even if unauthorized, did not proximately cause any loss because they were "objectively prudent." *Id.*, p. 39. ("[I]n this case plaintiff does not allege that defendants breached their duty by failing to investigate the challenged transactions; rather, plaintiff alleges that Foamex lacked the authority to direct such transactions…. The fact that the challenged transaction may have been objectively prudent thus may have no bearing on whether a causal connection exists between the breach – the failure to act in accordance with the plan documents – and the alleged loss to the plan."); *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007). The Court rejected the argument that Foamex and Christian were compelled to act contrary to the Plan Documents because of Foamex's poor financial conditions. *Id.*, pp. 41-45. Finally, it rejected their argument that they were exempt under ERISA, § 404(c). *Id.*, p. 46

direction of the Benefits Committee, the only entity authorized to issue these directions." Memorandum (Dkt. #205), p. 51.  In so holding, this Court rejected Fidelity's defense that "it had no duty under ERISA to determine whether McGinley [the signor of the letters of direction] was in fact acting on behalf of the Benefits Committee or whether the Benefits Committee had in fact authorized the transactions." *Id.*, p. 49.

The question of Fidelity's liability at trial would have been hotly contested, with each side offering testimony and witnesses on the question of Fidelity's actual knowledge, as well as what it should have known.[5]  While Class counsel believes that the evidence would have resulted in a judgment against Fidelity, the issue certainly carried with it some risk.

**F.     Risks of Establishing Damages.**

Like the fourth factor, "this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re General Motors Corp. Pick-up Truck Fuel Tank Productions Liability Lit.*, 55 F.3d at 816.  The primary risks in this case centered on issues of proximate cause and damages.  Of the two, the most significant risk facing the class was the calculation of damages.

The class's expert calculated the "value of the Fund had defendants not engaged in the Challenged Transactions." Order dated 9/24/09 (Dkt. #99), p. 22.  Based on his

---

[5] *See, e.g.,* Memorandum in Support of Defendant Fidelity Management Trust Company's Motion for Summary Judgment (Dkt. # 162-1), pp. 4, 14-22; Plaintiff Stanford's Memorandum in Support of Motion for Partial Summary Judgment Re: Fidelity Management Trust Co. (Dkt. #170), pp. 10-25; Defendant Fidelity Management Trust Company's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. #182), pp. 2-16; Plaintiff Stanford's Consolidated Reply in Support of Motions for Partial Summary Judgment Re: Foamex and Fidelity (Dkt. #197), pp. 6-10.

analysis, the damages, without interest, totaled $3,215,408.36. This figure was a two part mathematical computation. Because the Foamex Stock Fund was properly closed on December 22, 2006, the expert first calculated what the Foamex Stock Fund would have held with a cash target of 7 percent and an instruction to not purchase any shares after September 29, 2005. From that figure ($2,937,024.61), the actual value of the fund on December 22 ($224,859.55) was subtracted to arrive at the total for those people who held an interest when the fund was closed. In addition, to capture those who withdrew funds prior to December 22, 2006, the difference between the actual value of the withdrawn funds ($52,652.30) and the computed value assuming the Challenged Transactions had not occurred ($555,895.60) was calculated to arrive at a total of $503,243.30. Those two figures total $3,215,408.36. This was the number presented to the mediator as its "base damage" sum in the Class's mediation memorandum. Spoonemore Decl. (Dkt. #216), ¶5.

Defendants, in contrast, offered vastly different damage models. The damage model offered by the Foamex Defendants and their expert from Milliman arrived at a total loss of only $567,922. Fidelity offered a number of different damage models, ranging from a profit of $265,943 to a loss of $2,059,083, all without interest. The differences were the result of a number of variables, including the transaction costs involved in trading the shares in the fund[6] and the assumptions made about whether, and how, the cash composition would have been adjusted after Foamex stock began its

---

[6] Assumptions relating to transaction costs were significant. For example, Foamex's expert deducted $935,238 from the class's original analysis by making certain assumptions about transaction costs that differed from the Class's experts.

rapid rise. The parties also sharply disagreed over prejudgment interest, including the proper rate to use.[7]

Class counsel believes that the Court, at trial, would have adopted their damage model. However, the Class would have needed to "run the table" in this battle of the experts to get its figure. Given the rapid rise in the Fund and the effect of compounding, a seemingly minor adjustment (such as the assumption related to trading costs or when administrative expenses were deducted) when the stock was trading at pennies a share in late 2005 or early 2006 would have had a profound effect on the value of the Fund at closure.

Finally, the issue of proximate cause was an issue of fact set for trial. As the Court noted in its Memorandum, "[t]he Third Circuit has not yet addressed the question of which party bears the burden of proving causation." Memorandum (Dkt. #205), p. 39. It further concluded that issues of fact existed here:

> Regardless of which party bears the burden of proof here, neither plaintiff nor the Foamex defendants have addressed the question of whether the loss to the Plan resulted from the Foamex defendants' breach of their fiduciary duty. And the evidence in the record is not sufficient to permit me to say, as a matter of law, that the requisite causal link either has been or cannot be established. Thus, although on the basis of the current record a reasonable fact-finder could not fail to find that Foamex and Christian breached their

---

[7] The Class's "best case" award of interest assumed a prejudgment interest rate of 4.96 percent, which would have added an additional $798,546.62 to Defendants' exposure. Defendants, however, each used a 2 percent rate, what they calculated as the average 1-year T—bill rate over the relevant time period. This significantly reduced prejudgment interest to approximately $320,000. The question of which rate was appropriate is an open question. *Compare Teamsters Pension Trust Fund of Philadelphia v. Littlejohn*, 1997 WL 11292, *4 (E.D. Penn. 1997) ("When this calculation is used to determine an award of *pre* judgment interest, it is based on the rate obtained immediately prior to the date that plaintiff first demanded his benefits….") *with Pierce v. American Waterworks Co., Inc.*, 683 F. Supp. 996, 1002 (W.D. Penn. 1988) (average rate used).

> fiduciary duty to act in accordance with the Plan documents, summary judgment is not appropriate here.

*Id.*, p. 40.  *See also id.*, p. 53 ("And just as there is a question of fact as to whether the breach of duty by the Foamex defendants caused the Plan's losses, there is a question of fact as to whether the requisite causal link exists between Fidelity's alleged breach and the Plan's losses."). This issue would have been heavily litigated at trial. Again, while Class counsel is confident that the Class would have prevailed, it cannot be said that trial would have been risk-free on this issue.

**G.     Risks of Maintaining the Class Action Through Trial.**

Class counsel does not believe that the class would have been decertified. This risk was negligible.

**H.     Ability of Defendants to Sustain a Larger Judgment.**

Class counsel believes that any of the defendants could have sustained a larger judgment. Although Foamex had been through bankruptcy, it had an insurance policy that appeared to cover the type of breaches of fiduciary duty alleged in this action. In any event, this issue was not raised in settlement negotiations and was not the subject of discovery. *In re Warafrin Sodium*, 391 F.3d 516, 537-38 (3d Cir. 2004) ("Here, the District Court concluded that [defendant's] ability to pay a higher amount was irrelevant to determining the fairness of the settlement. We see no error here."); *In re CertainTeed Corp. Roofing Shingle Products Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010) ("Thus, because ability to pay was not an issue in the settlement negotiations, this factor is neutral.").

**I.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery.**

The $3,600,000 settlement amount exceeds the Plan's actual loss without interest – as computed by the Class's expert – by $384,591.64. Using the "best case" interest rate

could have added an additional $798,546.62 to the $3,215,408.36 loss of principal. *See* fn. 7, *above*. Finally, the Court could have awarded the Class all of its attorney fees and all of its costs of about $1.12 million. In sum, the Class's "pie in the sky" number was slightly over $5 million. A settlement for 70 percent of such a stretch number is more than reasonable – it significantly higher than normal settlement ranges. *In re Warafrin Sodium*, 391 F.3d at 538-39 ("33% of available damages [is] well within a reasonable settlement range when compared with recover percentages in other class actions.").

**J.     The Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of All the Attendant Risks of Litigation.**

While Class counsel believed that liability would be found, the Class faced risks in the calculation of damages. Based on the competing damage models created by the parties' experts, the Court could have ruled in the Class's favor but awarded damages based on one or more assumptions advanced by the defendants. As noted above, a recovery for more than the Plan's actual loss (without interest) which is also approximately 70 percent of the best possible case for the Class, is facially reasonable and should be approved.

**K.     The Plan of Allocation is Reasonable.**

Class members were specifically informed of the Plan of Allocation by a separate document included in the mailing. *See* Spoonemore Decl. Re: Final Approval, *Exh. B*. The actual calculation was performed, and each class member was informed of exactly what their percentage of the recovery would be, if the Agreement was approved. *Id*. Finally, the notice provided each class member with a personalized "not less than" estimate of the "bottom line" for each class members. No class member objected.

The Plan of Allocation is fair, and should be approved. The distribution of the net settlement amount will be made through the Plan, given the tax benefits inherent in

doing so. The Plan of Allocation was specifically designed to calculate each class member's *pro rata* share of the settlement. It is virtually identical to the allocation plan approved in *Moore v. Comcast Corp.*, 2011 WL 238821, *2 (E.D. Penn. Jan. 24, 2011):

> First, the "recognized loss" for each class member is the difference between the dollar value of a class member's Company Stock holdings at the start of the class period and at its close, taking into account the member's purchases and sales of Company Stock during the class period. Class members with a recognized loss of less than $5 will be deemed to have a de minimus loss and excluded from the pro rata allocation of the settlement fund. The "aggregate recognized loss" will then be calculated by totaling all class members' recognized losses. Each class member will receive a percentage of the settlement fund that is equal to their personal percentage of the aggregate recognized loss.

*Id.*, p. *2. The only differences are (1) there is no *de minimus* exclusion in the allocation plan proposed here and (2) there are no purchases which need to be included given that the Foamex Stock Fund was closed to new money throughout the class period. The plan of allocation should be approved as fair and reasonable to the class members.

**L.     Proposed Order**

The Settlement Agreement is conditioned upon approval by this Court and, if approved, contemplates an Order and Judgment which specifically addresses the following elements: (i) that the Agreement is fair, reasonable and adequate; (ii) final judgment should be entered; (iii) the requirement of FRCP 23 and due process have been satisfied in connection with the distribution of notice; (iv) the Plan of Allocation is approved; (v) reimbursement of notice and associated expenses; (vi) case contribution award; (vii) attorney fees, costs and expenses; (viii) administration fees and expenses. *See* Settlement Agreement, ¶2.2.3. The first four items have been addressed by this Memorandum, and the final four items are discussed in Plaintiff's Memorandum in Support of Motion for Award of Attorney Fees, Costs, Expenses and Case Contribution

Award (Dkt. #221).  In addition, the Defendants have filed declarations setting forth their compliance with the Class Action Fairness Act, 28 U.S.C. § 1712, *et seq*.  *See* Declaration of Charles F. Seemann III Regarding Compliance with the Class Action Fairness Act (Dkt. #226); Declaration of Rosemary J. Bruno Regarding Compliance with the Class Action Fairness Act (Dkt. #225).

A proposed Order addressing these items is submitted herewith.

DATED:  July 13, 2012.

        SIRIANNI YOUTZ
        SPOONEMORE

        BY:    */s/ Richard E. Spoonemore*
        Richard E. Spoonemore  (WSBA #21833)
        *Admitted Pro Hac Vice*
        999 Third Ave., Suite 3650
        Seattle, WA  98104
        Tel. (206) 223-0303; Fax (206) 223-0246
        rspoonemore@sylaw.com

        EKMAN, BOHRER & THULIN, P.S.
        Charles H. Thulin  (WSBA #9039)
        *Admitted Pro Hac Vice*
        220 W. Mercer Street, Suite 400
        Seattle, WA  98119
        Tel. (206) 282-8221; Fax (206) 285-4587
        c.thulin@ekmanbohrer.com

        JENNINGS SIGMOND, P.C.
        Kent Cprek (PA ID No. 40806)
        510 Walnut Street, Suite 1600
        Philadelphia, PA  19106-3683
        Tel. (215) 351-0615; Fax (215) 922-3524
        usdc-edpa-erisa@jslex.com

        Counsel for Plaintiff William Stanford, Jr.

# CERTIFICATE OF SERVICE

I certify, under penalty of perjury, that on July 13, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that a true and correct copy of the foregoing was served upon the following by ECF:

- **ROSEMARY J. BRUNO**
  rosemary.bruno@bipc.com,linda.boccino@bipc.com

- **BRIAN CASAL**
  brian.casal@bipc.com,marjorie.harms@bipc.com

- **AMY COVERT**
  acovert@proskauer.com

- **KENT CPREK**
  usdc-edpa-erisa@jslex.com

- **JOHN A. GOODMAN**
  john.goodman@bipc.com,elizabeth.lychenheim@bipc.com,betty.reznicek@bipc.com

- **BARBARA W. MATHER**
  matherb@pepperlaw.com

- **ROBERT W. RACHAL**
  rrachal@proskauer.com

- **SARA BETH RICHMAN**
  richmans@pepperlaw.com,gerhardc@pepperlaw.com

- **CHARLES F. SEEMANN , III**
  cseemann@proskauer.com,jrichie@proskauer.com,kdipaola@proskauer.com

- **HOWARD SHAPIRO**
  hshapiro@proskauer.com

- **MICHAEL D. SPENCER**
  mspencer@proskauer.com,jrichie@proskauer.com,tneville@proskauer.com

- **RICHARD E. SPOONEMORE**
  rspoonemore@sylaw.com,matt@sylaw.com,rspoonemore@hotmail.com,theresa@sylaw.com

- **CHARLES H. THULIN**
  c.thulin@ekmanbohrer.com,c.jones@ekmanbohrer.com

- **MARSHALL WALTHEW**
  walthewm@pepperlaw.com,mocharnd@pepperlaw.com

THIS DOCUMENT HAS BEEN FILED ELECTRONICALLY AND IS AVAILABLE FOR VIEWING AND DOWNLOADING FROM THE ECF SYSTEM.

DATED: July 13, 2012.

BY: _/s/ Richard E. Spoonemore_
Richard E. Spoonemore  (WSBA #21833)
*Admitted Pro Hac Vice*